IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING<br><br>Defendants. | § CIVIL ACTION NO. 1:22-CV-1191-LY<br>§<br>§ **MOVANT MORGAN HOFFMAN'S**<br>§ **OPPOSITION TO COMPETING LEAD**<br>§ **PLAINTIFF MOTIONS**<br>§<br>§<br>§ CLASS ACTION<br>§<br>§<br>§<br>§<br>§<br>§ |

Movant Morgan Hoffman ("Mr. Hoffman" or "Movant") respectfully submits this Memorandum of Law in Opposition to Competing Motions to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel. Dkt. Nos. 18, 20, and 23.[1]

Mr. Hoffman, as explained in his opening brief, is a sophisticated investor with approximately 27 years of investing experience. Dkt. No. 17 at 8. He is a resident of New York, holds a bachelor's degree, and is a real estate professional. *Id*. Mr. Hoffman lost approximately $676,030. Exhibit B to the Appendix filed herewith (the "App.").

Mr. Hoffman files herewith an amended certification and an amended loss chart. Exs. A and B.[2] No movant claims a larger loss than Mr. Hoffman.

---

[1] On January 24, 2023, movant Jacob Lerman filed a notice of non-opposition to competing lead plaintiff motions noting "it appears that Jacob Lerman ('Movant') has not asserted the 'largest financial interest' in this action." Dkt. No. 30.

[2] Minor clerical errors such as this are not material to adequacy or typicality. *E.g., In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012) (at class certification, "Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.") (citing *In re IPO Sec. Litig.* 227 F.R.D. 65, 98 (S.D.N.Y. 2004). Indeed, competing movants appear to likewise have minor typographical issues with their certifications and loss charts. Mr. Michaels, Mr. Bradford, Ms. Berry, Mr. Sklodowski, and Mr. Hughes all submitted trading data for transactions that do not

1

| Movant | Loss | |
|---|---|---|
| 1. Mr. Hoffman | $676,030 | Ex. B |
| 2. Michaels Group | $653,409 | Dkt. No. 19-4 at 16 |
| *2a. David A. Michaels* | *$395,714* | *Dkt. No. 19-4 at 13* |
| *2b. Barry L. Bradford* | *$159,758* | *Dkt. No. 19-4 at 15-16* |
| *2c. Allen Cotton* | *$97,936* | *Dkt. No. 19-4 at 16* |
| 3. The Harlan Group | $545,816 | Dkt. No. 24-2 at 2 |
| *3a. Bryan Harlan* | *$264,182* | *Dkt. No 24-2 at 2* |
| *3b. Kristi Berry* | *$171,485* | *Dkt. No. 24-2 at 2* |
| *3c. Michael Saunders* | *$71,945* | *Dkt. No. 24-2 at 2* |
| *3d. Robert Sklodowski* | *$38,201* | *Dkt. No. 24-2 at 2* |
| 4. David Hughes | $439,181 | Dkt. No. 21-1 at 2 |

Even putting aside Mr. Hoffman's larger financial interest, none of the competing movants have made the initial showing of Rule 23 adequacy and typicality required to trigger the most adequate plaintiff presumption under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see infra* Section III.

In short, Mr. Hoffman should be appointed Lead Plaintiff, his selection of Lead Counsel should be approved, and the competing motions should be denied.

**ARGUMENT**

**I.    MR. HOFFMAN SHOULD BE APPOINTED LEAD PLAINTIFF**

"The court … must appoint a 'lead plaintiff,' adopting the rebuttable presumption that the 'most adequate plaintiff' (1) has either filed the complaint or made a motion to be appointed lead plaintiff, (2) has the largest financial interest in the relief sought by the putative class, and (3) otherwise satisfies FED. RULE CIV. P. 23." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 477 n.1 (5th Cir. 2001) (citing 15 U.S.C. § 78u–4(a)(3)(B)(i)–(iii)). "The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the

---

comport to the daily trading range of Core Scientific stock (and for Mr. Bradford Core Scientific warrants). *See* Exs. F-J. Additionally, the Harlan Group filed an "Exhibit G" to its Appendix that did not attach any document to the Exhibit G and has yet to correct the issue. Dkt. No. 24-7.

presumptive lead plaintiff is found inadequate or atypical." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) ("In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status. The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'") (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)). The Court must start with Mr. Hoffman as he has the largest financial interest.

