IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING<br><br>Defendants. | § CIVIL ACTION NO. 1:22-CV-1191-LY<br>§<br>§ **REPLY MEMORANDUM OF LAW OF**<br>§ **MOVANT MORGAN HOFFMAN IN**<br>§ **FURTHER SUPPORT OF HIS LEAD**<br>§ **PLAINTIFF MOTION**<br>§<br>§ CLASS ACTION<br>§<br>§<br>§<br>§ |

Lead Plaintiff Movant Morgan Hoffman ("Movant" or "Mr. Hoffman") respectfully submits this Reply in Further Support of his Lead Plaintiff Motion. Dkt. No. 17.

Mr. Hoffman lost over $676,030. Dkt. No. 35-2. One movant remains,[1] the lawyer-made Michaels Group, comprised of David A. Michaels, Barry L. Bradford, and Allen Cotton, who each claim a smaller loss than Mr. Hoffman, who combined still claim a smaller loss than Mr. Hoffman at $653,409. *Compare* Dkt. No. 35-2 *with* Dkt. No. 19-4; *see Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) (appointing movant Poppe Group with largest loss, "When any alleged errors are rectified, the Poppe Group's losses total $226,000. [] This amount still exceeds the $200,000 in losses proffered by the Massachusetts Group.") (internal citations omitted).

---

[1] On January 24, 2023, Jacob Lerman filed a notice of non-opposition to the competing motions noting that "it appears that Jacob Lerman ('Movant') has not asserted the 'largest financial interest' in this action." Dkt. No. 30 at 2. On January 27, 2023, the Harlan Group (comprised of Bryan Harlan, Michael Saunders, Robert Sklodowski, Jr., and Kristi Berry) filed a notice of non-opposition to the competing motions noting that the groupings members "do not appear to have the largest financial interest in the relief sought by the putative class." Dkt. No. 31 at 2. On January 27, 2023, David Hughes filed a notice of non-opposition to the competing motions noting that "it appears that Hughes does not have the 'largest financial interest' in this litigation within the meaning of the PSLRA." Dkt. No. 32 at 2.

Mr. Hoffman, therefore, has the largest financial interest. Mr. Hoffman has made a *prima facie* showing of adequacy and typicality (Dkt. Nos. 17, 17-2, 35-1, 35-2) and is thus the presumptive Lead Plaintiff under the PSLRA. 15 U.S.C. § 78u–4(a)(3)(B); *see* Dkt. No. 34 at 3 (citing *In re Cassava Scis., Inc. Sec. Litig.*, 342 F.R.D. 413, 418 (W.D. Tex. 2022)).

Speculation and innuendo are insufficient to rebut the Lead Plaintiff presumption. *See* Dkt. No. 34 at 3 (citing cases and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); *Murphy v. JBS S.A.*, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("'[E]xacting proof' is needed to rebut the presumption.") (citing *In re Facebook, Inc.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012)); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("There is absolutely no proof … and we decline [the Michaels Group's] invitation to use our imagination.").

In an effort the rebut the presumption in favor of Mr. Hoffman, the Michaels Group implies that Mr. Hoffman is inadequate because his original certification and loss chart were to be voluntarily amended. Dkt. No. 33 at 2-3. That is simply incorrect. Lead plaintiffs can provide amended certifications and loss figures. *Hansen v. Ferrellgas Partners, L.P.*, 2017 WL 281742, at *5 (S.D.N.Y. Jan. 19, 2017) ("the Court would be extremely reluctant to impose a rule that would force lead plaintiff movants to choose between leaving mistakes in their filings uncorrected or correcting the mistake and being summarily disqualified. In any event, the Court finds [Mr. Hoffman's] correction of his certification to fall well short of 'proof' that [he] "will not fairly and adequately protect the interests of the class.") (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); *see also Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014) ("The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes—rather it was to promote a client-driven rather than lawyer-driven process[.]").

