UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, AND DENISE STERLING,<br><br>　　　　　　　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 1:22-cv-01191-LY |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DAVID A. MICHAELS, BARRY L. BRADFORD, AND ALLEN COTTON'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

4894-3956-4367.v1

## TABLE OF CONTENTS

|     |     |     | Page |
| --- | --- | --- | ---: |
| I.  | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
|     | A. | The Michaels Group Has The Largest Financial Interest | 2 |
|     | B. | Mr. Hoffman's Materially Deficient Certification Prevents His Ability to Satisfy the Rule 23 Adequacy Requirement | 4 |
|     | C. | Mr. Hoffman Has Failed to Rebut the Presumption that the Michaels Group Is the Most Adequate Plaintiff | 6 |
| III. | CONCLUSION | | 9 |

## TABLE OF AUTHORITIES

                                                                                                                               **Page**

**CASES**

*Berger v. Compaq Comput. Corp.*,
    257 F.3d 475 (5th Cir. 2001) ................................................................................................6

*Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*,
    2012 WL 2872787 (D. Idaho July 12, 2012) ........................................................................3

*Brody v. Zix Corp.*,
    2005 WL 8158375 (N.D. Tex. July 11, 2005) ......................................................................6

*Camp v. Qualcomm Inc.*,
    2019 WL 277360 (S.D. Cal. Jan. 22, 2019)..........................................................................5

*Cook v. Allergn PLC*,
    2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ......................................................................3

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
    2021 WL 913934 (D. Utah Mar. 10, 2021) ..........................................................................3

*Giovagnoli v. GlobalSCAPE, Inc.*,
    2017 WL 11220692 (W.D. Tex. Nov. 6, 2017) ....................................................................2

*In re Boeing Co. Aircraft Sec. Litig*,
    2020 WL 476658 (N.D. Ill. Jan. 28, 2020),
    *recons. denied by* 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ..........................................4, 5

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ..................................................................................7

*In re Groupon, Inc. Sec. Litig.*,
    2012 WL 3779311 (N.D. Ill. Aug. 28, 2012) .......................................................................8

*In re Reliance Acceptance Grp., Inc. Sec. Litig.*,
    1998 WL 388260 (W.D. Tex. June 29, 1998) ......................................................................6

*Kakkar v. Bellicum Pharm., Inc.*,
    2019 WL 1367653 (S.D. Tex. Mar. 26, 2019)...................................................................6, 7

*Karp v. Diebold Nixdorf, Inc.*,
    2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019),
    *adhered to on recons. by* 2019 WL 6619341 (S.D.N.Y. Dec. 5, 2019)..................................5

*Mullins v. AZZ, Inc.*,
    2018 WL 7504312 (N.D. Tex. Aug. 9, 2018) .......................................................................6

**Page**

*Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*,
   2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) ................................................................... 6, 7, 8

*Patel v. Reata Pharm., Inc.*,
   549 F. Supp. 3d 559 (E.D. Tex. 2021) ..................................................................................... 3

*Pio v. Gen. Motors Co.*,
   2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ...................................................................... 4

*Plaut v. Goldman Sachs Grp., Inc.*,
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ........................................................................ 5

*Stein v. Match Grp., Inc.*,
   2016 WL 3194334 (N.D. Tex. June 9, 2016) ................................................................. 6, 7, 8

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) ...................................................................................... 5

*United States v. Grossman*, 843 F.2d 78 (2d Cir. 1988) ............................................................. 3

*Westchester Putnam Cntys. Heavy & Highway Laborers
   Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*,
   2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016) ...................................................................... 4

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B)(iii)(I) ......................................................................................................... 1, 6
   §78u-4(a)(3)(B)(iii)(II) ........................................................................................................ 2, 6
   §78u-4(e)(1) ............................................................................................................................. 9

4894-3956-4367.v1

I.  **INTRODUCTION**

After two rounds of briefing, two movants remain seeking appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) David A. Michaels, Barry L. Bradford, and Allen Cotton (the "Michaels Group"); and (2) Morgan Hoffman.  The PSLRA directs courts to "adopt a presumption that the most adequate plaintiff" is "the person or *group of persons*" that possesses the "largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[1]  The Michaels Group is that movant.

