**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING,<br><br>　　　　Defendants. | Case No. 1:22-cv-01191-DAE |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT....................................................................................................................2

I.      ALL OF PLAINTIFFS' CLAIMS ARE SUBJECT TO RULE 9(B) ...............................2

II.     PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISSTATEMENTS............................3

        A.      Plaintiffs Fail To Plead Any Misrepresentation Regarding "Foisting"
                Costs................................................................................................................4

                1.      Plaintiffs Do Not Allege Any Omitted Facts Before June 2022.................4

                2.      Defendants Disclosed The Allegedly Omitted Facts ................................5

                3.      Plaintiffs Do Not Allege Impact of Alleged Pass-Through Costs ...............7

        B.      Plaintiffs Alleged Misstatements Are Not Actionable For Additional
                Reasons ............................................................................................................7

        C.      Plaintiffs Do Not Plead An Actionable Omission Under Item 303 .......................10

III.    PLAINTIFFS' PURCHASES DEMONSTRATE A LACK OF RELIANCE ..................11

IV.     PLAINTIFFS DO NOT PLEAD SCIENTER ................................................................12

        A.      Plaintiffs' Theories of Fraudulent Intent Do Not Satisfy the PSLRA ...................12

        B.      Plaintiffs Do Not Allege Motive...........................................................................15

        C.      Defendants' Competing Inference is More Compelling........................................17

V.      PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ....................................................17

CONCLUSION.................................................................................................................18

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Alaska Elec. Pension Fund v. Asar*,
768 F. App'x 175 (5th Cir. 2019) ........................................................................13

*In re Anadarko Petroleum Corp. Class Action Litig.*,
957 F. Supp. 2d 806 (S.D. Tex. 2013) .................................................................13

*In re Baker Hughes Sec. Litig.*,
136 F. Supp. 2d 630 (S.D. Tex. 2001), *aff'd sub nom.*, 292 F.3d 424
(5th Cir. 2002)......................................................................................................17

*Borderplex Inv. Partners v. Borderplex Realty Tr.*,
2017 WL 1738080 (W.D. Tex. Apr. 5, 2017)..........................................................5

*Borteanu v. Nikola Corp.*,
2023 WL 1472852 (D. Ariz. Feb. 2, 2023).............................................................10

*In re Capstead Mortg. Corp. Sec. Litig.*,
258 F. Supp. 2d 533 (N.D. Tex. 2003) ..............................................................4, 10

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016) ..................................................................15

*In re Cassava Scis., Inc. Sec. Litig.*,
2023 WL 3442087 (W.D. Tex. May 11, 2023) ................................................11, 18

*Crutchfield v. Match Grp., Inc.*,
529 F. Supp. 3d 570 (N.D. Tex. 2021) ..................................................................15

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
2017 WL 4049253 (S.D.N.Y. June 28, 2017) .......................................................14

*Drzala v. Horizon Blue Cross Blue Shield*,
2016 WL 2932545 (D.N.J. May 18, 2016)...........................................................8, 9

*In re Express Scripts Holding Co. Sec. Litig.*,
2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017)........................................................6, 7

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
53 F. Supp. 3d 882, 898 (E.D. La. 2014).............................................................11

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
2015 WL 4879217 (E.D. La. Aug. 14, 2015) ...............................................2, 7, 8

*In re Fleming Companies Inc. Sec. & Derivative Litig.*,
  2004 WL 5278716 (E.D. Tex. June 16, 2004)................................................................13

*In re Franklin Bank Corp. Sec. Litig.*,
  782 F. Supp. 2d 364 (S.D. Tex. 2011), *aff'd sub nom.* 464 F. App'x 334 (5th
  Cir. 2012) ......................................................................................................................16

*Gamboa v. Citizens, Inc.*,
  2018 WL 2107205 (W.D. Tex. May 7, 2018) ................................................................16

*Genesee Cnty. Emps' Ret. Sys. v. FirstCash Holdings Inc.*,
  2023 WL 2752846 (N.D. Tex. Mar. 31, 2023) ................................................10, 11, 18

*Gomez v. Credit Suisse AG*,
  2023 WL 2744415 (S.D.N.Y. Mar. 31, 2023) ..................................................................9

*Hunt v. Bloom Energy Corp.*,
  2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ..............................................................16

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Cir. 2008) ...................................................................................15, 16

*In re ITT Educ. Servs., Inc. Sec. and S'holder Derivs. Litig.*,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012).............................................................................8

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
  237 F. Supp. 3d 492 (S.D. Tex. 2017) ..........................................................................17

*Jacobowitz v. Range Res. Corp.*,
  596 F. Supp. 3d 659 (N.D. Tex. 2022) ..........................................................................18

*Jiajia Luo v. Sogou, Inc.*,
  465 F. Supp. 3d 393 (S.D.N.Y. 2020).............................................................................4

*Kapps v. Torch Offshore, Inc.*,
  379 F.3d 207 (5th Cir. 2004) ........................................................................................11

*In re Key Energy Servs., Inc. Sec. Litig.*,
  166 F. Supp. 3d 822 (S.D. Tex. 2016)...........................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F. 3d 988 (9th Cir. 2018) .........................................................................................2

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d  228 (5th Cir. 2009)  ......................................................................................11

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) .....................................................................................2, 14

*Magruder v. Halliburton Co.*,
  2009 WL 854656 (N.D. Tex. Mar. 31, 2009) ...........................................................18

*Magruder v. Halliburton Co.*,
  359 F. Supp. 3d 452 (N.D. Tex. 2018) .....................................................................7

