**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

MEI PANG, Individually and on Behalf of
All Others Similarly Situated

        Plaintiff,

     v.

MICHAEL LEVITT, MICHAEL
TRZUPEK, and DENISE STERLING,

        Defendants.

Case No. 1:22-cv-01191-DAE

**DEFENDANTS' MOTION FOR RECONSIDERATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................................1

BACKGROUND .........................................................................................................................2

ARGUMENT ..............................................................................................................................4

I.    DEFENDANTS DISCLOSED CORE'S PRICING STRUCTURE AND HAD NO
DUTY TO DISCLOSE ALLEGED "CHANGES" UNDER CONSIDERATION ............4

II.    MICHAEL LEVITT IS NOT NAMED AS A SECTION 15 DEFENDANT.....................7

CONCLUSION...........................................................................................................................7

Defendants respectfully move the Court to reconsider a portion of its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss.

## PRELIMINARY STATEMENT

In a thorough opinion, this Court has now dismissed the vast majority of Plaintiffs' Complaint. But the Court permitted Plaintiffs' claims under Section 11 of the Securities Act and Section 14 of the Exchange Act to proceed with respect to one alleged misstatement. Dkt. 73 ("Opinion") at 18-19, 23-24. That statement provided: "Most contracts are renewable, and our customers are generally billed on a fixed and recurring basis each month for the duration of their contract, which vary from one to three years in length." *Id.* at 14 (emphasis omitted). Defendants respectfully submit that the Court's Opinion overlooked two critical points in allowing Plaintiffs to proceed on that statement—in part because the Opinion relied on a theory of falsity that differed fundamentally from the theory that Plaintiffs had advanced in their papers and so Defendants never had an opportunity to identify the legal defects in that theory.

*First*, Plaintiffs' theory of falsity was that the statement "omitted that Core *was imposing* power cost pass-through charges on its hosting customers *in contravention of their fixed rate contracts*." Dkt. 67 ("Opp.") at 12 (emphases added). In other words, Plaintiffs argued that the statement contradicted Core's existing practices at the time the statement was made. Defendants responded to that argument (Dkt. 69 ("Reply") at 4-7), and this Court had little trouble rejecting it because the Complaint does "not allege any facts that any customer even received a pass-through charge" until *months* after the alleged misstatements. Opinion at 13. But the Court nevertheless found that statement actionable on the view that Defendants had failed to disclose that they might change their pricing structure in the future. *Id.* at 15-16, 18-19, 23-24. Defendants never had an opportunity to respond to that theory, and it is foreclosed by well-established precedent holding

that a company has no duty to disclose plans for potential future changes to its business plans absent special circumstances not alleged here.

*Second*, even putting aside that legal barrier, the Court's Opinion did not address a factual explanation that Defendants had advanced for why the statement was true.  In particular, the word "generally" connoted that while most charges under each customer contract are "fixed," some charges may not be, and the additional statement that the contracts were "adjusted for actual costs" disclosed that costs could be passed through to customers.  The Court's Opinion addressed only a different connotation of "generally": that some contracts were not fixed at all.  But once "generally" is understood in the former sense—as it must be to give meaning to Defendants' disclosure that Core "adjusted for actual costs"—it is indisputable that Defendants disclosed that power costs were not fixed.  Thus, the very information allegedly omitted was, in fact, disclosed.

Defendants separately seek reconsideration of the Court's ruling that Michael Levitt was a control person under Section 15 of the Securities Act (Opinion at 54) because the Complaint does not name him as a Section 15 Defendant (*see* Dkt. 62 ("Am. Compl."), Count IV (against "XPDI Director Defendants")).

For the foregoing reasons, Defendants respectfully submit their Motion for Reconsideration should be granted and the Complaint should be dismissed in its entirety.

## **BACKGROUND**

Plaintiffs' Complaint sets out claims under Sections 11 and 15 of the Securities Act of 1933 as well as Sections 14(a), 10(b), and 20(a) of the Securities Exchange Act of 1934.  The Securities Act and Section 14(a) claims challenged certain statements made in connection with Core's merger with XPDI in Registration and Proxy Statements made effective on December 30, 2021 and January 3, 2022, respectively.  As relevant here, Plaintiffs allege that the statement "[m]ost contracts are renewable, and our customers are generally billed on a fixed and recurring basis each

month for the duration of their contract" ("Statement No. 5"), was misleading because it failed to disclose that Core was "attempting to force its hosting customers to pay Core's increased power costs in contravention of their fixed rate contracts."  Am. Compl. ¶¶ 99-100 (emphasis omitted).

