**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING,<br><br>Defendants. | Case No. 1:22-CV-1191-DAE<br><br>CLASS ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS


I. INTRODUCTION ..................................................... 1

II. STATEMENT OF FACTS ..................................................... 2

III. ARGUMENT ..................................................... 3

A. Defendants Impermissibly Seek to Rehash Arguments Considered and Rejected by the Court ..................................................... 3

B. Defendants Identify no "Manifest Errors" in the Court's Order ..................................................... 4

1. The Court Made No "Manifest Error" in Finding the Complaint Adequately Alleged Statement 5 was Misleading ..................................................... 5

2. The Court Made No "Manifest Error" in Rejecting Defendants' Argument About "Adjust[ments] for Actual Costs" ..................................................... 7

IV. CONCLUSION ..................................................... 10

Lead Plaintiff Morgan Hoffman and named plaintiffs Evan Achee and William J. Emanuel ("Plaintiffs") submit this memorandum of law in opposition to Defendants' motion for reconsideration (ECF No. 75, "Motion") of the Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF No. 73, "Order").

## I. INTRODUCTION

Defendants' Motion is an improper attempt to rehash arguments they had full opportunity to present, and did present, to the Court in connection with their motion to dismiss. This Court routinely rejects such attempts, which fail to meet any of the criteria for granting the extraordinary relief Defendants seek. Defendants incorrectly assert that the Court made "manifest errors" in finding that the complaint adequately alleged that Defendants made a misleading statement of material fact. Defendants conveniently ignore the Court's five and a half pages of discussion devoted solely to analyzing that statement and the relevant allegations of Plaintiffs' complaint. Moreover, in its Order the Court carefully considered and rejected each of the arguments Defendants now seek to re-urge. Contrary to Defendants' assertions, the Court's analysis did not invent a new, untested theory of liability. The Court found that the statement was misleading for the same reasons Plaintiffs alleged in their complaint and argued in opposing Defendants' arguments the first time. There is no reason to reconsider the Court's Order.

The arguments reiterated in Defendants' Motion also fail on the merits. The Court found that the statement that the company generally billed its hosting customers on a fixed basis was misleading because, among other things, at the time the statement was made the company had already begun to implement its plan to rewrite all of its hosting contracts to permit variable rates. As the Court recognized, this was a highly material strategic change which rendered Defendants' statement about using fixed rate hosting contracts materially misleading. The fact that Defendants

made a separate statement 137 pages earlier about "adjust[ments] for actual costs" did not cure the misleading statement. In no way did the vague "actual costs" statement adequately inform investors that the Company was passing through increases in its own power rates to customers in contravention of their "fixed rate" contracts.

Defendants raised these same arguments in their motion to dismiss. The Court considered and rejected these arguments in its Order. The Court should reject Defendants' arguments the second time around too.

## II. STATEMENT OF FACTS

Plaintiffs allege claims under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934. ECF No. 62 ("Complaint"). Plaintiffs' Section 11 and Section 14(a) claims are based on false and misleading statements in Registration and Proxy Statements issued by the predecessor to Core Scientific, Inc. ("Core" or the "Company"), a "blank check" company called Power & Digital Infrastructure Acquisition Corp. The Complaint alleges several false and misleading statements with respect to its Section 11 and 14(a) claims. The Court granted Defendants' motion to dismiss Plaintiffs' Section 11 and 14(a) claims based on most of these statements, but denied the motion with respect to "Statement 5": "Hosting revenue from customers and related parties is based on consumption-based contracts with our customers and related parties. Most contracts are renewable, and ***our customers are generally billed on a fixed and recurring basis***…." Complaint ¶99 (emphasis added).[1]

In their motion to dismiss, Defendants challenged whether Plaintiffs had adequately alleged falsity with respect to Statement 5. ECF No. 65 at 14-16, 22-23. Defendants argued that

---

[1] In their memorandum in opposition to Defendants' motion to dismiss (ECF No. 67, "Opp."), Plaintiffs referred to this statement as "Statement 2." To avoid confusion, Plaintiffs will refer to the relevant statement using the Court's identifier of "Statement 5."

