## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING,<br><br>        Defendants. | Case No. 1:22-cv-01191-DAE |

## DEFENDANTS' REPLY
## IN SUPPORT OF MOTION FOR RECONSIDERATION

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................2

I.   PLAINTIFFS DID NOT ADVANCE THE THEORY ADOPTED BY THE
     COURT, WHICH IS INCONSISTENT WITH WELL-ESTABLISHED
     CASELAW ...................................................................................................................2

II.  PLAINTIFFS HAVE NO EXPLANATION FOR DEFENDANTS'
     DISCLOSURE THAT CORE ADJUSTED FOR ACTUAL COSTS ................................5

III. PLAINTIFFS CONCEDE THAT MR. LEVITT MUST BE DISMISSED FROM
     THE SECTION 15 CLAIM .............................................................................................6

CONCLUSION .........................................................................................................................6

Defendants respectfully submit this Reply in Support of their Motion for Reconsideration.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that reconsideration is warranted. Plaintiffs do not dispute that their theory of falsity on Statement No. 5 was that Defendants had omitted that Core "*was imposing power cost pass-through charges* on its hosting customers *in contravention of their fixed rate contracts*." That theory—focused on what the company was doing at the time the statement was made—differs fundamentally from the "future change" theory adopted by the Court. And Defendants never had an opportunity to address *that* theory, which is foreclosed by settled principles.

Indeed, in their Opposition, Plaintiffs have been unable to identify a single authority holding that the securities laws require disclosure of potential future changes absent a stated intention to adhere *exclusively to a particular strategy*. Not one. And that exception could not apply here under any view, because Defendants' disclosures expressly warned that they may alter their business strategy. It is little wonder, then, that Plaintiffs did not advance this theory in their Complaint or original papers: It clearly lacks merit.

Moreover, Plaintiffs' Opposition confirms the other, independent problem with their claim as to Statement No. 5: It requires overlooking Defendants' actual disclosure that Core "adjusted for actual costs." Plaintiffs' only answer is to argue that "adjusted for actual costs" must have actually meant "adjusted for actual use" and that it was too many pages away from Statement No. 5. But "costs" do not mean "use," and Plaintiffs cannot establish a claim by cherry-picking sentences and ignoring the other, clarifying statements in the disclosure.

Finally, Plaintiffs concede that Michael Levitt cannot be liable under Section 15 of the Securities Act.

## ARGUMENT

It is well-settled in this District that "courts have 'considerable discretion in deciding whether to grant or deny a motion to alter a judgment.'"  *Crane v. Lithia to, Inc.*, 2014 WL 11600911, at *2 (W.D. Tex. July 2, 2014) (granting motion for reconsideration under Rule 59(e) allowing a party to present argument not included in original motion to dismiss briefing) (citing *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995)).  Moreover, reconsideration has been granted to address arguments "regarding the [c]ourt's Order itself." *Air Vent, Inc. v. Powermax Elec. Co., Ltd.*, 2023 WL 4982255, at *2 (N.D. Tex. Aug. 3, 2023), motion to certify appeal denied, 2023 WL 8285198 (N.D. Tex. Nov. 28, 2023).  As explained below, that is the case here.  The Court did not have the opportunity to evaluate arguments not presented by either party with respect to a company's contemplated future changes, and it did not address the explanation of "generally" offered by Defendants that accounts for the fact that some charges are not fixed.

## I.   PLAINTIFFS DID NOT ADVANCE THE THEORY ADOPTED BY THE COURT, WHICH IS INCONSISTENT WITH WELL-ESTABLISHED CASELAW

In their Motion for Reconsideration, Defendants demonstrated that Plaintiffs argued Statement No. 5 was misleading "because it omitted that while Core's hosting contracts entailed fixed rates for energy usage, ***Core was billing its customers for its own increased power costs***, which violated the fixed-rate terms of those contracts."  Dkt. 75 at 4 (citing Dkt. 67 at 12) (emphasis in original).  Defendants further demonstrated that this theory—which was expressly rejected by the Court—is fundamentally different from the theory the Court adopted in denying the Motion to Dismiss with respect to Statement No. 5.

