UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Mei Pang, Individually and on Behalf of All Others Similarly Situated | § § § § | No. 1:22-cv-01191-DAE |
| *Plaintiffs,* | § § § | |
| vs. | § § | |
| Michael Levitt, Michael Trzupek, and Denise Sterling, et al. | § § § | |
| *Defendants.* | § § | |

ORDER GRANTING MOTION FOR RECONSIDERATION AND DISMISSING
CASE WITHOUT PREJUDICE

Before the Court is a Motion to Reconsider filed on December 28, 2023, by Defendants Michael Levitt, Michael Trzupek, Denise Sterling, Darin Feinstein, Brian Neville, Jarvis Hollingsworth, Matt Minnis, Stacie Olivares, Kneeland Youngblood, Patrick C. Eilers, Theodore J. Brombach, Paul Gaynor, Paul Dabbar, Colleen Sullivan, and Scott Widham ("Defendants"). (Dkt. # 75.) On January 11, 2024, Plaintiffs filed a Response in Opposition to Defendants' Motion for Reconsideration. (Dkt. # 83.) On January 18, 2024, Defendants replied. (Dkt. # 84.) The Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda filed in support of and against the motions,

1

the Court **GRANTS** Defendants' Motion for Reconsideration (Dkt. # 75) for the following reasons.

BACKGROUND

On December 20, 2023, the Court granted in part and denied in part Defendants' Motion to Dismiss. (Dkt. # 73.) The Court dismissed Plaintiffs' Section 10(b) claims in their entirety for lack of scienter and loss causation. (Id. at 32–47.) The Court permitted Plaintiffs' claims under Section 11 of the Securities Act and Section 14 of the Exchange Act to proceed with respect to Statement 5. (Id. at 9–24.)

Defendants seek reconsideration on the denial of their Motion to Dismiss pertaining to Statement 5 because Defendants believe the Court relied on a theory that was not briefed. (Dkt. # 75.) Specifically, Defendants challenge the theory that Core Scientific Inc. "had plans to divert from fixed rates" (i.e. the "future plans theory"). (Id. at 1–2.) If the theory adopted by the Court had been briefed, Defendants argue well-established precedent would have led to an alternative ruling. (Id.) Moreover, Defendants seek a ruling on whether disclosing an "adjustment for actual costs" warrants a reversal of the Court's prior Order.

Defendants separately seek reconsideration of the Court's ruling that Michael Levitt was a control person under Section 15 of the Securities Act because the Complaint does not name him as a Section 15 Defendant. (Dkt. # 75 at 2.)

2

<u>LEGAL STANDARD</u>

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." <u>St. Paul Mercury Ins. Co. v. Fair Grounds Corp.</u>, 123 F.3d 336, 339 (5th Cir. 1997). Rather, courts treat such motions as motions pursuant to either Rule 54(b), 59(e), or 60 depending on when the motion is brought and the type of order that the party requests the Court to reconsider. <u>See</u> <u>e.g.</u>, <u>id.</u> (treating a motion to reconsider as a motion pursuant to Rule 59(e)); <u>see</u> <u>also</u> <u>U.S. Bank National Assoc. v. Borunda</u>, No. EP-15-CV-109-PRM, 2016 WL 2625287, at *3 (W.D. Tex. May 5, 2016) (treating a motion to reconsider as an order granting partial summary judgment pursuant to Rule 54(b)).

"[E]very order short of a final decree is subject to reopening at the discretion of the district judge." <u>Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 12 (1983). Therefore, "[i]nterlocutory orders, such as grants of partial summary judgment, are ... left within the plenary power of the court that rendered them to afford such relief from them as justice requires." <u>McKay v. Novartis Pharm. Corp.</u>, 751 F.3d 694, 701–02 (5th Cir. 2014).

Pursuant to Rule 54(b), interlocutory orders may be "revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Neither Rule 54(b) nor the Fifth Circuit articulates a standard by which to decide whether reconsideration is

3

merited.  However, the Fifth Circuit has "explained that when a district court rules on an interlocutory order, it is 'free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"  Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 171 (5th Cir. 2010) (citing Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994)).

District courts in the Fifth Circuit often evaluate Rule 54(b) motions to reconsider interlocutory orders using the standard to amend final judgments in Federal Rule of Civil Procedure 59(e).  Under this standard, reconsideration can be granted on any one of three grounds: "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact."  Onofre v. C.R. England, Inc., 2017 WL 4082366, at *2 (W.D. Tex. July 24, 2017).  "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court."  Dos Santos v. Bell Helicopter Textron, Inc. Dist., 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009); Brown v. Wichita Cty., Tex., No. 7:05-CV-108-O, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011) ("The district court's discretion in this respect is broad.").

