UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated, | § § § § | No. 1:22-cv-1191-DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| MICHAEL LEVITT, et al., | § § § | |
| Defendants. | § § § | |
| _____ | § | |

ORDER: (1) REFERRING CASE TO BANKRUPTCY COURT; (2) DENYING WITHOUT PREJUDICE MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT; (3) DENYING AS MOOT MOTION TO STRIKE; AND (4) ADMINISTRATIVELY CLOSING CASE

Before the Court are: (1) Defendants Michael Levitt, Michael Trzupek, Denise Sterling, Darin Feinstein, Brian Neville, Jarvis Hollingsworth, Matt Minnis, Stacie Olivares, Kneeland Youngblood, Patrick C. Eilers, Theodore J. Brombach, Paul Gaynor, Paul Dabbar, Colleen Sullivan, Scott Widham, and Paul Dabbar's ("Defendants") Motion to Dismiss Second Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. # 92); and (2) Plaintiffs Mei Pang, Individually and on Behalf of All Others Similarly Situated's ("Plaintiffs") Motion to Strike or for Leave to File Surreply (Dkt. # 101). The Court finds these matters suitable for disposition without a hearing. After

careful consideration of the memoranda filed in support of and against the motions, the Court: (1) **REFERS** this matter to the Bankruptcy Court for the reasons discussed below; (2) **DENIES WITHOUT PREJUDICE** Defendants' Motion to Dismiss; (3) **DENIES AS MOOT** Plaintiffs' Motion to Strike or for Leave to File Surreply; and (4) **ADMINISTRATIVELY CLOSES** the case.

BACKGROUND

Core Scientific, Inc. ("Core") is a prominent player in the digital asset mining sector, specializing in Bitcoin. (Dkt. # 89 at ¶ 3.) The company leverages a vast fleet of specialized computing machines, known as miners, to tackle intricate cryptographic algorithms. This results in the generation of cryptocurrencies, with Bitcoin as the primary focus. (Id. at ¶ 4.) Core offers critical infrastructure for cryptocurrency mining. The infrastructure encompasses both self-mining where it mines digital assets for its own account, and hosts services tailored for third-party miners. (Id.) Core's operations are intrinsically tied to the volatile cryptocurrency market. Fluctuations in cryptocurrency prices, particularly Bitcoin, significantly impact its operations and financial performance. (Id. at ¶ 61.)

Central to Core's operations is the management of electricity costs. Because cryptocurrency miners consume large amounts of electricity, power is a principal cost for Core's mining fleet. (Id. at ¶ 5.) Core's bottom-line is dependent on power prices set by the public power markets where Core's facilities are

located.  (Id. at 5–6.)  Power prices are influenced by several variables, including the price of natural gas, weather, and location, among others.  The company strategically seeks long-term power contracts to mitigate power expenses, a practice highly valued by its hosting customers.  (Id.)

The company relies heavily on its hosting customers. These customers pay a set rate per kilowatt-hour based on their actual monthly energy consumption, providing them with predictability in their energy costs while shielding them from fluctuations in power rates.  (Id.)

In July 2021, Core entered into an Agreement and Plan of Merger and Reorganization with Power & Digital Infrastructure Acquisition Corp. ("XPDI") to go public via a "de-SPAC."  (Id. ¶ 87.)  XPDI stockholders approved the merger pursuant to a Proxy Statement and unredeemed shares of XDPI were converted to shares of Core pursuant to a Registration Statement filed on December 30, 2021.  (Id. at ¶¶ 22–23.)

The summer and fall of 2022 brought widespread increases in power costs, plummeting Bitcoin prices, and an influx of cryptocurrency miners that strained the states' power grids.  (Id.  at ¶ 15.)  Due to power cost increases, Core allegedly initiated an attempt to pass through increased power costs onto its hosting customers, ultimately deviating from its existing fixed-rate contracts.  (Id. at ¶ 9–10.)

Celsius Network LLC ("Celsius"), one of Core's largest hosting customers, disputed these charges and subsequently filed for bankruptcy on July 13, 2022. (Id. at ¶¶ 12, 15–16.) Given Celsius' outstanding balance and Core's impending liquidity issues, Core sought to collect on the charges incurred by Celsius prior to its bankruptcy. On September 28, 2022, Celsius filed a motion for civil contempt in bankruptcy publicly alleging that Core breached its agreement with Celsius by attempting to "pass through" power costs to Celsius under its contract. (Id. at ¶ 14.)