As Mr. Hoffman has made a *prima facie* demonstration of his typicality and adequacy (Dkt. No. 17 at 6-8), and has the largest financial interest (Dkt. Nos. 17 at 6 and 17-2 at 12), Mr. Hoffman is the presumptive lead plaintiff. *In re Cassava Scis., Inc. Sec. Litig.*, 342 F.R.D. 413, 418 (W.D. Tex. 2022) ("At this stage, Mr. [Hoffman] only has to make a prima facie case for typicality and adequacy.") (citing *In re Cavanaugh*, 306 F.3d at 730); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 435 (S.D. Tex. 2010) (proposed lead plaintiff must make a "preliminary showing that it has claims typical to those of the putative class and has the capacity to provide adequate representation for those class members.") (internal citations omitted). Because no movant has rebutted the presumption in favor of Mr. Hoffman with proof that he is inadequate or atypical, Mr. Hoffman must be appointed Lead Plaintiff.

Speculative challenges do not satisfy the PSLRA's requirement that the presumptively most adequate plaintiff may only be rejected if a rival movant presents "proof" that the presumptive lead plaintiff, here Mr. Hoffman, will not adequately represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 2016 WL 1625774, at *5 (N.D. Tex. Apr. 25, 2016) ("speculative assertions are insufficient to rebut the presumption that [Mr. Hoffman] is the most adequate plaintiff."); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are,

however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence …"); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not mere "speculation").

## II.     MR. HOFFMAN'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Hoffman has selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Rosen Law has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. Nos. 17 at 8-9; 17-2 at 13-33. Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. Dkt. No. 17-2 at 23-29. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen as the Number 3 securities class action firm both in terms of amount recovered for investors–$438,340,000–and the number of settlements–12.[3] Founding partner Laurence Rosen was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020.[4] Mr. Hoffman's selected Liaison Counsel, Cochran Law PLLC and its attorneys, is experienced in class actions and practice in Texas courts. Dkt. No. 17-2 at 35-38.

---

[3] https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.
[4] https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

**III.     COMPETING MOTIONS SHOULD BE DENIED**

Because Mr. Hoffman is the presumptive lead plaintiff and no movant has come forward with the requisite proof to rebut the presumption in favor of Mr. Hoffman, the Court need not reach consideration of the competing movants. That said, some facts bear noting about the competing movants.

**A.     The Michaels Group and The Harlan Group are Inadequate and Atypical**

**1.     The Michaels Group and the Harlan Group are Improper Lawyer-Made Groups of Unrelated Investors**

The Michaels Group[5] and the Harlan Group[6] (together, the "Groups")[7] are impermissible groups of *unrelated* individuals.

Lead plaintiff movant groups such as these, with no pre-litigation relationship, have been squarely rejected by the well-established precedent of the Fifth Circuit. *See e.g., Berger*, 257 F.3d at 478 n.2 (embracing "the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation ***and a pre-litigation relationship based on more than their losing investment***….") (internal citations omitted) (emphasis added); *In re Waste Management, Inc.*, 128 F. Supp. 2d 401, at *411 (S.D. Tex. 2000); *In re Landry's Seafood Rest., Inc.*, 2000 WL 33999467, at *4 (S.D. Tex. 2000); s*ee also In re Superior Offshore Int'l, Inc. Sec. Litig.*, 2008 WL 2148745, at *1 (S.D. Tex. May 20, 2008).

---

[5] The Michaels Group members are David A. Michaels, Barry L. Bradford, and Allen Cotton. Dkt. No. 18 at 2.

[6] The Harlan Group members are: Bryan Harlan, Kristi Berry, Michael Saunders, and Robert Sklodowski. Dkt. No. 23 at 4.

[7] Both the Michaels Group and the Harlan Group named themselves the "Core Scientific Investor Group." Dkt. Nos. 18 at 2 and 23 at 4. To avoid confusion, Mr. Hoffman refers to the groupings as the Michaels Group for the grouping that includes Mr. Michaels (who claims the largest loss of that grouping) and the Harlan Group for the grouping that includes Mr. Harlan (who claims the largest loss of that grouping).