While the Michaels Group stated that its counsel had only received news of Mr. Hoffman's amended certification and loss figures on January 27, 2023 (Dkt. No. 33 at 2, 2 n.2, and 3 n.3.), the Michaels Group neglected to state that its counsel had failed to respond to basic questions about members of the Michaels Group—such as confirming that Mr. Michaels filed for Bankruptcy. Exhibit A to the Appendix filed herewith (the "App."), emails between counsel. Only on February 2, 2023, days after the opposition deadline and the request did the Michaels Group's counsel answer some of these basic questions—including the actual name of one group member. *Id.*

## I.   MR. HOFFMAN IS THE PRESUMPTIVE LEAD PLAINTIFF

Under the PSLRA, the presumptive Lead Plaintiff is the movant with the largest loss that makes a *prima facie* showing of adequacy and typicality. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

It is undisputed that Mr. Hoffman has the largest loss, $676,030 versus $653,409. Dkt. Nos. 35-2 and 19-4. Thus, Mr. Hoffman has the largest financial interest. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(bb). His largest financial interest is even greater when compared to the individuals that comprise the Michaels Group. *Compare* Dkt. No. 35-2 *with* Dkt. No. 19-4.

Mr. Hoffman has made the requisite *prima facie* showing of adequacy and typicality.[2] Mr. Hoffman, as explained in his opening papers, is a resident of New York with about 27 years of investing experience, holds a bachelor's degree, and is a real estate professional. Dkt. Nos. 17

---

[2] *In re Cassava Scis., Inc.,* 342 F.R.D. at 418 (discussing that "[Mr. Hoffman] only has to make a prima facie case for typicality and adequacy" and does so by "assert[ing] that he satisfies both the typicality and adequacy requirements. [] By purchasing Defendants' stock during both time periods alleged by the class and by showing that his shares lost significant value as a result of Defendants' alleged actions and statements, [Mr. Hoffman] asserts that his claims arise from the same course of events and involve virtually identical legal arguments to show liability. [] [Mr. Hoffman] further states that there are no conflicts between him and any other class member. [] The Court finds [Mr. Hoffman] has established a prima facie case for typicality and adequacy under Rule 23 and is the presumptive most adequate lead plaintiff.") (citing *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)) (other internal citations omitted).

at 8 and 34 at 1. Therefore, Mr. Hoffman has made the requisite showing of adequacy and typicality. *See* Dkt. No. 34 at 3 (citing *In re Cassava Scis., Inc.*, 342 F.R.D. at 418 ("At this stage, Mr. [Hoffman] only has to make a prima facie case for typicality and adequacy.") (citing *In re Cavanaugh,* 306 F.3d 726, 730 (9th Cir. 2002)).

## II.   THE MICHAELS GROUP FAILED TO REBUT THE LEAD PLAINTIFF PRESUMPTION IN FAVOR OF MR. HOFFMAN

Once the Lead Plaintiff presumption attaches, as it does here with Mr. Hoffman, the process turns adversarial, where competing movants have the opportunity to rebut the presumption with proof of inadequacy and atypicality. *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) ("The first subsection (the one that deals with triggering the lead plaintiff presumption) requires that a movant 'otherwise satisf[y]' Rule 23, but the second (which covers rebutting it) requires 'proof' that the presumptively most adequate plaintiff does not."); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *8 ("While presumptive lead plaintiffs may be rejected on the basis of risks of unique defenses, such risks must be supported by proof and rise above the level of mere speculation.").

Speculation and innuendo are insufficient to rebut the Lead Plaintiff presumption. *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("[The Michaels Group] must produce more than speculation to rebut the presumption. The PSLRA is clear that the presumption is rebutted 'only upon proof' that the presumptive lead plaintiff is inadequate and subject to unique defenses.") (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).

Here, the Michaels Group appears to imply that Mr. Hoffman is inadequate because his original certification and loss charts were voluntarily amended. Dkt. No. 33 at 2-3. That is false.