While Mr. Hoffman initially claimed losses of over $830,000 in his motion, his counsel subsequently acknowledged (mere hours before filing Hoffman's opposition and only after the Michaels Group's counsel asked for additional details on facially suspicious transactions) that Hoffman *filed a materially false sworn PSLRA Certification that misclassified numerous trades and neglected others.  The net result - a dramatic overstatement of his claimed financial interest by more than $150,000*.  Hoffman's "amended" loss calculation *still overstates* his losses, as he included $55,400 in losses associated with expired "out-of-the money" call option contracts, half of which he – properly – did *not* include in his first (erroneous) calculation.  The explanation for Hoffman's inconsistent treatment of these option "losses" is simple: without them, he cannot claim to have suffered the largest financial interest:

| **Movant** | **Loss Claimed In Opening Papers** | **"Amended" Loss Claimed In Opposition** | **Substantiated Loss Only (claimed options losses removed entirely)** | **Substantiated Loss Including Options Discounted 50% Consistent with Hoffman's Opening Papers** |
|---|---|---|---|---|
| The Michaels Group | $653,409 | $653,409 | **$653,409** | **$653,409** |
| Mr. Hoffman | $834,995 | $676,030 | $619,986 | $648,330 |

---

[1]  Unless otherwise noted herein, all emphasis is added and citations are omitted.

- 2 -

Thus, even assuming Mr. Hoffman possesses the greatest financial interest, which he plainly does not, he would be ineligible for appointment because the inaccuracies in his sworn PSLRA Certification preclude a finding that he somehow satisfies even a *prima facie* showing of adequacy.

Recognizing his application is doomed, Mr. Hoffman attempts to identify supposed defects in the Michaels Group's motion, contending that the Michaels Group also made errors in their transactional data; that Mr. Bradford filed for bankruptcy; or that the Michaels Group lacks a dispute resolution mechanism. Not only is Hoffman wrong, his false speculation and innuendo fall far short of the exacting "proof" the PSLRA requires to rebut the presumption that the Michaels Group is the most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

The Michaels Group has evidenced its substantial financial interest and ability to represent the most inclusive class of Core Scientific, Inc. investors. They are a small cohesive group not subject to conflicts of interest or unique defenses. Thus, the Michaels Group's motion should be granted.

## II. ARGUMENT

### A. The Michaels Group Has The Largest Financial Interest

While the PSLRA does not define the "largest financial interest," nor does it dictate the relevant metrics used to make that determination, courts within this District and throughout the Fifth Circuit have relied on the four-factor *Olsten-Lax* test to assess and compare movants' relative financial interest, particularly relying on the "approximate losses suffered" factor.[2] It is not contested that under an *Olsten-Lax* analysis among the two remaining movants, the Michaels Group has a significantly larger financial interest under the first three *Olsten-Lax* actors.

---

[2] These "*Olsten-Lax*" factors are "(1) the number of [total] shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period." *Giovagnoli v. GlobalSCAPE, Inc.*, 2017 WL 11220692, at *3 (W.D. Tex. Nov. 6, 2017).

- 2 -

| Movant | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | Claimed Losses Suffered | Actual Losses Suffered |
|---|---|---|---|---|---|
| *The Michaels Group* | **533,617** | **483,570** | **$739,436** | **$653,409** | **$653,409** |
| Mr. Hoffman (Amended) | 140,000 | 140,000 | $695,690 | $676,030 | $648,330 |