*In re Mylan N.V. Sec. Litig.*,
  2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ..........................................................14

*Nasyrova v. Immunomedics, Inc.*,
  2015 WL 382846 (D.N.J. Jan. 28, 2015) ...................................................................6

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
  2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ...........................................................8

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
  2023 WL 3781645 (N.D. Tex. June 2, 2023) ..........................................................12

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
  307 F. Supp. 3d 583 (S.D. Tex. 2018), *aff'd sub nom.*, 777 Fed. Appx. 726
  (5th Cir. 2019)...........................................................................................................3

*Plaisance v. Schiller*,
  2019 WL 1205628 (S.D. Tex. Mar. 14, 2019)..........................................................13

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
  777 F. App'x 726 (5th Cir. 2019) ..............................................................................2

*Powell v. Dallas Morning News LP*,
  610 F. Supp. 2d 569 (N.D. Tex. 2009) ......................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................12

*Truk Int'l Fund LP v. Wehlmann*,
  737 F. Supp. 2d 611 (N.D. Tex. 2009), *aff'd*, 389 F. App'x 354 (5th Cir. 2010)......................2

*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061 (5th Cir. 1994) ...................................................................................16

*VeroBlue Farms USA, Inc. v. Wulf*,
  465 F. Supp. 3d 633 (N.D. Tex. 2020) ......................................................................3

Defendants respectfully submit this Reply Memorandum of Law in Further Support of Motion to Dismiss the Amended Class Action Complaint (ECF No. 65, "Motion" or "Mot.").

**PRELIMINARY STATEMENT**

Apparently unhappy with their original allegations and theories, Plaintiffs use their Opposition as an opportunity to rewrite the Complaint.  Plaintiffs jettison their theory of fraud predicated on Defendants' alleged failure to disclose increased power costs, instead focusing exclusively on allegations that Defendants were required to disclose that they were "passing through" those increased costs to their customers, purportedly in contravention of their hosting contracts.  But even Plaintiffs' narrowed theory does not satisfy the stringent pleading requirements of the federal securities laws.  The Opposition—which searches in vain for an explanation as to how Defendants' statements are false—only underscores that this case is, at most, concerned with a contract dispute between Core and Celsius, a party not before the Court. Plaintiffs fail to meaningfully engage with any of Defendants' explanations for why their statements could not possibly have been false or misleading, particularly given that Defendants *never* made statements to investors concerning their interpretation of Core's hosting contracts and disclosed that Core's customers are "generally" billed on a fixed basis "as adjusted for actual costs."

Plaintiffs' Opposition otherwise fails to account for the fatal gaps in their pleading—the lack of particularized allegations concerning even a single pass-through charge before June 2022; the absence of any scienter allegations even suggesting that Defendants believed these charges were improper beyond conclusory assertions that fail to give rise to the requisite strong inference; and the failure to establish that alleged misstatements caused Plaintiffs' losses, particularly where Lead Plaintiff purchased Core securities *after* the supposed "revelation" of the fraud.  Plaintiffs do not respond to these deficiencies and many others.  The Complaint should be dismissed.

1

## ARGUMENT

Plaintiffs' Opposition lays bare their failure to adequately plead a securities fraud claim. Instead of meaningfully explaining how Defendants' statements were fraudulent, Plaintiffs rely on group pleading, innuendo, conclusory assertions, and colossal leaps of logic, all based on unadjudicated allegations in a contract dispute between Core and Celsius. *See* Mot. 27-28.

Further, lacking compelling substantive arguments, Plaintiffs attack the materials attached as exhibits to the Motion based on the out-of-circuit opinion in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F. 3d 988, 998 (9th Cir. 2018). *See* Opp. 7-9. But the Court is entitled to take judicial notice of each of the contested documents. *First*, the Court may take judicial notice of any documents cited in the Complaint. *E.g.*, Exs. A, C, D, J-L; *Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 616 (N.D. Tex. 2009), *aff'd*, 389 F. App'x 354 (5th Cir. 2010). *Second*, eleven of the twenty-three Exhibits (B, M-V) are Core SEC filings which Plaintiffs concede "may be subject to judicial notice." Opp. 9. It is uncontroversial that the Court may take judicial notice of SEC filings. *Truk*, 737 F. Supp. at 616.[1] *Third*, the remaining Exhibits, such as news articles, are proffered only for the fact of their existence, and the court may thus take judicial notice of them. *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 2015 WL 4879217, at *16 (E.D. La. Aug. 14, 2015).

## I.   ALL OF PLAINTIFFS' CLAIMS ARE SUBJECT TO RULE 9(B)

Plaintiffs' Securities Act claims are subject to Rule 9(b) because they are premised on the same conduct as their fraud-based Exchange Act claims. *Police & Fire Ret. Sys. of City of Detroit*

---

[1]   Plaintiffs' own authority is not to the contrary. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018, n. 1 (5th Cir. 1996) recognizes that it would be "highly impractical and inconsistent" to prevent courts from taking judicial notice of "relevant public disclosure documents" in securities fraud cases. Defendants do not offer these documents for their truth, but rather solely for the court to take notice of the disclosures contained in the documents.

*v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 730 (5th Cir. 2019). Plaintiffs offer a single theory: Defendants **knowingly** concealed the risk that intentionally imposing power cost pass-through surcharges would jeopardize Core's business, rendering their statements misleading.