Defendants moved to dismiss for lack of falsity, scienter, loss causation, and reliance.  Dkt. 65 ("Mot.").  With respect to Statement No. 5, Defendants argued the statement was not misleading because, among other reasons, Plaintiffs had failed to allege that the purportedly undisclosed issues were occurring at the time of the alleged misstatements.  *Id.* at 12-13, 16.  And Defendants further argued that, in any event, Defendants had disclosed that while contracts were "generally" fixed, they were adjusted for "actual costs," *i.e.*, actual pricing costs.  *Id.* at 13, 15.  In response, Plaintiffs argued that Statement No. 5 (referred to as Statement 2 in Plaintiffs' Opposition) was misleading because "it omitted that while Core's hosting contracts entailed fixed rates for energy usage, *Core was billing its customers for its own increased power costs*, which violated the fixed-rate terms of those contracts."  Opp. at 12 (emphasis added).  Plaintiffs further argued—without reference to the contract or any dictionary—that Defendants' unambiguous disclosure that it adjusted for actual *costs* actually meant it adjusted for *usage*, not cost.  *Id.* at 18.

On December 20, 2023, the Court granted in part and denied in part Defendants' Motion.  The Court dismissed Plaintiffs' Section 10(b) claims in their entirety for lack of scienter and loss causation.  Opinion at 24-47.  The Court also dismissed all of the statements Plaintiffs challenged under Sections 11 and 14(a) for lack of falsity other than Statement No. 5.  *Id.* at 12, 14, 18-19, 23-24.  The Court ruled that Plaintiffs "do not allege any facts that any customer even received a pass-through charge before June 2022," months after Statement No. 5 was issued.  *Id.* at 13.  Nonetheless, the Court rejected Defendants' Motion with respect to Statement No. 5 because it found that "the company *had plans* to divert from fixed rates."  *Id.* at 15 (emphasis added).  And

the Court concluded that the word "generally" did not establish the truth of the statement because "Core was not just planning on making exceptions [from fixed rates] to a few customers" but rather was "going to overhaul its pricing terms for many of their contracts."  *Id.* at 16.

## ARGUMENT

A district court may "may reconsider an interlocutory order pursuant to Federal Rule of Civil Procedure 54(b)."  *Onofre v. C.R. England, Inc.*, 2017 WL 4082366, at *2 (W.D. Tex. July 24, 2017) (Ezra, J.).  District courts in the Fifth Circuit often evaluate Rule 54(b) motions to reconsider interlocutory orders using the standard to amend final judgments in Federal Rule of Civil Procedure 59(e) whereby reconsideration can be granted on any one of three grounds: "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact."  *Id*.  Although courts typically look to Rule 59 for guidance, the Fifth Circuit "has recognized a district court's authority to reconsider an interlocutory order *for any reason* it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."  *Rivas v. Greyhound Lines, Inc.*, 2016 WL 11164796, at *4 (W.D. Tex. Jan. 11, 2016) (citing *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210 (5th Cir. 2010) (quotations omitted and emphasis added)).  Here, reconsideration should be granted to correct manifest errors.

## I.     DEFENDANTS DISCLOSED CORE'S PRICING STRUCTURE AND HAD NO DUTY TO DISCLOSE ALLEGED "CHANGES" UNDER CONSIDERATION

In opposing Defendants' Motion, Plaintiffs argued that Statement No. 5 was misleading "because it omitted that while Core's hosting contracts entailed fixed rates for energy usage, *Core was billing its customers for its own increased power costs*, which violated the fixed-rate terms of those contracts."  Opp. at 12 (emphasis added).  Defendants—addressing Plaintiffs' clear allegations and arguments—argued this statement was not misleading because Plaintiffs' own

4

allegations contradict their claim that any such pass-through was occurring at the time of the Registration Statement.  Reply at 4-5.  The Court agreed that Plaintiffs "do not allege any facts that any customer even received a pass-through charge before June 2022."  Opinion at 13.

Nonetheless, the Court denied Defendants' motion with respect to this statement based on a different rationale than the one articulated by Plaintiffs' Complaint or Opposition.  Specifically, the Court held that Plaintiffs adequately alleged Statement No. 5 was false because Defendants "failed to disclose to investors that the literal truth was ***subject to change*** in the near future" and "the company ***had plans*** to divert from fixed rates."  *Id.* at 15-16 (emphasis added).  The Court further held that the word "generally" did not render the statement true because the future plans would apply to "many of [Core's] contracts," not just "a few customers."  *Id.* at 16.  That holding is refuted on two independently sufficient grounds—one legal and one factual.