Statement 5 was not false or misleading (1) because of the qualifier "generally"; and (2) because Core adjusted for "actual costs." *Id.* Plaintiffs squarely addressed these arguments in their opposition brief. Opp. at 17-18. Defendants reiterated their arguments once more in their reply brief. ECF No. 69 at 5-6, 8-9.

The Court's Order devoted five and a half pages to analyzing Statement 5 and the Complaint's relevant factual allegations, and explaining why it rejected Defendants' arguments. Order at 14-19. The Court found that the Complaint adequately alleged that Statement 5 was misleading, and it denied Defendants' motion to dismiss Plaintiffs' claims under Section 11 and Section 14(a) based on Statement 5. *Id.*

## III. ARGUMENT

The Court should deny Defendant's Motion because there is no basis to reconsider its Order. The Court should also deny Defendants' Motion because, as the Court found the first time around, Defendants' rehashed arguments lack substantive merit.

### A. Defendants Impermissibly Seek to Rehash Arguments Considered and Rejected by the Court

As the Fifth Circuit has recognized, "there is no motion for 'reconsideration' in the Federal Rules of Civil Procedure." *Bass v. U.S. Dept. of Agriculture,* 211 F.3d 959, 962 (5th Cir. 2000).[2] The Court construes motions for reconsideration as motions to amend or alter judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *Id*.

Rule 59(e) is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment," *Templet v. Hydrochem, Inc.,* 367 F.3d 473, 478 (5th Cir. 2004). Rule 59(e) or a motion for reconsideration "should not be used to

[2] Internal quotations and citations are omitted unless otherwise indicated.

... re-urge matters that have already been advanced by a party." *Nationalist Movement v. Town of Jena*, 321 Fed. Appx. 359, 364 (5th Cir. 2009). Reconsideration of a prior order is "an extraordinary remedy that should be used sparingly." *Id.*

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet*, 367 F.3d at 478. "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Schiller v. Physicians Resource Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003)). "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Scwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012).

Defendants' Motion proffers only arguments that they could have, and did, present in their motion to dismiss the Complaint. These issues were fully briefed by the parties, and the Court thoroughly considered and addressed those arguments in its Order. In their Motion, Defendants attempt to mischaracterize the arguments previously presented to, and considered by, the Court in order to justify a second bite at the apple. That Defendants disagree with the outcome of the Court's decision and now wish to reframe and re-urge their rejected arguments is not valid grounds for reconsidering or altering the Court's Order.

**B. Defendants Identify no "Manifest Errors" in the Court's Order**

Defendants move for reconsideration of the Court's Order not on the basis of an intervening change of controlling law, nor on the basis of new evidence, but only to correct purported "manifest errors." The Court wrote five and a half pages of analysis focused solely on Statement 5, in addition to a fulsome discussion of the Complaint's allegations. Defendants attempt to distort that analysis

by cherry-picking select phrases, removed from context, to assert "manifest errors" by the Court. No such errors exist in the Court's Order.

Defendants wrongly assert that the Court denied their motion to dismiss with respect to Statement 5 "based on a different rationale than the one articulated by Plaintiffs' Complaint or Opposition." Motion at 5. To make this point, Defendants ignore the bulk of the Court's five and a half pages of analysis focused solely on Statement 5 and Plaintiffs' relevant factual allegations. Order at 14-19. Now, with the benefit of hindsight informed by the Court's opinion, Defendants apparently regret how they chose to challenge these allegations. That is their error, not the Court's.

**1. The Court Made No "Manifest Error" in Finding the Complaint Adequately Alleged Statement 5 was Misleading**

The Court found that the Complaint adequately alleged Statement 5 was misleading based on the same theory of falsity Plaintiffs alleged and argued. In holding that Statement 5 was adequately alleged to be misleading, the Court expressly considered Defendants' argument that the word "generally" rendered Statement 5 not misleading. Order at 15-16. The Court rejected this argument because, among other things, "Plaintiffs pled that at the time of the Registration Statement, Core sought to migrate 'all' of its new and renewing customers to new contracts that permitted Core to pass through power cost increases, and thus did not have fixed rates." *Id.* at 15 (quoting Complaint ¶123). That is the same theory and argument propounded by Plaintiffs. Opp at 17 ("Defendants' argument that the statement that customers are 'generally billed on a fixed' basis may be literally true also fails. Core sought to migrate 'all' of its new and renewing customers to new contracts that permitted Core to pass through power cost increases, and thus did not have fixed rates.") (citing Complaint ¶123).