In response, Plaintiffs do not dispute that they alleged Statement No. 5 was misleading because, at the time that statement was made, Core was "billing its customers for its own increased power costs, which violated the fixed-rate terms of those contracts."  Dkt. 67 at 12.  Plaintiffs do

not dispute that this theory was rejected.  Nor do they dispute that this rejected theory differs from the theory adopted by the Court.  And Plaintiffs do not point to a single allegation or argument where Plaintiffs claimed that any statement was misleading because Core failed to disclose a *future change*, which is the theory the Court adopted.

Plaintiffs have instead pointed to two sentences (contained in Paragraphs 123 and 238) in Plaintiffs' 264-paragraph Complaint that they claim are consistent with the "future change" theory that the Court ultimately adopted (even though they themselves never advanced that theory).  Dkt. 83 at 5-6.  But those sentences were not contained within the section of the Complaint articulating why Statement No. 5 was false, and so could not reasonably have put Defendants on notice about the supposed theory.  And at any rate, neither sentence actually advances the theory that Plaintiffs now claim they had advanced all along.

*First*, the single sentence cited from Paragraph 123—which is among a copy-and-paste of thirteen allegations from a different litigation—was simply an allegation that while Core allegedly "sought" to migrate customers to a new master contract that explicitly permitted "pass-through costs," certain customers allegedly rejected that change but still received an "improper" pass-through charge.  Dkt. 67 at 17 ("Core sought to migrate 'all' of its new and renewing customers to new contracts that permitted Core to pass through power cost increases, and thus did not have fixed rates.  *For existing customers with fixed-rate contracts Core imposed the improper surcharges anyway, turning them into variable-rate contracts.*") (citations omitted; emphasis added); *see also id.* at 4-5.  That passage was focused exclusively on the allegation that Core had allegedly imposed improper surcharges without client consent.  Nowhere does the passage remotely suggest

3

that the purported "migration" alone, in the absence of any purported "improper" pass-through, rendered any affirmative statement discussed elsewhere in the Complaint misleading.[1]

*Second*, the allegation from Paragraph 238—contained in the Exchange Act section of the Complaint and not incorporated into the Securities Act counts—is simply an allegation to support Plaintiffs' incorrect assertion that the language in the new proposed MSAs "would not have been necessary if Core's existing MSAs allowed Core to pass through increased power costs." Dkt. 62 at ¶ 238. Once again, nowhere did Plaintiffs argue that the mere fact that Core was purportedly considering changing the language in its MSA rendered any affirmative statement misleading.

It is unsurprising that Plaintiffs never argued that Defendants' alleged "***plans*** to divert from fixed rates" in future contracts was misleading. Dkt. 73 at 15. It is "well established that a company has no such duty to disclose changes to its business plans[.]" Dkt. 75 at 5 (quoting *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 495 (S.D.N.Y. 2021)). Plaintiffs concede that there is no "standalone 'duty to disclose' a future change of strategy." Dkt. 83 at 6. Plaintiffs argue, however, that a duty to disclose exists in the narrow circumstances where "'a company had stated its intention to adhere exclusively to a particular strategy and then changed its strategy without informing investors.'" *Id.* at 7 (quoting *Farfetch*, 565 F. Supp. 3d at 495). But Plaintiffs fail to point to any facts plausibly suggesting Core "stated its intention to adhere exclusively to a particular strategy." To the contrary, Plaintiffs do not even engage with Defendants' warnings that Core "may adjust [its] business model further from time

---

[1]   Nor do Plaintiffs explain how failing to disclose that Core would seek to "migrate 'all' of its new and renewing customers to new contracts that permitted Core to pass through power cost increases" is consistent with their theory that Defendants failed to disclose the risks from Core's "***improper attempts to pass through its increased power costs to fixed rate hosting customers***." Dkt. 62 at ¶ 124. Simply, Plaintiffs do not explain how seeking to convince customers to agree to a new contract constitutes anything "improper" or even how failing to disclose plans to obtain ***better terms*** in the future constitutes a material omission.

to time," and "that it was uncertain whether Core's 'current business strategy or any new or revised business strategies will be successful or that we will successfully address the risks we face,' including the increased power costs Defendants repeatedly warned investors could harm Core's business." Dkt. 75 at 6.