4

DISCUSSION

In this Order, the Court will first clarify the basis for its decision.
Then, the Court will determine whether its decision relied on legal theories not
advanced in the pleadings.  Lastly, the Court will determine whether its prior order
permits Plaintiffs to obtain relief under Section 11 of the Securities Act and Section
14 of the Exchange Act.

I.    Basis for the Court's Order on December 20, 2023.

The challenged misleading statement originates from Registration and
Proxy Statements from Core's merger with XPDI made effective on December 30,
2021 and January 3, 2022.  Statement 5 says, "[m]ost contracts are renewable, and
our customers are *generally billed* on a fixed and recurring basis each month for
the duration of their contract, which vary from one to three years in length." (Dkt.
# 62 at ¶ 99.) (emphasis added).[1]

The Court dedicated five and a half pages to a thorough discussion on
why Plaintiffs particularly pled that Statement 5 was misleading. (Dkt. # 73 at 14–
19.)  The Court noted that Plaintiffs allege Core sought to migrate all of its new
and renewing customers to new contracts that permitted Core to pass through
power cost increases, and thus did not have fixed rates.  (Id. at ¶ 123.)  The Court

---

[1] Referred to as Statement 2 in Plaintiffs' Opposition.

found Plaintiffs pled with particularity that Statement 5 is misleading because stating that contracts were "generally" billed on fixed rate is not sufficient when, behind closed doors, the company had plans to divert from fixed rates.  (Dkt. # 73 at 15.)

      The Court found that this change of strategy could have been highly relevant for an investor seeking to buy or sell shares of the company.  (Id.)  "To say that Core generally billed at a fixed rate might have been literally truthful. However, the Court noted that the disclosures failed to inform to investors that the literal truth was subject to change in the near future."  (Id. at 15–16)

      The Court also noted that Plaintiffs allege that Core's CEO instructed employees to "come up with a suggested plan," including a "Power Surcharge Fee" that would charge hosting customers in the event of power cost increases.  (Id. at 17.)   In late 2021, Plaintiffs allege Core's legal team was instructed to get "comfortable" with the idea that the existing fixed rate agreements allowed Core to pass through its increased power costs.  (Dkt. # 62 at ¶ 238.)  In late 2021, Plaintiffs allege that they were revising the Master Services Agreement ("MSA"), the main form of the agreement with Core's hosting customers, to add new language expressly permitting Core to pass through increased power costs.  (Id. at ¶ 238.)

Ultimately, the Court found that there were facts available to Core about the nature of its business going forward that should have been disclosed to protect investors from future risks that may occur. (Dkt. # 73 at 18.)

Admittedly, the Order fails to fully clarify whether its decision rests on actions taken by Core at the time the registration statement was made or whether it rests on speculative future business plans. A delineation between acts taken with immediate effect or those subject to future implementation is not always clear. For instance, the Court noted that Core was revising the Master Services Agreement ("MSA") to add new language expressly permitting Core to pass through increased power costs. However, immediately after noting that Core was revising the Master Services Agreement, the Court stated "[t]his adequately pleads that prior to the Registration Statement, Core sought to change its business strategy." This has led Plaintiffs and Defendants to disagree over the basis for the Courts' decision. Plaintiffs believe the Court found Statement 5 misleading because Core's decision to revise the MSA necessitated disclosure because Core had already begun to veer away from fixed contracts. This presumably would put Statement 5 outside of the "future plans theory." Defendants focus on the latter clause, stating that "Core sought to change its business strategy." This would put Statement 5 inside of the "future plans theory."

The Court wishes to clarify any misunderstanding of the theory it relied upon.  Simply put, the Court held Statement 5 was pled with particularity as misleading because Defendants had the obligation to disclose its future business plans.  The Court read the preparatory acts taken by Core as evidence of a plan to move away from fixed rate contracts.

II.    Theories Pled by Plaintiffs

Defendants distinguish between two different disclosure theories.  The first theory is that Core was already billing its customers for its own increased power costs despite claiming that contracts were generally fixed rate.  (Dkt. # 75 at 1.)  The second theory, "the future plans theory," is that Core sought to migrate all its hosting customers from fixed rate to pass through power costs.  (Id.)  Defendants assert that Plaintiffs' briefing only relied on the first theory.  (Id.)  Therefore, Defendants did not respond to the "future plans theory" on which the Court relied.