On October 27, 2022, Core filed a Form 8-K informing investors that due to the "prolonged decrease in the price of bitcoin, the increase in electricity costs, the increase in the global bitcoin network hash rate and the litigation with Celsius," the Company would not make outstanding payments for financing and was exploring strategic alternatives to its capital structure. (Id. at ¶ 182.) Core also disclosed that its cash resources would be "depleted by the end of 2022 or sooner," and that "substantial doubt exists about the Company's ability to continue as a going concern for a reasonable period of time." Id.; see October 2022 Form 8-K. That day, Core's stock price closed at $.0221 per share. (Dkt. # 89 at ¶ 183.) On December 21, 2022, Core filed for bankruptcy (id. at ¶ 185), and by that time its stock price had collapsed, falling to $.05 per share before being delisted (id. at ¶ 22).

On November 14, 2022, Plaintiffs filed suit in this case. (Dkt. # 1.) The dispute concerns the disclosures or lack thereof to investors both prior to and after Core allegedly decided to impose power cost pass-through charges onto its customers. On December 20, 2023, Court granted in part and denied in part Defendants' motion to dismiss the first amended complaint. (Dkt. # 73.) The Court dismissed Plaintiffs' Section 10(b) claim for failure to adequately plead scienter and loss of causation but declined to dismiss Plaintiffs' Section 11 and 14(a) claims. (Id. at 15–19.) After Defendants moved for reconsideration of that Order, the Court dismissed Plaintiffs' amended complaint in full with leave to amend. (Dkt. # 89.)

On June 7, 2024, Plaintiffs filed a Second Amended Class Action Complaint, bringing claims again for violations of the federal securities laws against the current and former officers and directors of Core Scientific, Inc. (Dkt. # 89.) Plaintiffs allege that Defendants made false and misleading statements and omissions in Core's SEC filings and in public statements, including in the Registration Statement and Proxy Statement issued by Core in connection with its "de-SPAC" merger. Plaintiffs bring negligence claims under Section 11 of the Securities Act of 1933 ("Securities Act") and Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), claims pursuant to Section 20(a) of the Exchange Act, Section 15 of the Securities Act, securities fraud claims under

Section 10(b) of the Exchange Act, and control person claims under each statute. (Id.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Review is limited to the contents of the complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he [C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56. In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a

6

cause of action. See id. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissal with prejudice, "unless it is clear that the defects are incurable[.]" Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

DISCUSSION

Defendants move to dismiss Plaintiffs' second amended complaint on the basis that all claims are barred by the plain language of a release and injunction entered in Core's bankruptcy proceedings. (Dkt. # 92 at 16.) Additionally,

7

Defendants assert that Plaintiffs' Section 11 and 14(a) claims are both time-barred under the applicable one-year statute of limitations and they are meritless because Core disclosed the information that Plaintiffs contend was omitted—its hosting business's margins. (Id.) Defendants also maintain that Plaintiffs' Section 10(b) claims are predicated on statements that are not false or misleading and Plaintiffs still fail to adequately plead scienter and loss causation. (Id.)

### A. Bankruptcy Proceedings

Defendants argue that Plaintiffs' claims are precluded by the Bankruptcy Court's third-party release and anti-injunction suit provisions. (Dkt. # 92 at 16.) In other words, Defendants contend that Plaintiffs' claims must be dismissed because a federal court has now released and enjoined all of Plaintiffs' claims. (Id.)

On January 16, 2024, the Bankruptcy Court presiding over Core's petition for relief entered a confirmation of Core's Chapter 11 plan of reorganization (the "Plan"). (Dkt. # 92-15.) The Plan contains a third-party release ("Third-Party Release") that Defendants contend releases all claims Plaintiffs assert in this case. (Id.) The Third-Party Release states in relevant part:

> [E]ach Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted

8

> on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Securities Class Action) . . .

(Id. at 163.)  Notably, the Plan defines "Securities Class Action" as the instant case in this Court.  (Id. at 106.)  Additionally, Plaintiffs are included within the definition of "Releasing Party" because they are "Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out."  (Id. at 14.)  And, Defendants are "Released Parties."  (Id. at 102.)