5

This is due, in part, to the PSLRA's function to prevent lawyer-driven litigation. *Abouzied v. Applied Optoelectronics, Inc*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) ("The PSLRA operates to ensure that plaintiffs control the litigation, not the lawyers.") (citing *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. 2002).

A "[proposed] group must be restricted to a few cohesive parties and the movant **must bear the burden of demonstrating….a pre-litigation relationship based on more than losing the investments at issue**." *In re Enron Corp., Sec. Litig.*, 206 F.R.D. at 442 (emphasis added).

### a. *The Michaels Group's and the Harlan Group's Joint Declarations are Insufficient*

While the Michaels Group and the Harlan Group each submitted joint declarations in an effort to meet their burden, their boilerplate declarations are insufficient. Even though the Groups assert that their members spoke with each other, "what is conspicuously absent [. . .] is any information regarding how these [. . .] apparent strangers [. . .] found each other." *Stires v. Eco Science Solutions, Inc*., 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp*." whose members "span[] the country's geography"); *Jakobsen v. Aphria, Inc*., 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (court not persuaded by declaration that the group would function cohesively); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven

litigation" (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation"); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 (D.N.J. Nov. 6, 2018), reconsideration denied, 2019 WL 2710273 (D.N.J. June 26, 2019) (denying lead plaintiff status to a group of investors because the "joint declaration [did] not allay the [] court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff.").

Further, the Court should not permit the members of the Groups to be considered individually as the Groups did not request that any of their constituents be appointed as lead plaintiff individually in the event the Court did not appoint the Groups. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See Abouzied*, 2018 WL 539362, at *5 (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *In re Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis); *Takata*, 2018 WL 5801379, at *5 (declining to break apart a

group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts.").

In short, as the court in *Abouzied* found, each of the Groups have "failed to show that its group has a pre-litigation relationship based on more than the losing investments at issue in this case. Instead, counsel for the [Groups] cobbled together a group of unrelated people." *Abouzied*, 2018 WL 539362, at *5.

> **b. The Michaels Group Has No Dispute Resolution Mechanism; The Harlan Group's Dispute Resolution Scheme Ensures a Person with a Lesser Financial Interest than Mr. Hoffman Would Control the Litigation**

The Michaels Group appears to assume that the group members will never disagree and that no dispute resolution mechanism is needed. *See* Dkt. No. 19-5. That is a folly premise. *See Abouzied*, 2018 WL 539362, at *5 (denying group Lead Plaintiff movant in part due to "the Joint Declaration provid[ing] no mechanism for resolving disputes.").

Regardless, any system put forward by the Michaels Group would allow one or two individuals with a smaller financial interests to control the case over Mr. Hoffman. Even with the agreement of *all* three members, Mr. Hoffman's largest interest would be overrun contrary to the PSLRA.

While the Harlan Group acknowledges that group members may disagree with each other, its dispute resolution scheme gives *all control to Mr. Harlan*. Dkt. No. 24-3 ¶ 11. As this dispute resolution scheme gives control to one member of each group for all disputes, it completely eviscerates the façade of a group.

Further, such a dispute resolution system transparently flies in the face of the PSLRA. Mr. Hoffman has the largest financial interest in this case and this dispute resolution system

8

would allow and individual with a smaller financial interests to control the case. *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *2 (S.D.N.Y. Nov. 21, 2013) (rejecting a lead plaintiff movant group with a poor dispute resolution system); *Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021) (noting that a dispute resolution system would "rais[e] the possibility that litigation decisions will be driven by two investors … with relatively small financial interests at stake.").

      c. **The Harlan Group's Joint Declaration was Not Signed by Mr. Harlan before the Lead Plaintiff Deadline**

Yet another issue with the Harlan Group generally, and its joint declaration specifically, is that Mr. Harlan himself did not even sign the group's joint declaration before the lead plaintiff deadline and before filing the group's lead plaintiff motion papers. Dkt. No. 24-3 at 7. Instead, the day *after* the lead plaintiff deadline, January 14, 2023, Mr. Harlan finally signed the group's lead plaintiff deadline. Dkt. Nos. 27 at 8 and 29 at 9. It is also not apparent that Mr. Harlan understood that he was moving for appointment as a member of a group *before* the lead plaintiff deadline as his signature on his declaration is dated January 14, 2023—after the January 13, 2023 lead plaintiff deadline.