Courts do not reject Lead Plaintiff movants solely based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.

4

*See e.g., In re Spero Therapeutics, Inc. Sec. Litig.*, 2022 WL 4329471, at *8 (E.D.N.Y. Sept. 19, 2022) ("'[c]ourts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.'") (citing cases); *In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, 2002 WL 31415951, at *7 (N.D. Tex. Oct. 28, 2002) (appointing class representative who "submitted inaccurate stock certifications and testified inaccurately about his FirstPlus transactions, omitting some purchases and sales" as "the inaccuracies in the information Doremus supplied about his FirstPlus acquisitions were likely unintentional.").

The Michaels Group cites two cases which are off-the-mark. In *Karp v. Diebold Nixdorf, Inc.*, a group movant of a married couple was denied appointment in part because its "exaggerated loss totals" created by double counting some transactions (amounting to a $500,000 increase in losses) were raised by a competing movant by letter to that court before the couple addressed the issue which "disquieted" that court. 2019 WL 5587148 *2, *6 (S.D.N.Y. Oct. 30, 2019).[3] That couple was also accused of day trading (*Id*. at *5 n.6) and failed to make a preliminary showing under Rule 23. *Id*. at *6. Mr. Hoffman did not double count in an attempt to inflate his loss, there was just initial confusion on how his pre-merger shares were handled after the merger. Mr. Hoffman is not a day trader and has not been accused of such. Mr. Hoffman clearly made a preliminary showing under Rule 23. *See* Dkt. No. 34 at 3 (citing *In re Cassava Scis., Inc.,* 342 F.R.D. at 418).

In *In re Boeing Co. Aircraft Sec. Litig.*, a group movant of a family was denied

---

[3] The couple in *Karp* was only considered because the movant group with the largest loss included the University of Puerto Rico Retirement System (the "UPR System") which was denied appointment due to Puerto Rico's and the UPR System's "financial crisis" and "financial turmoil"—including noting the Commonwealth's bankruptcy proceedings. *Karp*, 2019 WL 5587148 *5. Mr. Hoffman, unlike the Michaels Group, has no bankruptcy-related issues. *See* Dkt. Nos. 34 at 10-11, 35-3, and 35-4.

appointment as they demonstrated unusual trading patterns and facts came to light that the family did not have the financial means to engage in the transactions they claimed they had. 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020).[4] There is no allegation that Mr. Hoffman's trades were irregular nor are there allegations that Mr. Hoffman lacks the means for his investment. *See* Dkt. No. 33.

Finally, there is only self-interested speculation and no proof that Mr. Hoffman's amended certification and loss chart are the acts of gamesmanship. Mr. Hoffman provided his amended certification and loss chart voluntarily. Mr. Hoffman's counsel answered the Michaels Group inquiries regarding his losses before the lead plaintiff opposition deadline. Ex. A; *In re Spero Therapeutics, Inc.*, 2022 WL 4329471, at *9 ("[Mr. Hoffman's] mistakes do not prejudice any party to this litigation … Nor is there any evidence of bad faith or an intent to deceive on the part of [Mr. Hoffman's counsel], as [Mr. Hoffman] readily identified and admitted his mistakes in [his] subsequent submissions … Accordingly, the Court is satisfied that, based on the firm's experience and credentials [], [Mr. Hoffman's counsel] is experienced and well-qualified to conduct the class action securities litigation at hand. Moreover, [Mr. Hoffman] maintains a sufficient financial interest in the outcome of the case with respect to all claims under the Exchange Act to vigorously advocate on behalf of the class and, in his papers, he denies the existence of any conflicts of interest with absent class members.").