While Mr. Hoffman's opposition brief posits that he suffered $676,030 in losses, that figure continues to be inflated by nearly $30,000. To enable him to claim the largest financial interest in the relief sought by the class – that is loss – Hoffman modified his initial options loss estimate and now improperly claims that ***every dollar he spent on highly speculative "out of the money" call options now should be included*** in his loss calculation.[3] *Compare* ECF 17-2 (original loss chart listing the entire options transaction but crediting only half – $27,700 of the $55,400 – in the final claimed loss of $834,995) *with* ECF 35-2 (amended loss chart crediting entire $55,400 purchase price as part of his claimed loss of $676,030).[4] Thus, assuming the Court is willing to include Hoffman's "out of the money" options in his financial interest calculation (which is questionable),

---

[3] A call option is "out of the money" when the strike price is higher than the market price at the outset. Out of the money call options are "extremely speculative"; the option purchaser is "betting that the market price will rise over the strike price within the limited time period." *United States v. Grossman*, 843 F.2d 78, 81 n.1 (2d Cir. 1988). Unlike stock, the value of a stock option is dependent on the amount of time until expiration. As such, courts have discounted the losses of these "out of the money" options. *See Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at *3-*4 (D. Idaho July 12, 2012) (refusing to appoint a lead plaintiff movant with options losses because "the actual amount of recoverable damages for [the movant's] call options, and thus its relevant loss, is probably closer" to a calculation that nearly entirely discounts losses relating to call options purchases); *see generally Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 569 (E.D. Tex. 2021) ("[T]he price and value of a single share of common stock is very different from the price and value of a single call option because the options' valuable lives are limited, their value is conditional, and there is large disparity between their price and their potential value.") (cleaned up); *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, 2021 WL 913934, at *5 (D. Utah Mar. 10, 2021) ("Courts have recognized that comparing damage calculations for purchasers of stock and purchasers of options is like 'comparing apples to oranges'").

[4] Courts routinely reject such transparent attempts by lead plaintiff movants to game the process by shifting to different loss calculation methodologies after reviewing competing motions. *See, e.g.*, *Cook v. Allergn PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (denying motion of movant who "alter[ed] its calculation when it learned that someone else had a larger loss").

when Hoffman's claimed loss associated with his options transactions are treated the same way Hoffman initially proposed in his motion, Hoffman's loss is $648,330, which is less than the loss suffered by the Michaels Group.[5]  Succinctly stated, when the movants' claimed financial interest is rationally and consistently assessed, and/or presented using the methodology used by Hoffman in his moving papers, the Michaels Group is the movant with the largest financial interest.[6]

      B.      **Mr. Hoffman's Materially Deficient Certification Prevents His Ability to Satisfy the Rule 23 Adequacy Requirement**

Beyond lacking the greatest financial interest, Mr. Hoffman's utter failure to accurately evidence his own Class Period transactions in Core Scientific securities is proof of his *in*ability to meet Rule 23's adequacy requirement, even on a *prima facie* basis and is, at best, indicia that he lacks the requisite sophistication or care to be placed in a position of trust as a fiduciary to absent class members.  Indeed, the most perfunctory diligence by Hoffman (or his counsel) would have uncovered the glaring discrepancies between the prices, dates, and share amounts contained in Hoffman's false PSLRA Certification (ECF 17-2) and Hoffman's actual transactional records.  Thus, as was the case in *In re Boeing Co. Aircraft Sec. Litig*, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28,

---

[5]    Mr. Hoffman's *amended* loss chart likewise appears unreliable as it reflects transactions in call options with a $15 strike price **which were not disclosed by Hoffman in either of his Certifications**. *See* ECF 35-2 at 5:

        ($27,700.00)   3/18/2022  CORZ  01/21/2022  15.00 C

[6]    This is further supported by the fact that in cases where the loss analysis could be inconclusive (because one movant "wins" under one loss estimate and another "wins" under a different loss estimate), courts have found the first three *Olsten-Lax* factors to be reliable indicators of financial interest because they are not subject to dispute, manipulation, or later revision by a battle of the experts. *See Westchester Putnam Cntys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, 2016 WL 11648466, at *2 (S.D.N.Y. Nov. 29, 2016) ("These other factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in the price per share."); *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014) (stating that "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses").