Indeed, Plaintiffs allege in the "Securities Act" section of the Complaint that Defendants knew that Core had experienced increases in power costs, ¶¶ 98 102, 106, 109, and was knowingly foisting pass-through charges upon its fixed rate hosting customers, ¶¶ 98, 100, 102, 104, 106, 109. Plaintiffs further include a slew of allegations in that section purporting to support an inference of scienter. *E.g.*, ¶¶ 116, 121-23. The Opposition confirms this, including by arguing that Defendants' statements in Core's SEC filings are misleading for the same reasons those in the Registration Statement are misleading: because Defendants knew, but failed to disclose, that they were improperly passing through power costs in contravention of their hosting contracts. Opp. 11, 21.

Plaintiffs' attempt to avoid the consequences of their allegations by superficially dividing the Complaint into "separate" sections does not insulate Plaintiffs' Securities Act claims from Rule 9(b) scrutiny. *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 653 (N.D. Tex. 2020). Nor do Plaintiffs' "boilerplate disavowals of an intent to allege fraud." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 619 (S.D. Tex. 2018), *aff'd sub nom.*, 777 Fed. Appx. 726 (5th Cir. 2019). Plaintiffs' allegations are quintessential fraud allegations.

## II.   PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISSTATEMENTS

Conceding that the alleged non-disclosure of increasing power rates could not have rendered any of Defendants' statements misleading, Plaintiffs have narrowed their theory of falsity to only Defendants' alleged failure to disclose "pass-through" surcharges. Opp. 16. Plaintiffs' sole basis for liability, therefore, is their "foisting" theory. But even with respect to that theory, Plaintiffs concede—as they must—there is no obligation "to disclose that Core was [allegedly] breaching its hosting contracts simply by virtue of the committing the [alleged] wrongdoing." *Id*.

3

17. For this reason, and numerous others detailed below, Plaintiffs' "foisting" theory fails.

### A.    Plaintiffs Fail To Plead Any Misrepresentation Regarding "Foisting" Costs

In their Opposition, Plaintiffs do not meaningfully respond to Defendants' arguments as to why their facially true statements could not be rendered misleading by the allegedly omitted information. Their Opposition underscores that Plaintiffs have no serious rebuttal to the arguments that they fail to allege *any* omitted information for the majority of the Class Period, and that there is a stark disconnect between the allegedly omitted information and Defendants' statements.

### 1.    Plaintiffs Do Not Allege Any Omitted Facts Before June 2022

As Defendants demonstrated, virtually all of Plaintiffs' claims fail because the Complaint does not allege that the "foisting" occurred before June 2022 (the *earliest* Plaintiffs allege Core received "questions" about pass-through charges). Mot. 12. Plaintiffs do not allege *any* specific facts regarding *any* customer who complained about *any* pass-through charge, let alone disputed such charge, before June 2022. Indeed, Plaintiffs do not allege any facts that any customer even *received* a pass-through charge before June 2022. *Id.*; ¶ 123. And Plaintiffs' own confidential witness allegations explicitly undermine any conclusory suggestion that any pass-through charges were occurring before June 2022. Mot. 12.

In response, Plaintiffs ask this Court to assume—in the absence of any factual support—that pass-through charges were nonetheless occurring by late 2021 merely because during that time Mr. Levitt allegedly sought ways to mitigate increasing power costs. Opp. 15-16. But that says nothing of whether pass-through surcharges were occurring. Such a speculative inference cannot support a securities fraud claim. *See In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 550 (N.D. Tex. 2003); *see also Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020) (dismissing securities fraud claims for failure to adequately allege facts rendering statements false at time of IPO). Plaintiffs attempt to flip the burden on to Defendants, arguing that even if there

4

were no "questions and concerns" earlier than June 2022, the surcharges could in theory have been imposed earlier. Opp. 16. That turns the pleading standard upside down. It is **Plaintiffs'** burden to plausibly plead that they were happening—it is not enough to speculate that they "might" have been happening.[2] *See Borderplex Inv. Partners v. Borderplex Realty Tr.*, 2017 WL 1738080, at *9 (W.D. Tex. Apr. 5, 2017) (dismissing securities fraud claim that was "imprecise and is not alleged with the particularity required to meet the pleading requirements of the PSLRA."). Plaintiffs' failure to do so renders all statements before June 2022—including **all** statements in Core's Registration Statement and Proxy Statement—inactionable.

## 2.    Defendants Disclosed The Allegedly Omitted Facts

Defendants further demonstrated that their disclosures refute Plaintiffs' theory because, contrary to Plaintiffs' allegations, Defendants disclosed the allegedly omitted information. Mot. 13, 15-16. Aside from their effort to exclude publicly filed documents from this Court's consideration, Plaintiffs offer no serious explanation for this flaw in their theory of the case.

*First*, Plaintiffs concede that power costs were public and that Defendants had no duty of additional disclosure, thus abandoning one of their principal theories of falsity. Opp. 16.

*Second*, in response to Core's express disclosure that its "hosting contracts are **generally** priced on the basis of estimated power consumption . . ., **as adjusted for actual costs**," Mot. 13, Plaintiffs make the puzzling argument that this disclosure had "nothing to do" with surcharges for power costs. Opp. 18. That argument—which notably fails to cite a single allegation from the Complaint—relies on Celsius' unadjudicated litigation position that Core was contractually permitted to adjust for a "true up" for a customer's actual power **use** and not for "actual costs,"

---

[2] Crediting Plaintiffs' conclusory allegation that the pass throughs were happening despite **any** customer complaints dooms Plaintiffs' suggestion that the pass throughs were improper (or that Defendants had any reason to believe they were improper or posed a risk to the Company).

like the cost of power. *Id*.[3]  But what Core may have been contractually entitled to do is irrelevant here; the issue is what Core told *investors* it was doing.  And the disclosure explicitly says that Core "adjusted for *actual costs*," not "actual use."  Whatever the merits of Celsius' contract interpretation, Plaintiffs have no explanation for why *investors* would understand the reference to "actual costs" to refer something other than actual costs.  Plaintiffs thus fail to explain how the alleged pass-through charges are inconsistent with Core's disclosures.