*First*, Core had no duty to disclose the alleged "change of strategy."  It is "well established that a company has no such duty to disclose changes to its business plans[.]"  *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 495 (S.D.N.Y. 2021) (internal quotation omitted); *see San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 810 (2d Cir. 1996) (finding defendants were under no duty to disclose "the implementation of an alternative pricing strategy" where they had not "foreclosed all alternatives" and dismissing plaintiffs' claim).[1]  That rule makes sense because requiring companies to disclose considerations of potential changes in business strategy would "lead management simply to bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (quotations omitted).

---

[1]   Defendants did not raise this argument in the motion to dismiss briefing because the "change in plans" rationale articulated by the Court was not the theory articulated by Plaintiffs.

The sole exception to this well-established rule is where a company "had 'hyped' a specific plan, thereby inducing investors to believe that alternative[ ] [plans] were excluded.'" *Friedman v. Endo Int'l PLC*, 2018 WL 446189, at *6 (S.D.N.Y. Jan. 16, 2018) (quoting *Philip Morris*, 75 F.3d at 810) (alterations in original)). "To qualify for that exception, a plaintiff must allege facts plausibly establishing that a company had stated its intention to adhere exclusively to a particular strategy and then changed its strategy without informing investors." *Id.* (internal quotation omitted).

Here, Plaintiffs do not allege that Defendants had "hyped a specific plan" such that investors could "believe that alternative plans were excluded." Indeed, Defendants warned that Core "may adjust [its] business model further from time to time," and that it was uncertain whether Core's "current business strategy or any new or revised business strategies will be successful or that we will successfully address the risks we face," including the increased power costs Defendants repeatedly warned investors could harm Core's business. Mot. Ex. A (Registration Statement) at 46; Mot. Ex. D (Proxy Statement) at 46.

*Second*, even putting aside that legal problem with the theory of falsity that the Court's Opinion relied on, the Opinion did not address one of Defendants' arguments for why the statement was true. Defendants disclosed that although contracts were "generally" billed on a fixed cost basis, there was an important exception to that rule: Contracts were subject to "adjustment for actual costs." Mot. at 6, 13. Although the Court acknowledged that "generally" necessarily implies exceptions, it held that the statement was misleading because Core would no longer only be billing "a few outliers . . . for actual costs" Opinion at 16. Instead, Core would be billing many customers for actual costs, which the Court found was inconsistent with Statement No. 5. *Id.*

That rationale, however, does not address one of Defendants' arguments for why the statement was not misleading. Although the use of "generally" could have implied that "a few

outliers" were exempt from a fixed pricing structure altogether, it also implies that certain components of bills (even fixed contract bills) were not fixed. Mot. at 6, 13, 15. And, lest there be any ambiguity, Defendants disclosed precisely which component of the bills were "generally" calculated on a ***non-fixed*** basis: "actual costs." *Id.* at 13, 15; Reply at 5-6. In that sense, the contracts were akin to an attorney-fee arrangement in which the attorney agrees to a flat fee for an engagement but also states that she will pass through costs like printing bills and Westlaw charges.

Accordingly, Core's disclosures adequately apprised investors that the cost components of the otherwise fixed contracts could be billed to customers. For that reason, the allegation that Defendants were allegedly "planning on changing [Core's] pricing" to pass through power costs to customers (Opinion at 16) was consistent with Core's disclosures.[2]

## II.    MICHAEL LEVITT IS NOT NAMED AS A SECTION 15 DEFENDANT

The Court ruled that Mr. Levitt was liable as a control person under Section 15 of the Securities Act. *Id.* at 54. But the Complaint does not name Mr. Levitt as a control person under Section 15. *See* Am. Compl., Count IV (against "XPDI Director Defendants"). Accordingly, he cannot be liable under Section 15.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its denial of Defendants' Motion to Dismiss with respect to Statement No. 5 and the Section 15 claim not asserted against Mr. Levitt.

---

[2]    The Court found that the "adjust[ments] for costs" language "does not counter Plaintiffs' allegation that Core was planning on changing its pricing" (Opinion at 16), but the Court overlooks that the adjustment for cost language demonstrates that the very alleged "change" to pricing—*i.e.*, charging customers for actual increases in power costs—had already been disclosed to investors.

Dated: December 28, 2023

Respectfully submitted,

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By: */s/ John Bash*
John Bash
Texas Bar I.D. 24067504
300 W. Sixth Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
johnbash@quinnemanuel.com

John B. Quinn (*pro hac vice forthcoming*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
johnquinn@quinnemanuel.com

Jesse Bernstein (*pro hac vice forthcoming*)
Brenna Nelinson (*pro hac vice forthcoming*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing document was filed under the Court's CM/ECF system, automatically effecting service on counsel of record for all parties who have appeared in this action on the date of such service.

*/s/ John Bash*
John Bash