In its analysis of Statement 5, the Court also noted Plaintiffs' allegations that at the end of 2021, Core was "revising the Master Services Agreement ("MSA"), the main form of the

agreement with Core's hosting customers, to add new language expressly permitting Core to pass through increased power costs." Order at 17 (citing Complaint ¶238). That Core had already begun revising its MSA when it issued Statement 5 further supports the finding that Statement 5 was misleading when made and accords with Plaintiffs' allegations. Indeed, that is precisely what the Court found: "Plaintiffs have claimed that there were facts available to the company about the nature of its business going forward that should have been disclosed to protect investors from future risks that may occur. This is especially the case when fixed pricing was central to Core's success as a company." Order at 18.

The Complaint alleges that at the time Statement 5 was made, Core had taken steps to implement its plan to migrate "all" of its hosting customers to the new MSA, which would controvert the "fixed-rate" terms of their contracts. Complaint ¶¶123, 238. The Court found that in light of these then-existing facts, Defendants could not "hid[e] behind vague and misleading language about the nature of [Core's] business. Therefore, the Court finds Plaintiffs pled with particularity that Statement 5 is misleading." *Id.* at 19. The Court committed no "manifest error" in finding Statement 5 was misleading based on the allegations of the Complaint, in accordance with Plaintiffs' theory of liability.

Defendants' argument also fails because neither the Court nor Plaintiffs relied on a standalone "duty to disclose" a future change of strategy. Motion at 5. Instead, Plaintiffs alleged, and the Court found, that the omitted facts rendered Statement 5 misleading. Order at 19; Complaint ¶100. The out-of-circuit cases Defendants cite for the proposition that there is usually no standalone duty to disclose a change in business strategy are not applicable here. In *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 495 (S.D.N.Y. 2021), the court found that allegations inferring pre-IPO discussions of potential acquisitions were:

(1) not plausibly alleged; (2) even if plausibly alleged, insufficient to render any statements in the offering materials false or misleading; and (3) did not amount to "a meaningful shift in business strategy." Likewise, in *Friedman v. Endo Int'l PLC*, No. 16-CV-3912 (JMF), 2018 WL 446189, at *6 (S.D.N.Y. Jan. 16, 2018), the allegations of an "admission" of a "secret plan" were not plausible, did not render misleading any of the extremely generic statements at issue in that case, and came "nowhere near suggesting… a secret plan to fundamentally and drastically change Qualitest," a major business unit. Those cases do not resemble the allegations presented here.

Moreover, the courts in *Farfetch* and *Endo* recognized that a duty to disclose *did* exist if "the plaintiff plausibly alleges that 'a company had stated its intention to adhere exclusively to a particular strategy and then changed its strategy without informing investors.'" *Farfetch*, 565 F. Supp. 3d at 495 (citing *Endo*, 2018 WL 446189, at *6 (citing, in turn, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 810 (2d Cir. 1996))). Here, Statement 5 relayed to investors Core's intention to adhere to a strategy of billing customers on a fixed-rate basis, while secretly Core had started to abandon its fixed-rate model, concealing major undisclosed risks from investors. Thus, not only did the Court make no "manifest errors" in finding Statement 5 was misleading, but the Order is also consistent with the case law cited by Defendants.

**2. The Court Made No "Manifest Error" in Rejecting Defendants' Argument About "Adjust[ments] for Actual Costs"**

Finally, Defendants reiterate another failed argument from their motion to dismiss, that Statement 5 was not misleading because Defendants—elsewhere in the Registration and Proxy Statements—referred to "adjust[ments] for actual costs." Motion at 6-7. The Court already considered and unequivocally rejected this argument. Order at 16 ("that Core stated elsewhere in the Registration statement that contracts were subject to "adjust[ments] for actual costs," does not counter Plaintiffs allegation that Core was planning on changing its pricing.").