## II.    PLAINTIFFS HAVE NO EXPLANATION FOR DEFENDANTS' DISCLOSURE THAT CORE ADJUSTED FOR ACTUAL COSTS

Defendants disclosed that although contracts were "generally" billed on a fixed basis, there was an important exception to that rule:  contracts were subject to "adjustment for actual costs." *Id.* at 6.  Plaintiffs do not dispute that Defendants disclosed that contracts were subject to adjustment for actual costs.  Instead, Plaintiffs argue that (i) "actual costs" does not mean what it says; and (ii) the disclosure is too far away from Statement No. 5.  Dkt. 83 at 8-9.  Both arguments fail.

*First*, Plaintiffs' argument that "actual costs" means "actual use" is inconsistent with the plain meaning of the word "costs."  Indeed, Plaintiffs concede that "actual costs" could refer to "***any type of cost*** used as an input to 'estimate the factors upon which we base our contract pricing.'" *Id.* at 8 (quoting Dkt. 65, Ex. A) (emphasis added).  Thus, Plaintiffs necessarily admit that Defendants' disclosure could be interpreted to refer to power costs, which is one of the "factors upon which" Core based its contract pricing.[2]

---

[2]  Plaintiffs now argue that the only inputs into the contract pricing are the "electricity rate" and the "electricity actually used by the hosting customer."  Dkt. 83 at 9.  That argument contradicts the Complaint itself, which conceded that other fees are included in the contract pricing. Dkt. 62 at ¶ 8.  But even accepting this new argument, there was only one *cost* that needed to be adjusted: "the electricity rate."  Nor would this render superfluous the disclosure that the contract was "generally fixed," as adjustments may have only been needed in the rare circumstance in which there was a significant deviation above the estimated power cost.

*Second*, faced with this truthful disclosure, Plaintiffs argue that the Court should ignore it because it was too many pages away from Statement No. 5. *Id.* at 9. But courts must read SEC disclosures "cover-to-cover" and "consider whether the disclosures and representations, taken together and in context, would have misled a reasonable investor about the nature of the securities." *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 103 (2d Cir. 2013) (cleaned up). Plaintiffs cite no authority for their novel rule that a clarifying disclosure can be ignored because it is too many pages away from an allegedly misleading statement.

## III.    PLAINTIFFS CONCEDE THAT MR. LEVITT MUST BE DISMISSED FROM THE SECTION 15 CLAIM

Plaintiffs concede that Mr. Levitt was never named as a defendant under Section 15 of the Securities Act and should be dismissed from that count. Dkt. 83 at 10, n. 3.

## CONCLUSION

For the foregoing reasons and those in Defendants' Motion, Defendants respectfully request that the Court reconsider its denial of Defendants' Motion to Dismiss with respect to Statement No. 5 and the Section 15 claim not asserted against Mr. Levitt.

Dated: January 18, 2023

Respectfully submitted,

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By: */s/ John Bash*
John Bash
Texas Bar I.D. 24067504
300 W. Sixth Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
johnbash@quinnemanuel.com

John B. Quinn (admitted *pro hac vice)*
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
johnquinn@quinnemanuel.com

Jesse Bernstein (admitted *pro hac vice)*
Brenna Nelinson (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com

*Attorneys for Defendants*

7

## CERTIFICATE OF SERVICE

The foregoing document was filed under the Court's CM/ECF system, automatically effecting service on counsel of record for all parties who have appeared in this action on the date of such service.

/s/ John Bash
John Bash