Plaintiffs reject that the Court relied upon a theory that was not briefed.   The Complaint states that Core was "revising the Master Services Agreement ("MSA"), the main form of the agreement with Core's hosting customers, to add new language expressly permitting Core to pass through increased power costs."  (Dkt. # 62 at ¶ 238.)  The Complaint states Core planned to migrate all of its hosting customers to these new contracts as soon as possible.

(Dkt. # 62 at ¶ 123.)   Plaintiffs note that the Court identified these two allegations in its opinion as to why Statement 5 was misleading.   (Dkt. # 73 at 14, 17.)

However, in their Response brief, Plaintiffs say "generally" "was misleading because it omitted that while Core's hosting contracts entailed fixed rates for energy usage, Core was billing its customers for its own increased power costs, which violated the fixed-rate terms of those contracts." (Dkt. # 67 at 12).[2] The allegation that Core sought to migrate its customers to new contracts  is not contained within the section of the Complaint articulating why Statement 5 was misleading.  The Statement 5 section of the Complaint focused on the allegation that Core had allegedly imposed improper surcharges without client consent.

Both sides have seemingly cherrypicked various parts of the pleadings that support the theories they believe were put forth in this case.   The Court is also cognizant that it is possible for a party to put forth multiple theories as to why a statement may be misleading.

The Court, having reviewed the Complaint and all of the briefings anew, finds that Plaintiffs were not alleging that Statement 5 was misleading because of Core's future business plans.  This was a rationale that the Court adopted without having been briefed on the issue by either party.  Plaintiffs focused on the current contracts that were implemented at the time of the Registration

---

[2] Referred to as Statement 2 in Plaintiffs' Opposition.

Statement which were not fixed rate.  As expressed above, the Court did not rest its opinion on those contracts.  Rather, it focused on the corporate business strategy Core intended to implement in the future.  Defendants argue that the Court would have dismissed all the claims had it been briefed on the "future plans theory."

III.   Reconsidering Statement 5 as Misleading for Manifest Error

A theory that relies solely on a duty to disclose a future plan cannot support a violation of Section 11 of the Securities Act and Section 14 of the Exchange Act.  Had the Court been briefed on the "future plans theory," the Court would have held that Plaintiff could not plead with particularity that Statement 5 is misleading.

It is well established among the federal courts that a company has no such duty to disclose changes to its business plans.  City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd., 565 F. Supp. 3d 478, 495 (S.D.N.Y. 2021). However, there is an exception to the general rule that there is no duty to disclose a future change of strategy.  Friedman v. Endo Int'l PLC, 2018 WL 446189, at *6 (S.D.N.Y. Jan. 16, 2018) (quoting San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801, 810 (2d Cir. 1996)).  As Plaintiffs note, it can be misleading when "a company had stated its intention to adhere exclusively to a particular strategy and then changed its strategy without informing investors."  Farfetch, 565 F. Supp. 3d at 495.

As Plaintiffs allege, fixed pricing made Core incredibly attractive to its customers. Moreover, in a market as volatile as Crypto, energy pricing is especially important to consumers. As Plaintiffs allege, Core's bottom-line is dependent on power prices set by the public power markets where Core's facilities are located. (Dkt. # 65-1 at 43.) Although Plaintiffs stated the importance of the energy market, they did not allege any promise by Core that its business model would always stay the same. Indeed, the Complaint only alleges that Core should have disclosed any such change, not that it could never change plans in the future.

In this case, it cannot be said that Core had an intention to adhere exclusively and indefinitely to a particular strategy. Plaintiffs have failed to plead any facts or statements by Core signaling an intention to adhere exclusively to a particular strategy. Rather, Core warned investors that it "may adjust [its] business model further from time to time," and "that it was uncertain whether Core's current business strategy or any new or revised business strategies will be successful or that we will successfully address the risks we face. . . . " (Dkt. # 75 at 6.)

Therefore, the Court does not find Statement 5 misleading under the "future plans theory." As stated in the Court's previous order, the theory actually propounded by Plaintiffs (that at the same time of the Registration Statement, "Core was billing its customers for its own increased power costs, which violated

11

the fixed-rate terms of those contracts") was not pled with particularity as it relates to Statement 5.

Defendants would like the Court to go a step further and say that as a factual matter, a disclosure located 137 pages before Statement 5 cures any deficiency.  (Dkt. # 65; Ex. A -Registration Statement at 40.)  That disclosure read, "[o]ur hosting contracts are generally priced on the basis of estimated power consumption by our clients, along with other costs of service, as adjusted for actual costs."  Id.