Defendants further argue that the Plan contains an anti-suit injunction coextensive with the Third-Party Release (the "Anti-Suit Injunction") which also bars Plaintiffs' claims.  (Dkt. # 92 at 18.)  The Anti-Suit Injunction provides:

> [N]o entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or

9

> assertable in the Securities Class Action) . . . without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.1, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

(Dkt. # 92-15 at 161–62.) Given this language, Defendants contend that it plainly bars Plaintiffs from pursuing all claims "asserted or assertable" in this case. (Dkt. # 92 at 18.) Defendants further argue that even if Plaintiffs' claims were not enjoined, their claims have been released, and the release is res judicata. (Id. at 19.)

Plaintiffs dispute that the Third-Party Release, Anti-Suit Injunction, and res judicata bars their claims in this case. (Dkt. # 95 at 15.) Plaintiffs argue that the Bankruptcy case is on appeal and should Plaintiffs prevail, the Third-Party Release and Anti-Suit Injunction would be moot. (Id.) Plaintiffs contend the Third-Party Releases are legally invalid and that not all of the Plaintiffs are subject to them because at least two (Downing and Huynh) did not receive the opt-out notice. (Id. at 16.) Plaintiffs also maintain the injunction provision does not preclude their claims because it is coextensive with the Third-Party Releases—in other words, if the Third-Party Release does not apply to Plaintiffs than neither

does the injunction. (Id.) Finally, Plaintiffs argue that res judicata does not bar their claims because not all of the parties are the same and the Bankruptcy Court's order was not a final judgment on the merits. (Id. at 16–17.)

The Supreme Court's recent decision in Harrington v. Purdue Pharma resolved a circuit-split about non-consensual third-party releases in chapter 11 plans. 603 U.S. 204 (2024). The Court held that the Bankruptcy Code does not "authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." Id. at 226–27. Even before Purdue, Fifth Circuit case law appeared to prohibit non-consensual third-party releases. See Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746 (5th Cir. 1995); Bank N.Y. Tr. Co. v. Off. Unsecured Creditors' Comm. (In re Pac. Lumber Co.), 584 F.3d 229, 299 (5th Cir. 2009). Thus, Purdue did not change the law in the Fifth Circuit.

Here, as discussed above, the Plan's Third-Party Release provides broad releases of all creditor's claims related to the Debtors against certain non-debtors. The Plan, however, provides any creditor or interest-holder with the opportunity to opt out of the Release if they do not vote for the Plan. (Dkt. # 92-16 at 32.) Any creditor or interest-holder that either votes in favor of the Plan or fails to affirmatively opt out is deemed to be a "Releasing Party" under the Plan and thus grants the Release. (Id.)

11

Regarding the Third-Party Release in this case, it is not clear whether the Plan's opt-out mechanism creates a consensual release or non-consensual release foreclosed by Purdue. No one has cited, nor has this Court found, any circuit level decisions addressing the issue of whether an opt-out mechanism renders a third-party release consensual. In any event, even assuming the opt-out mechanism in this case makes the release consensual, Plaintiffs have noted that not all plaintiffs in this case are subject to the Third-Party Release because they assert that at least two did not receive the opt-out notice nor does it apply to certain other class members (see Dkt. # 95 at 16 and n.3.). Given the circumstances, the Court cannot say the Third-Party Release covers all claims asserted in this action and will not dismiss on this basis.

Regarding the Anti-Suit Injunction and the "gatekeeper" provision within it, Plaintiffs contend that since they are coextensive with the Third-Party Release they also do not bar Plaintiffs' claims in this case. (Dkt. # 95 at 16.) The Court disagrees that the Third-Party Release and the Anti-Suit Injunction in the Plan can rise and fall with the other in this case. The Fifth Circuit has noted that "[c]ourts have long recognized bankruptcy courts can perform a gatekeeping function." Matter of Highland Capital Mgmt., L.P., 48 F.4th 419, 439 (5th Cir. 2022). And, "[u]nder the 'Barton doctrine,' the bankruptcy court may require a party to 'obtain leave of the bankruptcy court before initiating an action in district

12

court when the action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity.'" Id. (quoting Villegas v. Schmidt, 788 F.3d 156, 159 (5th Cir. 2015) (emphasis added); accord Barton v. Barbour, 104 U.S. 126 (1881).[1]  In Villegas, the Fifth Circuit held "that a party must continue to file with the relevant bankruptcy court for permission to proceed with a claim against the trustee." 788 F.3d at 158.  The Fifth Circuit has left to the bankruptcy court, when faced with pre-approval of a claim, to determine whether it has subject matter jurisdiction over that claim in the first instance.  Matter of Highland, 48 F.4th at 439 (citing Villegas, 788 F.3d at 158–59; Carroll v. Abide, 788 F.3d 502, 506–07 (5th Cir. 2015) (noting Villegas "rejected an argument that the Barton doctrine does not apply when the bankruptcy court lacked jurisdiction")).