In short, these facts demonstrate that the *Harlan* group cannot function cohesively and is an improper lawyer-made group.

      d. **The Harlan Group Incorrectly Views Itself as "Three" Investors when It is Four Investors**

There are more facts showing that the *Harlan* group was a last minute creation of counsel. Other members of the *Harlan* group believed that the group only had three members— not the four members it has come forward with: "We believe that the Class will benefit from having **three** highly motivated investors with substantial financial interests at stake as co-lead plaintiffs." Dkt. Nos. 24-3 ¶ 10, 27 ¶ 10, and 29 ¶ 10 (emphasis added). That the members of the

9

*Harlan* group are unaware of each other and/or did not read their Joint Declaration that each signed under the penalty of perjury further demonstrates inadequacy. *Berger*, 257 F.3d at 480 ("because absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times").

> e. *Neither the Michaels Group nor the Harlan Group Provide a Client- or Class-Based Reasons for their Grouping or their Selection of Multiple Lead Counsel*

There are simply no reasons beyond lawyer-driven litigation for the creation of either of the Groups and none are given. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 442 ("this Court has held that to satisfy the terms and effectuate the underlying policy of the PSLRA to guarantee effective control of the litigation and supervision of lawyers by the plaintiffs, unrestricted aggregation of unrelated plaintiffs by manipulating lawyers should not be permitted.").

The Michaels Group and the Harlan Group both seek the appointment of multiple law firms as Co-Lead Counsel—yet no specific client- or class-based reason is provided why multiple lead counsel is required for this case. Dkt. Nos. 18 at 7-9 and 23 at 13-14.

2. **Other Facts Demonstrating That the Michaels Group is Inadequate**

   a. *David A. Michaels' Two Bankruptcies*

It appears that David A. Michaels filed for Chapter 7 Bankruptcy twice. Ex. C, *In Re: David Michaels, Radha P Michaels,* case no. 9:21-BK-11292 (Bank. S.D. Fla. 2021); Ex. D, *IN RE: DAVID ANDREW MICHAELS, RADHA PRIYA MICHAELS*, case no. 9:11-BK-31399 (Bank. S.D. Fla. 2011). The existence and nature of these cases demonstrates Mr. Michaels' inadequacy to act as a fiduciary for absent class members.

Further, Mr. Michaels and his wife claimed a "Total of all property" of "$513,270.84" in February 2021. Ex. C, p. 9. Then Mr. Michaels also claims to have expended $535,756 on Core

Scientific securities during the Class Period of January 3, 2022, through October 26, 2022. Dkt. No. 19-4 at 13. Even with his $140,042 claimed total proceeds (*Id*.), his ability to then 11 months later invest over $535,000 here raises unique questions and red flags.

### b. Barry L. Bradford's Possible Bankruptcy

It appears that Barry L. Bradford may have also filed for Bankruptcy, first under Chapter 13 which was later converted to Chapter 7. Ex. E, *In Re: Barry L. Bradford*, case no. 1:09-BK-10848 (Bank. D. Colo.).

## CONCLUSION

For the foregoing reasons, Mr. Hoffman's motion should be granted in its entirety and the competing motions should be denied.

Dated: January 27, 2023,                    Respectfully submitted,

                                            **COCHRAN LAW, PLLC**

                                            */s/ Stuart L. Cochran*
                                            Stuart L. Cochran
                                            Texas Bar No.: 24027936
                                            8140 Walnut Hill Ln., Suite 250
                                            Dallas, Texas 75231
                                            Telephone: (469) 333-3405
                                            Facsimile: (469) 333-3406
                                            stuart@scochranlaw.com

                                            *[Proposed] Liaison Counsel for*
                                            *Movant and the Class*

                                            **THE ROSEN LAW FIRM, P.A.**
                                            Laurence Rosen, Esq. (*pro hac vice* to be filed)
                                            Phillip Kim, Esq. (*pro hac vice* to be filed)
                                            275 Madison Avenue, 40th Floor
                                            New York, NY 10116
                                            Phone: (212) 686-1060
                                            Fax: (212) 202-3827
                                            Email: lrosen@rosenlegal.com
                                            Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Movant and Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
Rina Restaino, Esq.
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Movant and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

　　　　　　　　　　　　　　　　　 */s/ Stuart L. Cochran*
　　　　　　　　　　　　　　　　　Stuart L. Cochran