---

[4] The family in *Boeing* alleged investment of over $40 million in Boeing stock but an investigation by other movants raised serious concerns with the family's ability to invest that sum which the family did not address. *In re Boeing Co.*, 2020 WL 476658, at *2. The family further demonstrated "an unwillingness to shoulder the discovery burdens that a lead plaintiff must bear on behalf of the class." *Id.* "[The family] had raised so many red flags that the Court could not 'in good conscience appoint them to lead this complex, significant, and highly public litigation on behalf of thousands of Boeing investors.'" *Id.* Mr. Hoffman, unlike the Michaels Group, has no red flags, has no issue with ability to invest what he did, and answered questions *before* the opposition deadline. Dkt. No. 34 at 10-11, Ex. A.

### III.     COMPETING MOTIONS SHOULD BE DENIED

Jacob Lerman, the Harlan Group, and David Hughes all abandoned their motions. Dkt. Nos. 30, 31, and 32. *See e.g.*, *Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at *1 (E.D.N.Y. Apr. 26, 2022) (denying as moot lead plaintiff motions whose movants later filed notices of non-opposition to competing motions).

While the Michaels Group implies there may be some issue with Mr. Hoffman, there is no *proof* of *any* issue. *See* Dkt. No. 33.

While the Michaels Group relayed Mr. Hoffman's counsel responding to its own counsel with relevant information before the opposition deadline (Dkt. No. 33 at 33 at 2, 2 n.2, and 3 n.3), hypocritically the Michaels Group members or counsel refused or neglected to provide Mr. Hoffman with basic information until after the opposition deadline. *See supra* (citing Ex. A).

Finally, on February 2, 2023, the Michaels Group admitted that Mr. Michaels filed for Bankruptcy—days after the deadline for opposition papers. Ex. A, p. 2; *see also* Dkt. Nos. 34 at 10-11, 35-3, and 35-4.

That same belated date, February 2, 2023, the Michaels Group also provided Mr. Cotton's full name of "C. Allen Cotton IV" (Ex. A, p. 2) as opposed to the "Allen Cotton" name provided in the Michaels Group's papers—including Mr. Cotton's certification. Dkt. Nos. 18 at 2 and 10; 18-1 at 2; 19 at 3; 19-3 at 21-22; 19-4; 19-5 at 2 and 6; 33 at 1, 2, and 5.

While Mr. Hoffman's amended certification and loss figures do not materially change his application—he still clearly has the largest financial interest and continues to have by far the largest individual financial interest—the Michaels Group's bankruptcies and lack of ability to timely answer basic questions about a member's actual name demonstrate, again, that the Michaels Group is not a cohesive or responsive group. *See generally* Dkt. No. 34 at 5-11.

Further, the Michaels Group has still failed to demonstrate it is a cohesive grouping or had *any* pre-litigation contact. *See Id*. As such, it is fatally flawed on its face. *Id*.

Indeed, even though the Michaels Group's response implies it is still pursuing an appointment, it provides *no argument* for its appointment over Mr. Hoffman. *See* Dkt. No. 33. At most, the Michaels Group argues Mr. Hoffman's amendment of his certification and loss chart "*can* alone be disqualifying[,]" *not* that it *is* disqualifying. Dkt. No. 33 at 3 (emphasis added). That the Michaels Group includes this (accurate) qualifying language is likely due to Mr. Michaels' and Mr. Bradford's problematic trading information. Dkt. Nos. 34 at 1 n.2, 35-6, and 35-7.

## IV.      CONCLUSION

For the foregoing reasons, Mr. Hoffman's motion should be granted in its entirety and the competing motions should be denied.

Dated: February 3, 2023,

Respectfully submitted,

**COCHRAN LAW, PLLC**

*/s/ Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No.: 24027936
8140 Walnut Hill Ln., Suite 250
Dallas, Texas 75231
Telephone: (469) 333-3405
Facsimile: (469) 333-3406
stuart@scochranlaw.com

*[Proposed] Liaison Counsel for
Movant and the Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq. (*pro hac vice* to be filed)
Phillip Kim, Esq. (*pro hac vice* to be filed)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060

Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Movant and Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
Rina Restaino, Esq.
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Movant and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Stuart L. Cochran*
Stuart L. Cochran