2020), *recons. denied by* 2020 WL 476658 (N.D. Ill. Jan. 28, 2020), it appears that "[o]ne of two things happened here: either [Hoffman] reviewed the loss charts and neglected to correct them despite errors that should have been obvious to [him] based on [his] own trading, or [he] didn't review the loss charts at all." *Id.* "Under either scenario, [his] failure to discover these obvious errors independently warrants a determination that [Hoffman] will not be [an] adequate representative[] of the class." *Id.* (collecting cases). The fact that these material deficiencies – which reduced Hoffman's claimed financial interest ***by over $150,000*** – remained uncorrected until ***after*** the Michaels Group's counsel asked Hoffman's counsel for additional details about the dubious "merger conversion shares" footnote (ECF 17-2 at 12) in Hoffman's original loss calculations and just hours before the opposition brief deadline expired is equally as concerning.[7] The magnitude of these errors combined with the amount of time it took Hoffman (and his counsel) to correct them undermines his attempt to characterize them as mere "***[m]inor clerical errors***." ECF 34 at 1 n.2. Nonetheless, courts have found far less egregious errors, even when timely corrected by counsel, to be disqualifying.[8]

Accordingly, even if the Court were to conclude that Mr. Hoffman somehow possessed the largest financial interest, his inability to make the required Rule 23 adequacy showing precludes his ability to trigger the PSLRA presumption. As such, his motion – as amended – should be denied.

---

[7] *See Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), *adhered to on recons. by* 2019 WL 6619341 (S.D.N.Y. Dec. 5, 2019) (denying motion by movant with larger financial interest and concluding that the "Court is disquieted by the errors contained in [movant's] original submissions" which "took the [movant] nearly two weeks [to correct]" because the certification "struck at the core of the PSLRA's lead plaintiff inquiry"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (finding that "[s]worn declarations are integral to the PSLRA process" and "the errors in [movant]'s sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class" "[p]articularly given that these errors were made at the outset of the case"); *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (finding a movant inadequate where movant's certification contained "'errors in the transaction records'").

[8] *See Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (disqualifying movant for omitting certain transactions from certification which would serve to ***increase*** that movant's loss, finding that "[a]lthough Meitav submits that this clerical error was a 'minor defect[ ],' . . . this error 'nonetheless speak[s] to a level of carelessness,' and causes me 'to doubt whether [Meitav] possesses the necessary adequacy and sophistication to be lead plaintiff'").

4894-3956-4367.v1

### C. Mr. Hoffman Has Failed to Rebut the Presumption that the Michaels Group Is the Most Adequate Plaintiff

Implicitly conceding that he is not the presumptive lead plaintiff, Mr. Hoffman's opposition brief attempts to rebut the presumption that the Michaels Group is the most adequate plaintiff. *See* ECF 34 at 5-11. To do so, Hoffman must present "proof" that the Michaels Group is inadequate or subject to unique defenses. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Specifically, "'[e]xacting proof' is needed to rebut the presumption," for "'[c]onclusory assertions and mere speculation will not suffice.'" *Mullins v. AZZ, Inc.*, 2018 WL 7504312, at *2 (N.D. Tex. Aug. 9, 2018). Mr. Hoffman's contentions fall far short of the requisite standard.

Mr. Hoffman first contends that groups "with no pre-litigation relationship, have been squarely rejected by the well-established precedent of the Fifth Circuit." ECF 34 at 5. In fact, the PSLRA expressly permits a "group of persons" to serve as lead plaintiff, without further qualification, and Texas district courts routinely appoint unrelated investors as lead plaintiff, so long as the group is small and cohesive. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Stein v. Match Grp., Inc.*, 2016 WL 3194334, at *6 (N.D. Tex. June 9, 2016) ("courts have recognized that a pre-existing relationship between [investors] that comprise a group is not required if the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation") (cleaned up); *In re Reliance Acceptance Grp., Inc. Sec. Litig.*, 1998 WL 388260, at *5 (W.D. Tex. June 29, 1998) (appointing a group of six as lead plaintiff); *Brody v. Zix Corp.*, 2005 WL 8158375, at *3 (N.D. Tex. July 11, 2005) (appointing a group of four as lead plaintiff); *Kakkar v. Bellicum Pharm., Inc.*, 2019 WL 1367653, at *5 (S.D. Tex. Mar. 26, 2019) (appointing a group of four represented by two law firms as lead plaintiff); *Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *8 (E.D. Tex. Aug. 31, 2017) (appointing a group of two represented by two law firms as lead plaintiff).