*Finally*, Plaintiffs' blind recitation of Celsius' position demonstrates that they are merely arguing that it was, at most, a breach of contract for Core to utilize pass-through charges consistent with its public disclosures.  But Plaintiffs concede there is no obligation "to disclose that Core was [allegedly] breaching its hosting contracts simply by virtue of the committing the [alleged] wrongdoing."  Opp. 17.  Despite that concession, Plaintiffs inconsistently argue Defendants were obligated to disclose that the "conduct . . . entailed a material undisclosed risk."  *Id.*  In other words, Plaintiffs concede a breach need not be disclosed, but argue the events that *might* constitute a breach must be disclosed.  That makes no sense.  Plaintiffs fail to cite to a *single case* requiring a company to accuse itself of breaching a contract or disclose the alleged conduct that would constitute a breach.  To the contrary, courts regularly hold that even the failure to disclose an *asserted breach* is not actionable absent an expressed intent to terminate.  *See, e.g.*, *Nasyrova v. Immunomedics, Inc.*, 2015 WL 382846, at *8 (D.N.J. Jan. 28, 2015) ("That the Agreement presented a significant and substantial source of revenue does not render Defendants' silence about the breach actionable"); *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *13 (S.D.N.Y. Aug. 1, 2017) ("[T]he duty to disclose did not ripen earlier because no intent of

---

[3]  Plaintiffs ask this Court to take judicial notice of Celsius' objection, but courts do "not condone Plaintiffs' 'moving target' approach" of including new allegations in a response to a motion to dismiss. *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 569, 582 (N.D. Tex. 2009).

6

termination was provided during the Class Period.").

### 3.    Plaintiffs Do Not Allege Impact of Alleged Pass-Through Costs

As explained in Defendants' Motion, Plaintiffs' allegation that any pass-through charges constituted a material adverse effect on Core is meritless. Mot. 13. That is both because Plaintiffs allege customers terminated their contracts only at the very end of 2022, and because Plaintiffs have no support for their allegation that those terminations were the result of pass-through charges. *Id.*; ¶ 127 (Core's explanation that Core *itself* "terminated the contracts" "does not rule out" Plaintiffs' narrative). In Opposition, Plaintiffs' sole response is that Defendants are "conflat[ing] falsity with loss causation[.]" Opp. 18-19. Not so. Plaintiffs alleged that Defendants' risk warnings regarding the potential for a "material adverse effect" were misleading because Defendants portrayed the risk of a material adverse effect as a "future hypothetical scenario." *E.g.*, ¶ 98. Plaintiffs' theory, therefore, hinges on whether there was an actual material adverse effect as opposed to a "hypothetical" one. Plaintiffs' failure to allege that this effect was anything other than "hypothetical," therefore, dooms Plaintiffs' theory. *See Bulmahn*, 2015 WL 4879217, at *16.

### B.    Plaintiffs Alleged Misstatements Are Not Actionable For Additional Reasons

***Risk disclosures not actionable.*** Defendants demonstrated that Core's allegedly misleading risk disclosures about power costs, competitive pricing, and hosting capabilities were not misleading by virtue of the allegedly undisclosed pass-through charges because the disclosures say nothing about fixed rates or pass-through charges. Mot. 11-12. Simply put, there was "too attenuated a relationship between the allegedly misleading statements and the omissions." *Magruder v. Halliburton Co*., 359 F. Supp. 3d 452, 465 (N.D. Tex. 2018).

Instead of connecting the statements and the allegedly omitted information, Plaintiffs merely argue "it was Core's improper course of conduct in response to its increased power costs that was jeopardizing [Core's] hosting business," Opp. 22, but that proves the point. The risk

7

disclosures do "not suggest that the undisclosed improper activity alleged by Plaintiff[s] was not occurring," which is why they are not misleading. *See In re ITT Educ. Servs., Inc. Sec. and S'holder Derivs. Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012).

In any event, even if there were a relationship between the risk disclosures and the omitted information, risk disclosures are misleading only if they warn of a risk that has already materialized. *Bulmahn*, 2015 WL 4879217, at *16. Plaintiffs do not allege any facts suggesting that any risk materialized, let alone those warned of by the disclosures. Plaintiffs plead no facts establishing that Core struggled to "attract customers," "effectively market" its "competitive pricing terms," "fail[ed] to meet [its] end-users' expectations," or "fail[ed] to accurately estimate the factors upon which" it "base[s its] contract pricing" at any point during the Class Period. ¶¶ 101, 103, 105. Even if these risk disclosures could be interpreted to mean that Core was never passing through power costs to its hosting customers, Plaintiffs set forth no particularized facts that pass-through costs were occurring. *Supra* II.A.1. And Plaintiffs' argument that Core received "questions and concerns" regarding pass-through charges beginning in June 2022 fails, Opp. 16, because complaints from *some* customers do not render Core's risk disclosures materially misleading. *See In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *7-8 (S.D.N.Y. Mar. 31, 2010).