As the Court recognized, Defendants strip the supposedly exculpatory disclosure from its relevant context. The statement about "adjust[ments] for actual costs" appears in a risk disclosure ***137 pages*** before Statement 5, and reads:

> ***If we fail to accurately estimate the factors upon which we base our contract pricing, we may generate less profit than expected or incur losses on those contracts, which could have a material adverse effect on our business, financial condition and results of operations.***
>
> Our hosting contracts are generally priced on the basis of estimated power consumption by our clients, along with other costs of service, as adjusted for actual costs. Our ability to earn a profit on such contracts requires that we accurately estimate the costs involved and outcomes likely to be achieved and assess the probability of generating sufficient hosting and colocation capacity within the contracted time period. In addition, we may not be able to obtain all expected benefits, including tax abatements or government incentives offered in opportunity zones. The inability to accurately estimate the factors upon which we base our contract pricing could have a material adverse effect on our business, financial condition and results of operations.

ECF No. 65-3 (Registration Statement) at 40 and 177 (emphasis in original). Nothing in this statement reasonably indicates that Core was diverging from its fixed rate hosting contracts by passing through its increased power rates. Given the full context of this statement, "actual costs" is an extremely vague term that could refer to any type of cost used as an input to "estimate the factors upon which we base our contract pricing." *Id.*

Moreover, the reference to "estimated power consumption by our clients," *id.*, supports Plaintiffs' explanation: that adjusting for "actual costs" simply refers to the fact that Core billed its customers in advance based on estimated power usage—at the agreed-upon fixed rate—subject to a subsequent "true up" adjustment after a customer's actual power usage was determined. Opp. at 18 (citing ECF No. 68-1 (Celsius objection) at 14). Thus, the adjustment for "actual costs" was merely to account for minor differences between the preliminary usage estimate and the final usage

calculation. Core's own internal accounting memo "explained that [the Celsius contract] and Core's other hosting contracts were 'variable consumption not variable price.'" *Id.* As the Complaint alleges, "Core's hosting customers[] entered fixed rate contracts with Core where the customer would pay… a fixed rate per kilowatt-hour (kWh, a measurement of energy usage) based on the actual monthly energy consumption attributed to the customer's hosted miners." Complaint ¶8. The relevant "costs" are simply the product of the fixed electricity rate and the electricity actually used by the hosting customer (*i.e.*, cost ($) = rate ($/kWh) * usage (kWh)). Plaintiffs' interpretation of "adjusted for actual costs," gives coherent meaning to both the terms "fixed basis" and "actual costs."

Conversely, under Defendants' strained interpretation, if the rate in a supposedly "fixed" rate contract is subject to change at the supplier's discretion, then there is no "fixed basis" at all. This is not like a flat fee agreement for legal services with minor expenses such as printing and Westlaw charges passed through to the client. It is more akin to a fixed rate agreement where the attorney agreed to bill a client $500/hr, then decided later that they needed to bill $550/hr to make a profit on the engagement. No reasonable client would allow the attorney to claim they could charge $550/hr because the retainer elsewhere allowed the attorney to pass through "actual costs."

Even if Defendants' interpretation were reasonable, in the context of a motion to dismiss, "[a] court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). Here, the Court should accept Plaintiffs' reasonable inference that the statement concerning "adjust[ments] for actual costs," found 137 pages before Statement 5, does not mean that Core's fixed-rate hosting contracts actually had no fixed rate at all. Thus, the Court made no "manifest error" in rejecting Defendants' argument that the "actual costs" statement somehow cures the misleading nature of Statement 5.

## IV. CONCLUSION

In its Order, the Court thoroughly considered and properly rejected the same arguments Defendants re-urge in their Motion concerning Statement 5. In their second bite at the apple, Defendants have provided no reason for the Court to reconsider its Order. The Court should deny Defendants' Motion.[3]

Dated: January 11, 2024

Respectfully submitted,

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

*/s/Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No.: 24027936
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
scochran@condontobin.com

*Liaison Counsel for Lead Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (*pro hac vice*)
Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

[3] Plaintiffs do not contest that the operative Complaint does not name Defendant Levitt as a defendant under Count IV (for violations of Section 15 of the Securities Act).

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/Stuart L. Cochran*