The Court evaluated this argument in its prior Order.  (Dkt. # 73 at 16.)  However, it evaluated this disclosure based on the "future plans theory" that the Court has now reconsidered.  In its previous Order, the Court stated the disclosure "does not counter Plaintiffs allegation that Core was planning on changing its pricing."  (Dkt. # 73 at 16.)

As Defendants note, a ruling on this statement could foreclose Plaintiffs from pleading that the Registration Statement was misleading. Defendants argue their disclosure that Core "adjusted for actual costs" is the very information that is alleged to be omitted.  In essence, Defendants argue that they disclosed the exception to the overall rule that contracts were "generally" fixed rate.  Indeed, if Plaintiffs choose to amend their Complaint, a ruling on this disclosure is relevant to whether Plaintiffs may be entitled to a favorable decision.

Plaintiffs have a different interpretation of the disclosure.  Given the context of the statement, Plaintiffs argue "actual costs" is an extremely vague term that could refer to any type of cost used as an input to "estimate the factors upon which we base our contract pricing."  (Dkt. # 83 at 10).  According to Plaintiffs, adjustment for "actual costs" was merely to account for minor differences between the preliminary usage estimate and the final usage.  (Id.)  Plaintiffs have cited Core's internal accounting memo that explained that "[the Celsius contract] and Core's other hosting contracts were 'variable consumption not variable price.'" (Id. at 11.)  If the Court were to adopt Defendants' interpretation, Plaintiffs say there would never be a "fixed basis" in the contract.  (Id.)

The Court reminds both Plaintiffs and Defendants that this litigation is at the Motion to Dismiss stage.  Moreover, the Court reminds both Plaintiffs and Defendants that it is reconsidering the Order for manifest error.  Ultimately, this Court may find that the disclosure rightfully eliminates all potential liability pertaining to adjusting for actual costs.  However, the Court does not see a need to rule on that question today.  In this Order, the Court has already held that Statement 5 cannot be pled as misleading based on the legal theories put forth by Plaintiffs.  Deciding the question of fact on whether Defendants disclosed an "adjustment for actual costs" has no bearing on the outcome of this Order.  Siding with Defendants on this issue of fact would provide an additional basis for holding that Statement 5

13

is not pled to be misleading.  Siding with Plaintiffs on the interpretation of this

disclosure would also not change the outcome.  They still have failed to provide a

legal basis for pleading that Statement 5 is misleading because Defendants had no

duty to disclose a future plan.   When the standard of review is for "manifest

error," the Court does not find that ruling on the disclosure of "actual costs" is

warranted given the competing interpretations by both parties.  The Court will be

in a better position to rule on whether such a disclosure obviates any potentially

misleading disclosure upon a different standard of review or when testimony and

other evidence is presented at the summary judgment stage.

   In conclusion, the Court finds that Plaintiffs failed to plead that

Statement 5 was misleading because the "future plans theory" does not entitle

Plaintiffs to relief based on Section 11 of the Securities Act and Section 14 of the

Exchange Act.  Moreover, Plaintiffs failed to plead that Statement 5 was

misleading due to the theory that, at the time of the Registration Statement, Core

was passing through increases in its own power rates to customers in contravention

of their "fixed rate" contracts.

   At this stage of the litigation, the Court will not go further to say that

Defendant cured any misleading statement through another risk disclosure made

137 pages earlier than Statement 5.  That determination may come if Plaintiffs

choose to amend their Complaint and Defendants puts forth such an argument again at the summary judgment stage.

IV.   <u>Claims Against Mr. Levitt</u>

The Court agrees with Defendants that Mr. Levitt was never named as a Defendant under Section 15 of the Securities Act.  Therefore, the Court dismisses the Section 15 claim against Mr. Levitt.

CONCLUSION

Having reconsidered the issues in this case, along with the additional briefing, the Court holds that Plaintiffs did not sufficiently allege that Statement 5 is misleading because Defendants did not have a duty to disclose future plans.  As a matter of justice, the Motion for Reconsideration warrants the Court to reverse course.  Therefore, the Court **GRANTS** the Motion to Reconsider and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claim under Section 11 of the Securities Act and Plaintiffs' claim under Section 14 of the Exchange Act.  The Court also **DISMISSES WITHOUT PREJUDICE** the Section 15 claim against Mr. Levitt.  Plaintiffs have until May 23, 2024 to amend their Complaint.

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, April 22, 2024

_____
David Alan Ezra
Senior United States District Judge

15