Upon careful consideration of the matters raised by the parties in this case and given its procedural posture, the record, and the applicable law and rules of Court, this Court has determined that the most efficient course of action for the administration of justice, in general, and this case, in particular, is to refer the case to the bankruptcy judge for determination in the first instance of the issues raised by the motion to dismiss.  See In re Burch, 835 F. App'x 741, 748 (5th Cir.

---

[1] Core, for all practical purposes, is a debtor in possession entitled to the rights of a trustee.  See Matter of Highland, 48 F.4th at 439 n.17.

2021) ("A bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders.'") (quoting Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009)).  The determination of these threshold issues, as raised by the motion to dismiss, are left to the bankruptcy judge, who is well-equipped to address such matters (notwithstanding this Court's preliminary observations) given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function.  See, e.g., In re Highland Cap. Mgmt., L.P., 48 F.4th 419, 439 (5th Cir. 2022) (discussing and applying Barton v. Barbour, 104 U.S. 126 (1881)), petitions for cert. filed, No. 22-631 (U.S. Jan. 9. 2023), and No. 22-669 (U.S. Jan. 20, 2023); Villegas v. Schmidt, 788 F.3d 156, 159 (5th Cir. 2015).  As the Highland Capital court described its holding in Villegas, "we left to the bankruptcy court, faced with pre-approval of a claim, to determine whether it had subject matter jurisdiction over that claim in the first instance," meaning that this Court (like the Fifth Circuit in Highland Capital) "need not evaluate whether the bankruptcy court would have jurisdiction under every conceivable claim falling under the widest interpretation of the gatekeeper provision" but can "leave that to the bankruptcy court in the first instance." Highland Cap., 48 F.4th at 439.  This manner of proceeding is both sound, in that it achieves efficiency in the administration of justice, and necessary, in light of the bankruptcy court's special interest.

14

Accordingly, the Court will refer the current matters to the bankruptcy court for all purposes, including, but not limited to, consideration of the gatekeeping issues in this case and in light of the Plan's Anti-Suit Injunction. Given this decision, the Court will deny without prejudice Defendants' motion to dismiss Plaintiffs' claims which can be re-raised in Bankruptcy Court and will deny as moot Plaintiffs' motion to strike or for leave to file surreply.

B.    Administrative Closure

Furthermore, the Court finds an administrative closure of the case is appropriate at this time. An administrative closure is "a postponement of proceedings," rather than "a termination." S. La. Cement, Inc. v. Van Aalst Bulk Handling, B.V., 383 F.3d 297, 302 (5th Cir. 2004). A case that is administratively closed "may be reopened upon request of the parties or on the court's own motion." Mire v. Full Spectrum Landing, Inc., 389 F.3d 163, 167 (5th Cir. 2004).

CONCLUSION

Based on the foregoing, the Court: (1) **REFERS** the current matters to the United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case. No. 22-90341 (CML), for all purposes, including, but not limited to, consideration of the gatekeeping issues in this case and in light of the Plan's Anti-Suit Injunction; (2) **DENIES WITHOUT PREJUDICE** Defendants' Motion to Dismiss Second Amended Class Action Complaint for Violations of the Federal

15

Securities Laws (Dkt. # 92); and (3) **DENIES AS MOOT** Plaintiffs' Motion to Strike or for Leave to File Surreply (Dkt. # 101).

The Clerk's office is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case pending further order of the Court. Though administratively closed, this case will remain on the docket of this Court and may be reopened upon request of any party or on the Court's own motion. The parties are **ORDERED** to file a status update, or motion to reopen the case, within 7 days of the date of the bankruptcy court's decision in this case.

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, March 7, 2025.

_____
David Alan Ezra
Senior United States District Judge