Here, the Michaels Group, comprised of just three members, is sufficiently small and cohesive to be appointed as lead plaintiff. *See Kakkar*, 2019 WL 1367653, at *3 ("the Fifth Circuit noted 'that the Securities and Exchange Commission has taken the position that a group of investors appointed to serve as lead plaintiffs ordinarily should comprise ***no more than three to five persons***'") (quoting *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 478 n.2 (5th Cir. 2001))

- 6 -

(emphasis in original). Indeed, the group members attested to their sophistication, decades of investing experience, and commitment and ability to work together. *See* ECF 19-5 at ¶¶2-4. Moreover, they understand and accept the responsibility of being a lead plaintiff and are committed to "ensuring that the class's claims will be efficiently and zealously prosecuted by our oversight of our proposed lead counsel." *Id.* at ¶¶6-8.

While Mr. Hoffman cites a handful of out-of-state cases for the proposition that the Michaels Group's Joint Declaration is "insufficient" (ECF 34 at 6-7), courts in **this** state routinely find that such declarations suffice to evidence a group's *prima facie* showing of adequacy. *See Kakkar*, 2019 WL 1367653, at *4 (the "joint declaration submitted by the group" evidenced "the group member's ability and willingness to cohesively manage the litigation and represent the class"); *Adeptus Health*, 2017 WL 3780164, at *5 (accepting a joint declaration as evidence the group would be "able to act cohesively, effectively manage the litigation, and adequately represent the class"); *Stein*, 2016 WL 3194334, at *5 ("McCloskey and Kneller have submitted a joint declaration that adequately makes the required cohesiveness showing."); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 442 n.10 (S.D. Tex. 2010) (citing a group's joint declaration to conclude "they will actively and cohesively participate in this litigation"). This Court should conclude the same.

Next, Mr. Hoffman quibbles that the Michaels Group is inadequate because it "appears to assume that the group members will never disagree and that no dispute resolution mechanism is needed." ECF 34 at 8. While, a dispute resolution mechanism is not required so long as the group members are able to function cohesively, the Michaels Group will commit to the Court that any dispute will be resolved by a majority vote of its three members. *See Adeptus Health*, 2017 WL 3780164, at *6 ("Even though the Court does not know specifically . . . how potential disputes among the members or counsel would be resolved, the Court is satisfied that the Retirement Group can work together to represent the interests of the class.") (cleaned up).

Mr. Hoffman also contends that the Michaels Group is inadequate because it proposed two law firms as lead counsel. *See* ECF 34 at 10. But district courts in Texas routinely allow the lead plaintiff to select more than one firm as lead counsel. *See Kakkar*, 2019 WL 1367653, at *5

(appointing two firms as lead counsel where both firms "have extensive experience in prosecuting securities litigation and have worked together" in the past so long as "there is no duplication of services or unnecessary increase in fees"); *Adeptus Health*, 2017 WL 3780164, at *8 (appointing two firms as lead counsel where "[t]he Court has reviewed the resumes provided for each attorney, and is satisfied that each could adequately represent the plaintiff in this action"); *Stein*, 2016 WL 3194334, at *8 (rejecting competing movants' objections to the appointment of two firms as lead counsel). Here, Robbins Geller and Glancy Prongay are accomplished securities class action firms (*see* ECF 18 at 7-9) that have successfully worked together in the past. Hoffman does not, and cannot, contend otherwise.