***Billing practices statements not actionable.*** Defendants demonstrated that Core's statements that its customers were "generally billed on a fixed and recurring basis" were not misleading due to the alleged non-disclosure of supposed pass-through costs. Specifically, these statements made no representation that customers were always billed on a "fixed" basis. To the contrary, the statements expressly used the term "generally," which naturally suggests that there are cases where the rule does not apply. Mot. 15 (citing *Drzala v. Horizon Blue Cross Blue Shield*, 2016 WL 2932545, at *4 (D.N.J. May 18, 2016)). In response, Plaintiffs assert that Core ***sought***

8

to migrate "all" contracts to a pass-through structure, but what Core "sought" to do says nothing of how many of Core's customers were *not* billed on a fixed basis, how "fixed" pricing worked, or how many customers were charged pass-through costs. Opp. 17.

**Celsius dispute statement not actionable.** Despite acknowledging that Core warned of adverse actions Celsius might take against Core in Celsius' bankruptcy proceeding, Plaintiffs double down on their allegation that Core's statement that "Celsius may take actions in its Chapter 11 proceeding to terminate or renegotiate its agreements" was misleading. Opp. 21-22.

*First*, Plaintiffs fail to explain why Defendants' statement about the Celsius bankruptcy can be rendered misleading by the omission of alleged facts having nothing to do with the statement, which says nothing about hosting contracts or power surcharges. Mot. 23.

*Second*, Plaintiffs do not cite a single case that has held that the disclosure of potential litigation is insufficient where the "undisclosed" litigation has neither been filed nor even threatened as of the time of the disclosure. Indeed, Plaintiffs do not dispute that as of August 2022, Celsius had not raised any issue about pass-through costs. Opp. 22. Thus, Defendants' disclosures were consistent with the federal securities laws, which do not "require issuers to predict the precise manner in which disclosed risks will manifest themselves." *Gomez v. Credit Suisse AG*, 2023 WL 2744415, at *9 (S.D.N.Y. Mar. 31, 2023).

**Restructuring statement not actionable.** Plaintiffs argue that Mr. Levitt's statement that Core "restructured [its] pricing to improve margins over time" and that "initial customer acceptance validates our new strategy" was misleading because Mr. Levitt was "actually" referring to "imposing improper surcharges" in violation of its contracts, which customers allegedly rejected. Opp. 23. But in the same statement, Mr. Levitt said precisely what he meant by "restructuring"— that Core was implementing "refinements to price per kilowatt hour, contract term, infrastructure

9

and configuration fees and prepayment terms." Mot. 24. Plaintiffs' claim that it is "nonsensical" to conclude that Mr. Levitt was not referring to pass-through costs is thus baffling. Opp. 23. Plaintiffs nonetheless chastise Defendants for not offering a "competing meaning," *id.*, but Mr. Levitt's exceptionally clear statement leaves no room for interpretation. *See Borteanu v. Nikola Corp.*, 2023 WL 1472852, at \*19 (D. Ariz. Feb. 2, 2023) (no risk of statement misleading investors where a statement is "precise" and "directly address[es]" an issue).

Even were Plaintiffs' interpretation somehow correct, Plaintiffs fail to address how the statement would be misleading. Plaintiffs' allegation that Core received "many other questions and concerns" from customers, Opp. 23, does not contradict the conclusion that the strategy was "validated." ¶ 224. And Plaintiffs' vague allegations that "multiple hosting customers directly challenge[d] the legality" of the surcharges are plainly insufficient because they are unsupported by any well-pled facts. *Capstead*, 258 F. Supp. 2d at 548; *see also* Mot. 24. Likewise, the allegation that Core had $800,000 in overdue accounts payable related to pass-through disputes by July 2022, Opp. 23, does not conflict with Mr. Levitt's statement because Plaintiffs have not alleged whether $800,000 represented a material portion of the total pass-through costs.[4] Further, Plaintiffs allege only two specific instances of surcharge disputes by August 2022 when the statement was made, and even Celsius did not dispute its charges until the following month.[5]

C.     **Plaintiffs Do Not Plead An Actionable Omission Under Item 303**

Plaintiffs' attempt to use Item 303 to remedy their defective claims fails. As Plaintiffs recognize, Opp. 13, the Fifth Circuit has "never held that Item 303 creates a duty to disclose under the" Exchange Act. *Genesee Cnty. Emps' Ret. Sys. v. FirstCash Holdings Inc.*, 2023 WL 2752846,

---

[4]   The negligible amount in dispute demonstrates that any dispute over the pass through was immaterial given the Company's $164 million in revenue in Q2 2022 alone.

[5]   Plaintiffs offer no substantive rebuttal to the arguments that defendants' SOX Certifications were not false or misleading. *Compare* Mot. 25, *with* Opp. 21, n. 14.

10

at \*14 (N.D. Tex. Mar. 31, 2023).  Regardless, Item 303 fails as a predicate for violations of both the Securities Act and Exchange Act because the Complaint does not establish a "known trend" requiring disclosure at the time of the Registration or Proxy Statements or at all during the Class Period.  Plaintiffs do not allege with specificity when the alleged pass-throughs were occurring, that Defendants believed them to be improper, or that it was reasonably likely they would materially impact Core's business.[6]  Mot. 16-17; *see Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 221 (5th Cir. 2004).  Nor do Plaintiffs allege "*actual knowledge* of the purported trend." *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882, 898 (E.D. La. 2014).