Having exhausted his challenges to the group itself, Mr. Hoffman speculates – erroneously – that "it ***appears*** that Barry L. Bradford ***may have*** . . . filed for Bankruptcy, first under Chapter 13 which was later converted to Chapter 7." ECF 34 at 11. Bradford did not file for bankruptcy. The bankruptcy record Hoffman identifies is for another individual with the same name.

Mr. Hoffman also points out that Mr. Michaels filed for bankruptcy more than ten years ago and again in 2021. *See* ECF 34 at 10. While accurate, Hoffman fails to cite any authority for the proposition that a past bankruptcy somehow precludes service as a lead plaintiff in a securities case. It does not. *See In re Groupon, Inc. Sec. Litig.*, 2012 WL 3779311, at *4 (N.D. Ill. Aug. 28, 2012) (appointing a lead plaintiff that previously filed for bankruptcy, reasoning "bankruptcy is not a crime, is not evidence of misconduct, and does not end one's ability to earn an income").[9]

Finally, relegated to a footnote, Mr. Hoffman suggests that Mr. Michaels and Mr. Bradford "submitted trading data for transactions that do not comport to the daily trading range of Core Scientific stock (and for Mr. Bradford Core Scientific warrants)." ECF 34 at 1 n.2. Hoffman identifies sales in Michaels' loss chart executed on November 25, 2022, with a listed price of $0.17 per share when the daily trading high was $0.157 for that day. *See* ECF 35-6. However, for post

---

[9]   Mr. Hoffman is also curious as to how Mr. Michaels could have invested in Core Scientific shares after his 2021 bankruptcy. *See* ECF 34 at 10-11. While Michaels need not satisfy Hoffman's curiosity as to irrelevant matters, the explanation is simple: the retirement account in which Michaels purchased Core Scientific shares was not the subject of his 2021 bankruptcy proceedings.

Class-Period sales, such as these, the PLSRA requires that Michaels value his sales at the greater of his actual sales price and the mean 90-day trading price following the final corrective disclosure alleged in the complaint (which was $0.17).  *See* 15 U.S.C. §78u-4(e)(1) ("the award of damages to the plaintiff shall not exceed the difference between the purchase . . . price paid . . . and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market").  This should have been obvious to Hoffman's counsel (who estimated a $0.16 lookback price in his own loss chart (ECF 17-2)).  Hoffman also states that one of Bradford's stock and warrant purchases were each slightly below the daily trading range (ECF 34 at 1 n.2), but a review of Bradford's trading records confirms that these transactions are accurate and the stated prices are within range for after-hours trading.

In conclusion, none of Mr. Hoffman's speculative contentions suffice to preclude a finding that the Michaels Group is the most adequate plaintiff.  As such, the Michaels Group should be appointed as Lead Plaintiff.

### III.   CONCLUSION

None of the competing movants trigger the PSLRA's most adequate plaintiff presumption.  As such, their motions should be denied.  By contrast, the Michaels Group possesses the largest financial interest and is the only remaining movant that satisfies the Rule 23 requirements.  The Michaels Group respectfully respects that its motion be granted.

DATED:  February 3, 2023                     Respectfully submitted,

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)


*s/ Joe Kendall*
JOE KENDALL

3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

ROBBINS GELLER RUDMAN
& DOWD LLP
JUAN CARLOS SANCHEZ
MICHAEL ALBERT
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
jsanchez@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN
PAVITHRA RAJESH
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com
prajesh@glancylaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

THE LAW OFFICES OF FRANK R. CRUZ
FRANK R. CRUZ
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: 310/914-5007
fcruz@frankcruzlaw.com

Additional Counsel for Allen Cotton

- 10 -

- 11 -

## CERTIFICATE OF SERVICE

I caused the filing of the foregoing document through the Court's CM/ECF system on February 3, 2023, which will serve all counsel of record.

*s/ Joe Kendall*
JOE KENDALL