## III.  <u>PLAINTIFFS' PURCHASES DEMONSTRATE A LACK OF RELIANCE</u>

Plaintiffs do not dispute that the two Plaintiffs whose purchases were actually attached to the Complaint made no post-July 2022 purchases.  Instead, Plaintiffs criticize Defendants for overlooking purchases attached to a different document referred to in passing in the Complaint. Opp. 20.[7]  But that purchase does not salvage Plaintiffs' theory.  The sole post-July 2022 purchase occurred on October 19, 2022, *after* Plaintiffs allege that Celsius filed a motion in bankruptcy court that revealed to the market that Core was attempting to foist pass-through costs onto customers and "corrected" Defendants' prior misstatements.  Opp. 31-32.  Thus, the central

---

[6]  Plaintiffs also argue that Defendants had a duty to make additional disclosures, beyond their robust risk disclosures, that "Core was engaged in conduct that entailed a material undisclosed risk," Opp. 17-18, but this is simply an Item 303 argument that fails for the reasons discussed *supra* Section II.C.  Defendants' reliance on *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228 (5th Cir. 2009) is misplaced because, unlike here, *Lormand* addressed whether defendant's cautionary language was sufficient to render related misstatements immaterial; it did not address whether the failure to disclose a risk factor constituted a misrepresentation.  *Id.* at 248.  The same is true for *In re Cassava Sciences Inc., Sec. Litig.*, 2023 WL 3442087, at \*8 (W. D. Tx. May 11, 2023), which did not address risk disclosures at all.  *See* Opp. 17.

[7]  Defendants of course did not intend to mislead the Court in overlooking a document that was not appended to the Complaint, and Plaintiffs' *ad hominem* attacks on Defendants' candor are inappropriate.

"omission" Plaintiffs allege in this case had, by Plaintiffs' own admission, already been disclosed at the time of Plaintiffs' post-July 2022 purchase, foreclosing any claim of reliance. *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 2023 WL 3781645, at *3 (N.D. Tex. June 2, 2023) ("A plaintiff who buys stock after a corrective disclosure cannot suffer an injury in fact because any 'reliance' on the earlier misrepresentation would not be reasonable given the disclosed information; and so a lack of reasonable reliance is a lack of standing under the PSLRA.").[8]

## IV.   PLAINTIFFS DO NOT PLEAD SCIENTER

The Opposition magnifies the Complaint's deficiencies in pleading scienter. The PSLRA requires Plaintiffs to plead "with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind," creating an inference that is "cogent and at least as compelling as any opposing inference" drawn from the allegations. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 314, 324 (2007). Plaintiffs attempt to distill an inference of scienter from factually unsupported conclusions that do not satisfy their heightened burden.

### A.   Plaintiffs' Theories of Fraudulent Intent Do Not Satisfy the PSLRA

***Conclusory allegations of knowledge do not suffice.*** Plaintiffs' Opposition confirms what is clear from the face of the Complaint: Plaintiffs do not come close to pleading a "strong inference" of scienter as the PSLRA requires.[9] Indeed, Plaintiffs do not even mention many of the Defendants, and their allegations for the remainder other than Mr. Levitt or Mr. Feinstein amount to no more than the conclusory assertion that they "knew of the concealed risks" but signed documents

---

[8]   To be clear, as Defendants argued in their Motion, the allegedly omitted information is attenuated from the alleged misstatements and could not have rendered those statements false. But to the extent Plaintiffs argue otherwise, the information they allege was concealed was, according to Plaintiffs, revealed in Celsius' contempt motion in bankruptcy.

[9]   This is both unsurprising and particularly fatal with respect to the XPDI directors, none of whom continued in their roles following the consummation of the merger on January 19, 2022 and for whom Plaintiffs set forth not a single scienter allegation.

containing misstatements. Opp. 25.[10]  Plaintiffs' reliance on *In re Fleming Companies Inc. Sec. & Derivative Litig.*, 2004 WL 5278716 (E.D. Tex. June 16, 2004) is misplaced.  The complaint at issue in *Fleming* made specific allegations, corroborated by a confidential witness, that the CEO received reports showing declining sales numbers of retail stores while making public statements claiming that the company's retail segment was growing.  *Id.* at \*32.  Here, the Complaint contains *nothing* to support its naked assertion that Defendants knew or had access to information contradicting their public statements.  That falls well short of pleading "with particularity facts that, assumed to be true, constitute persuasive, effective and cogent evidence from which it can logically be deduced that defendants acted" with the required mental state.  *Id.* at \*10.

Plaintiffs otherwise argue generally that "Core receive[d] vigorous pushback" and that Core "racked up $800,000 in overdue accounts receivable," Opp. 26, but plead no facts specifying *who* was privy to that information or what portion of the $800,000 was attributable to surcharge disputes, nor do they allege why Defendants—all high-level executives—would have been alerted about such a relatively minor accounts receivable balance.  *See Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 186 (5th Cir. 2019) (group allegations do not speak to an individual's "state of mind" or "individual intent"); *In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 825 (S.D. Tex. 2013) ("it cannot be presumed that [company's] top executives knew the most granular details regarding operations within" an allegedly important business segment).

***Reliance on the accusations in the Celsius litigation does not suffice.***  The Opposition underscores the extent to which Plaintiffs are relying on the Celsius litigation for their scienter

---

[10]    To the extent Plaintiffs argue that merely signing documents is sufficient to establish scienter, Plaintiffs are wrong.  Opp. 25; *Plaisance v. Schiller*, 2019 WL 1205628, at \*17 (S.D. Tex. Mar. 14, 2019). ("A defendant's signature on an SEC filing with false or misleading statements or omissions cannot by itself support a strong inference of scienter.").

13

allegations as to Mr. Levitt, Opp. 26-27, which is improper. [11]   *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253, at *8 (S.D.N.Y. June 28, 2017) ("Plaintiffs' citation to . . . lawsuits and government investigations involving [the defendants] provides no evidence of scienter."). But the allegations Plaintiffs rely on from the Celsius litigation to support scienter are entirely inadequate in any case. For example, Plaintiffs point to Celsius' argument that Mr. Levitt allegedly sought to mitigate Core's increased power costs, ¶ 123; Opp. 26-27, but do not explain how this equates to knowledge that any pass-through surcharges were improper. Plaintiffs further dismiss the fact that Defendants sought and secured legal approval, but that fact strongly undermines an intent to defraud. Mot. 29-30.[12] Plaintiffs also argue that the Celsius filings reflect that Core's auditor "expressly disagreed with Core's position," but dismiss Defendants' authority making clear that a mere disagreement with an auditor does not support scienter, *id.*, and offer no authority at all for the contrary view. *See* Opp. 26, n. 18.[13] At bottom, the Celsius litigation is an unadjudicated contract dispute, and neither the fact of that litigation nor the allegations in Celsius' filings create a cogent and compelling inference of scienter.

   ***Plaintiffs are not entitled to the narrow "core operations" exception.*** Plaintiffs attempt to invoke the narrow "core operations" doctrine, and seek to "rest on the inference that defendants

---

  [11] Plaintiffs' reliance on *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018), is misplaced. *Mylan* dealt with *illegal* anticompetitive conduct and government investigations surrounding Mylan's drug classifications, and the plaintiff alleged specific facts establishing that Mylan knew its classifications were incorrect. *Id.* at *15-16; Opp. 29.

  [12] Plaintiffs rely on *Sec. & Exch. Comm'n v. Sethi Petroleum, LLC* to argue that reliance on counsel is irrelevant, but in that case, counsel "acted at the behest of a fraud." 2017 WL 3386047, at *5 (E.D. Tex. Aug. 7, 2017). Plaintiffs do not make those accusations here.

  [13] Plaintiffs cursorily attempt to distinguish *Lovelace* (disagreement with and subsequent replacement of auditors), *Brockton* (auditor resignation), and *Dell* (knowledge of specific accounting violations) as inapplicable, but the facts in those cases were far more egregious than those here and those courts still declined to find scienter. *All* Plaintiffs allege here is a "mere disagreement" with EY, Opp. 26, n. 18, which allegation is refuted in any case by EY's statement that "there were no [] disagreements . . . between [Core] and EY." Mot. 29-30; Ex. N at 2.

must have been aware of" the alleged misconduct "based on their positions within the company." *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 603 (N.D. Tex. 2021). Opp. 27-28. But absent "special circumstances" not present here, Plaintiffs are not entitled to this inference.

Plaintiffs rely on *Carlton v. Cannon*, 184 F. Supp. 3d 428, 458-59 (S.D. Tex. 2016), but that case is inapposite. In *Carlton*, the "special circumstances" exception applied to a CEO whose business depended on the success of one production plant. *Id.* 483-85. The complaint pled specific facts showing that executives had "repeatedly communicated specific concerns" to the CEO that his statements about the plant were misleading, so the court applied the "core operations" exception that the CEO recklessly disregarded the falsity of his statements. *Id.* at 484. Not so here. Core's success did not depend on the business of one customer, or even one segment. Instead, Core's hosting segment accounted for a fraction of Core's revenue as compared to its self-mining segment. Mot. 28-29. And there are no allegations about the extent to which Core relied on the pass-through costs. Plaintiffs' allegations do not establish the reckless disregard in *Carlton*.

Plaintiffs also point to unsupported allegations that Mr. Levitt and Ms. Sterling "omitted information readily apparent to" them, but again fail to explain why Mr. Levitt's alleged efforts to mitigate increased costs or Ms. Sterling's participation in meetings in "summer of 2022" equate to knowledge that any pass-through surcharges were improper. *See* Opp. 28; ¶ 131. Recognizing that unreliable confidential sources carry no weight in this Circuit, Plaintiffs distance themselves from the fact that the Complaint's only allegations about these alleged meetings came from a confidential witness. *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008). Notably, in their Opposition, Plaintiffs make no effort to defend the reliability of their confidential witnesses or the information they provided.

**B.**   **Plaintiffs Do Not Allege Motive**

The Complaint also fails to adequately plead that Defendants had a motive for engaging in

15

securities fraud because they stood to gain "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 377 (S.D. Tex. 2011), *aff'd sub nom.* 464 F. App'x 334 (5th Cir. 2012).

*First*, against ample authority to the contrary, Plaintiffs ask this Court to find motive to commit fraud based on Mr. Levitt and Mr. Feinstein's ownership of Core common stock. Opp. 29-30. Allegations of motive to increase compensation are inadequate because "the executives of virtually every corporation in the United States would be subject to fraud allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (motive to inflate value of defendants' investments insufficient to establish scienter); *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *18 (N.D. Cal. Sept. 29, 2021) (allegations regarding motive to boost "stock prices in the months surrounding the company's IPO are not specific or particularized"). Any finding of motive here is further undermined by the fact that Mr. Levitt did not sell his Core stock. The absence of these allegations "supports an inference opposing the claim that a defendant acted with scienter." *Gamboa v. Citizens, Inc.*, 2018 WL 2107205, at *4 (W.D. Tex. May 7, 2018), *report and rec. adopted*, 2018 WL 2422764 (W.D. Tex. May 29, 2018).

*Second*, Plaintiffs ignore the significance of Defendants' stock ***purchases*** during the Class Period despite the fact that those purchases dwarf alleged sales by one Defendant (Mr. Feinstein). Mot. 32-33; Opp. 30. Moreover, even taken in isolation, Mr. Feinstein's stock sales hardly support a finding of motive—for one thing, the sales occurred when Core's stock price was tumbling and less than half of what it was at the beginning of the Class Period. *See* Ex. X. The Fifth Circuit has found a "strained and tenuous inference of motive" where a stock sale did not occur shortly following an announcement that causes stock price to spike. *Shaw Grp.*, 537 F.3d at 543. Indeed, Plaintiffs allege nothing about the timing of Mr. Feinstein's sales or any facts rendering them

16

"extraordinary or unusual." *In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 646 (S.D. Tex. 2001), *aff'd sub nom.*, 292 F.3d 424 (5th Cir. 2002). Further, Plaintiffs allege that Mr. Feinstein's sales occurred in May of 2022, before any particularized allegations that pass-through charges were even occurring.[14] These flimsy allegations are especially inadequate in the absence of a single allegation that Mr. Feinstein was aware of or otherwise involved in the pass-through charges. Plaintiffs rely on out-of-circuit authority suggesting that stock purchases are not inconsistent with fraud while failing to meaningfully address in-circuit authority holding that "the fact that the other defendants did not sell their shares during the relevant class period undermines plaintiffs' claim of scienter." *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 518 (S.D. Tex. 2017).

### C.      Defendants' Competing Inference is More Compelling

The far more compelling inference that emerges from Plaintiffs' Complaint is that Defendants spoke honestly about the risks Core faced in the wake of increasing power prices as a result of unpredictable events, such as weather patterns and the war in Ukraine. Defendants worked with their lawyers and auditors in an effort to find ways to mitigate these costs and ultimately implemented a solution that they believed was consistent with their hosting contracts.

### V.      PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

The Complaint's failure to plead loss causation is an independent ground for dismissal. Mot. 34-35. In their Opposition, Plaintiffs suggest that this Court should adopt a hybrid approach to loss causation in which certain disclosures were corrective and others were a materialization of allegedly concealed risks. Opp. 31-32. Neither assertion holds water. The September 2022 Celsius motion in the bankruptcy court was not a corrective disclosure because it did not reveal the falsity of any prior representation. *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d

---

[14]    Plaintiffs also do not allege that Mr. Feinstein made any misstatements after Core's 2021 Form 10-K filed on March 30, 2022, long before any alleged misconduct.

822, 864 (S.D. Tex. 2016).  Plaintiffs do not explain how the Celsius motion revealed the falsity of Defendants' statements that "increased power costs . . . could have a material adverse effect on our business" or "we may not be able to attract customers if we fail to provide competitive pricing terms."  *See Magruder v. Halliburton Co.*, 2009 WL 854656, at *15 (N.D. Tex. Mar. 31, 2009).[15]

Plaintiffs' argument that Core's October 27, 2022 Form 8-K and subsequent bankruptcy filing were materializations of concealed risks fares no better.  Opp. 33.  Core announced on October 27 that "[a]s previously disclosed, the Company's operating performance and liquidity have been severely impacted by the prolonged decrease in the price of bitcoin, the increase in electricity costs, . . . and the litigation with Celsius," and that it was considering "seek[ing] relief under the applicable bankruptcy or insolvency laws."  Ex. J at 3.  Those risks were already known, which dooms Plaintiffs' assertion that this disclosure was a materialization of the allegedly concealed risk that Core was improperly passing power charges through to its customers.  Core's bankruptcy filing on December 21, 2022 similarly is "the revelation of confirmatory information, or information already known to the market," which "cannot constitute a corrective disclosure."  *Magruder*, 2009 WL 854656, at *11.[16]

## CONCLUSION

Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

---

[15]   Plaintiffs argue that Celsius' objection and its contempt motion "collectively constitute[d] a corrective disclosure[.]"  Opp. 32-33.  This does not cure the defects in Plaintiffs' argument.  *First*, Plaintiffs did not plead that the objection constituted a corrective disclosure, nor could they.  *Second*, the objection did not disclose new information and is nothing more than repeat allegations from Celsius.  As Defendants established, "a corrective disclosure that is entirely based on another party's allegation in a separate suit" will not suffice.  *FirstCash Holdings*, 2023 WL 2752846, at *20.  *Third*, *Cassava*, 2023 WL 3442087, at *3-5, 11 is inapplicable—that case stands for the ordinary proposition that loss causation may be established by a series of corrective disclosures, after which a company's stock price declines.  *See* Opp. 32.

[16]  Because Plaintiffs fail to plead a primary violation, they also fail to plead control person liability under Section 15 of the Securities Act and Section 20(a) of the Exchange Act.  *See, e.g.*, *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 690 (N.D. Tex. 2022).

Dated: September 18, 2023

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ John Bash*
John F. Bash
Texas Bar I.D. 24067504
300 W. Sixth Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
johnbash@quinnemanuel.com

John B. Quinn (*pro hac vice forthcoming*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
johnquinn@quinnemanuel.com

Jesse Bernstein (*pro hac vice forthcoming)*
Brenna Nelinson (*pro hac vice forthcoming*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com

*Attorneys for Defendants*