**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING,<br><br>        Defendants. | Case No. 1:22-cv-01191-DAE |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

                                                                                    **Page**

I.      INTRODUCTION ..................................................................................................1

II.     PROCEDURAL BACKGROUND .......................................................................3

        A.      Core's Plan Of Reorganization Releases And Enjoins Plaintiffs' Claims ...............3

        B.      Plaintiffs Appeal Core's Chapter 11 Plan .................................................4

        C.      This Court Refers This Case To The Bankruptcy Court ............................................5

        D.      The Appeal Is Dismissed As Moot In Light Of This Court's Decision ...................6

III.    LEGAL STANDARD ............................................................................................6

IV.     ARGUMENT ........................................................................................................6

        A.      Reconsideration Is Procedurally Improper ...................................................7

        B.      The Court Should Not Reopen this Case ......................................................7

        C.      The Court Should Not Withdraw or Limit Its Referral ...............................................8

                1.      The Bankruptcy Court Has Jurisdiction Over The Referred Matters .........8

                        (a)     The Bankruptcy Court Has Statutory Authority .............................9

                        (b)     The Bankruptcy Court Has Constitutional Authority.....................10

                        (c)     The Referral Is Not Barred By 28 U.S.C. 157(a) ..........................11

                2.      The Court Should Not Withdraw Its Referral ...........................................12

                3.      The Court Should Not Limit Its Referral......................................................15

V.      CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*In re Allison*,
2006 WL 2620480 (Bankr. S.D. Tex. Sept. 12, 2006)........................................................2, 8

*In re Brooks Mays Music Co.*,
363 B.R. 801 (Bankr. N.D. Tex. 2007) ......................................................................10

*Burch v. Freedom Mortg. Corp.*,
2019 WL 4935187 (N.D. Tex. July 12, 2019).............................................................15

*In re Burch*,
835 F. App'x 741 (5th Cir. 2021)...................................................................................9

*Castro v. SN Servicing Corp.*,
2015 WL 11621152 (W.D. Tex. Sept. 2, 2015) ...........................................................7

*In re Centrix Fin.*,
2009 WL 1605826 (D. Colo. June 8, 2009).................................................................13

*City Bank v. Compass Bank*,
2011 WL 5442092 (W.D. Tex. Nov. 9, 2011)................................................. 12, 13, 14

*In re: Core Scientific, Inc., et al.*,
Case No. 22-BK-90341 (Bankr. S.D. Tex. 2022) ........................................................3

*In re Deepwater Horizon*,
546 F. App'x 502 (5th Cir. 2013)................................................................................13

*In re Guynes Printing Co. of Tex., Inc.*,
2015 WL 3824070 (W.D. Tex. June 19, 2015) .....................................................13, 16

*Hoffman v. Core Scientific, Inc.*,
Case No. 24-CV-00357 (S.D. Tex. 2024)..............................................................4, 5, 6

*Holland Am. Ins. Co. v. Succession of Roy*,
777 F.2d 992 (5th Cir. 1985) ......................................................................................12

*King v. Fidelity Nat'l Bank of Baton Rouge*,
712 F.2d 188 (5th Cir. 1983) ......................................................................................13

*In re KSRP, Ltd.*,
809 F.3d 263 (5th Cir. 2015) ......................................................................................10

*In re La Fuente Home Health Servs., Inc.*,
2017 WL 1173599 (Bankr. S.D. Tex. Mar. 28, 2017) ..................................................9

*Levine v. M & A Custom Home Builder & Developer, LLC*,
400 B.R. 200 (S.D. Tex. 2008) ..................................................................................13

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ....................................................................................10

*Matter of Nat'l Gypsum Co.*,
118 F.3d 1056 (5th Cir. 1997) .....................................................................................9

*Panda Energy Int'l, Inc. v. Factory Mut. Ins.*,
2011 WL 610016 (N.D. Tex. Feb. 14, 2011) ...............................................................9

*Pang v. Levitt et al.*,
Case No. 22-CV-01191 (W.D. Tex. Nov. 14, 2022).....................................................4

*In re Pearl Res. LLC*,
2023 WL 2089198 (Bankr. S.D. Tex. Feb. 17, 2023)..................................................11

*Ponce v. Madaminov*,
2024 WL 1543220 (W.D. Tex. Apr. 9, 2024) ...............................................................6

*Soliz v. United States*,
2018 WL 6427342 (W.D. Tex. June 13, 2018) .............................................................6

*Stern v. Marshall*,
564 U.S. 462 (2011) ..............................................................................................10, 11

*Studensky Tr. for Little Rover Healthcare Holdings, LLC v.
United Healthcare Ins. Co.*,
2021 WL 2322935 (W.D. Tex. June 7, 2021) .............................................................12

*Templet v. HydroChem Inc.*,
367 F.3d 473 (5th Cir. 2004) .......................................................................................6

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009) .....................................................................................................9

*Woods v. Wal-mart, Inc.*,
2018 WL 8996623 (W.D. Tex. Sept. 6, 2018) .............................................................6

*In re Wool Growers Cent. Storage Co.*,
371 B.R. 768 (Bankr. N.D. Tex. 2007) .....................................................................2, 9

## Statutes

28 U.S.C. § 157(a) .........................................................................................................11

28 U.S.C. § 157(b)(2)(L)..................................................................................................9

28 U.S.C. § 157(c)(1) ..................................................................................................................... 10

28 U.S.C. § 157(d) ......................................................................................................................... 12

28 U.S.C. § 1409(a) ....................................................................................................................... 11

## **Other Authorities**

Federal Rule of Civil Procedure 54(b) ............................................................................................. 6

Federal Rule of Civil Procedure 59(e) .......................................................................................... 6, 7

## I.    **INTRODUCTION**

Plaintiffs' Motion for Reconsideration is a last-ditch attempt to circumvent the court best positioned to interpret its own order confirming Core's[1] bankruptcy Plan: the United States Bankruptcy Court for the Southern District of Texas.  Because the effect of that order was to extinguish most if not all of Plaintiffs' claims, and to channel any remaining claims to the Bankruptcy Court, Plaintiffs have spent the last year and a half trying to evade it—first by appealing it, then by pursuing these claims in this Court in contravention of it, and now by asking this Court to reconsider its referral order that would allow the Bankruptcy Court to enforce it.

But Plaintiffs' gamesmanship backfired by injecting new issues into this case that only the Bankruptcy Court can resolve.  Rather than complying with the Plan's Gatekeeping Injunction and refiling their claims in the Bankruptcy Court, Plaintiffs amended their complaint in this case to assert new claims brought by new plaintiffs (the SAC).  When Defendants moved to dismiss the SAC, in part on the basis that the claims it asserts were released and enjoined by the Plan, Plaintiffs responded by raising new arguments about the effect of the Plan's release and injunction, one of which was that plaintiffs Downing and Huynh supposedly did not receive notice of their right to opt out—an issue that was not and could not have been presented in Plaintiffs' pending appeal of the Plan because neither of those individuals were named plaintiffs at the time Plaintiffs initiated that appeal.  Plaintiffs must live with the consequences of amending their complaint, one of which was to introduce new issues here that must be decided by the Bankruptcy Court in the first instance.

At bottom, Plaintiffs' motion is nothing more than their latest baseless attempt to avoid the Bankruptcy Court.  It is meritless and should be rejected.  Reconsideration is an "extraordinary

---

[1]    All terms used but not defined herein shall have the meanings ascribed to them in Defendants' reply brief in support of their Motion to Dismiss the SAC (ECF No. 100).

remedy" reserved for extraordinary circumstances—none of which exist here. No intervening change in law has occurred. No new evidence has emerged. No manifest error of law or fact haunts this Court's referral. Plaintiffs have no colorable argument that they meet the governing standard for reconsideration, so they fail to even acknowledge it.

Instead, Plaintiffs merely repackage meritless jurisdictional arguments previously rejected by the Bankruptcy Court. But these challenges to the Bankruptcy Court's jurisdiction in fact support, rather than undermine, the referral order. *In re Allison*, 2006 WL 2620480, at *7 (Bankr. S.D. Tex. Sept. 12, 2006) ("At a minimum, a bankruptcy court has jurisdiction to determine its own jurisdiction."). They are also wrong. The Bankruptcy Court's jurisdiction extends not only to interpreting and enforcing the Plan's provisions—a quintessential core proceeding—but also to resolving Plaintiffs' underlying claims. Defendants have repeatedly correctly argued that their contingent indemnification rights against Core's estate establish "related to" jurisdiction over Plaintiffs' claims. Plaintiffs have no response to this argument, so they continue to ignore it.

There is no serious dispute that the Bankruptcy Court can finally determine the scope and application of the Plan's release and injunction, subject only to review on direct appeal. *See In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 774 (Bankr. N.D. Tex. 2007) (disputes over the validity or scope of "release provisions within a plan of organization . . . constitute a core proceeding"). Should the Bankruptcy Court choose to go further and exercise its "related to" jurisdiction by adjudicating Plaintiffs' claims on the merits, as the Plan expressly authorizes it to do, the only work remaining for this Court would be to review the Bankruptcy Court's report and recommendation on any claims it deems non-core.

Against this backdrop, this Court's referral order represents the most efficient and appropriate allocation of judicial resources. Withdrawing or limiting that referral would fragment

2

this litigation unnecessarily and generate piecemeal appeals that would delay resolution, not expedite it. Plaintiffs' transparent forum-shopping should not be rewarded. Their arguments fail to satisfy any of the five factors courts consider when evaluating withdrawal requests. The Court should decline Plaintiffs' invitation to create jurisdictional confusion, fragment litigation across multiple forums, and undermine the bankruptcy system's careful allocation of decisional authority. The path forward remains clear: the Bankruptcy Court, with its unique expertise and express jurisdictional reservation, must first determine whether and how its own gatekeeping provisions apply. Only then, if necessary, should this Court reopen its doors.

## II.    **PROCEDURAL BACKGROUND**

### A.    **Core's Plan Of Reorganization Releases And Enjoins Plaintiffs' Claims**

On December 21, 2022, Core filed for chapter 11 relief. *See In re: Core Scientific, Inc., et al.,* Case No. 22-BK-90341 (the "Core Bankruptcy"), ECF No. 1 (Bankr. S.D. Tex. 2022). Certain plaintiffs in this action participated in those proceedings by filing and amending their proof of claim (*see* Core Bankruptcy, ECF Nos. 1080-2, 1080-3), filing responses to preliminary objections (*see id.*, ECF No. 1178), and, most notably, objecting to confirmation of Core's proposed chapter 11 plan of reorganization (*see id.*, ECF No. 1558).

On January 16, 2024, the bankruptcy court presiding over Core's petition for relief ("Bankruptcy Court") entered a confirmation of Core's plan of reorganization ("Plan") over Plaintiffs' objections. *See* Core Bankruptcy, ECF No. 1749. The Plan contains a third-party release ("Third-Party Release") that releases all claims asserted in this case. ECF No. 92-15 at § 10.6(b) ("[E]ach Releasing Party[] shall be deemed to have . . . released . . . the Released Parties

3

from . . . all claims and Causes of Action asserted or assertable in the Securities Class Action.").[2] The Plan defines "Releasing Parties" as "the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out." *See id.* at Art. 1.267. While Plaintiffs contend otherwise, Defendants argue that all named Plaintiffs received notice of the Third-Party Release yet failed to opt out. ECF No. 92 at 9; ECF No. 100 at 5.

The Plan also contains a gatekeeping injunction ("Gatekeeping Injunction"), which reads:

> ***No entity or person may commence or pursue . . . [the] claims and Causes of Action asserted or assertable in the Securities Class Action*** . . . without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action . . . . The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.1, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

*See id.* at § 10.5.[3] This provision bars Plaintiffs from proceeding with their claims until the Bankruptcy Court first determines, after notice and a hearing, that they "represent [] claim[s] of willful misconduct, fraud or gross negligence." *Id.* It further reserves to the Bankruptcy Court "sole and exclusive jurisdiction" not only to determine whether Plaintiffs' claims are "colorable," but also "to adjudicate the underlying colorable Claim or Cause of Action." *Id.*

### B.    Plaintiffs Appeal Core's Chapter 11 Plan

On January 29, 2024, certain Plaintiffs appealed entry of the Plan to the United States District Court for the Southern District of Texas (the "Appeal Court"). *See Hoffman v. Core*

---

[2] The Plan defines "Securities Class Action" as "the class action pending in the United States District Court for the Western District of Texas, Austin Division, styled as *Pang v. Levitt et al.*, Case No. 1:22-cv-01191"—i.e., this case. *Id.* at Art. 1.302.

[3] Emphasis added and quotations, citations, and alterations omitted unless otherwise noted.

*Scientific, Inc.*, Case No. 24-CV-00357 (S.D. Tex. 2024) (the "Appeal"). Those Plaintiffs contested entry of the Plan on the basis that the Plan exceeded the authority and jurisdiction of the Bankruptcy Court. *See id.*, ECF No. 17. As their requested relief, Plaintiffs asked the Appeal Court to remand the matter to the Bankruptcy Court with instructions to exclude the claims pending in the instant case from the scope of the Third-Party Release. *See id.* at 53; ECF No. 34 at 1.

### C.    This Court Refers This Case To The Bankruptcy Court

Despite the absence of any order vacating or modifying the Plan's Third-Party Release and Gatekeeping Injunction, Plaintiffs filed their Second Amended Complaint ("SAC") in this Court on June 7, 2024. ECF No. 89. The SAC asserted Section 11, 15, 14(a), 10(b), and 20(a) claims against current and former directors of Core. *Id.* Defendants moved to dismiss the SAC on the grounds that it (1) asserted claims that were released and enjoined by the Plan, (2) was precluded by res judicata, (3) was time-barred with respect to Plaintiffs' Section 11 and 14(a) claims, and (4) otherwise failed to state a claim due to a number of deficiencies in the SAC. ECF No. 92.

On March 7, 2024, this Court entered an order referring this case to the Bankruptcy Court, denying Defendants' Motion to Dismiss without prejudice, and administratively closing this case. ECF No. 105 (the "Referral Order"). The Court reasoned that "[t]he determination of the[] threshold issues . . . raised by the motion . . . [should be] left to the bankruptcy judge, who is well-equipped to address such matters . . . given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function." Referral Order at 14. The Court referred the matter to the Bankruptcy Court "***for all purposes***, including, but not limited to, consideration of the gatekeeping issues in this case." *Id.* at 15. In denying Defendants' Motion to Dismiss without prejudice, the Court indicated that it could be "re-raised in Bankruptcy Court." *Id.*

5

### D.    The Appeal Is Dismissed As Moot In Light Of This Court's Decision

In response to this Court's Referral Order, the Appeal Court dismissed the Appeal as moot. Appeal, ECF No. 34 at 1-2.  The Appeal Court reasoned that in light of the administrative closure of this case, an order vacating the portion of the Bankruptcy Court's order implicating this case would "serve no practical purpose," leaving it incapable of "grant[ing] effective relief."  *Id.* at 2.

On April 2, 2025, Plaintiffs moved for reconsideration of the Appeal Court's mootness decision.  *See* Appeal, ECF No. 35.  Plaintiffs filed this motion the same day.

## III.    LEGAL STANDARD

While Federal Rule of Civil Procedure 54(b) governs motions to review interlocutory orders, this Court has recognized that "the exact standard applicable to the granting of a motion under Rule 54(b) is not clear."  *Soliz v. United States*, 2018 WL 6427342, at *2 (W.D. Tex. June 13, 2018) (Ezra, J.).  This Court thus follows the "general practice of courts in this Circuit" and considers timely filed motions under Rule 54(b) "under the same standards that govern Rule 59(e) motions to alter or amend a final judgment."  *Id.*  The Fifth Circuit and courts in this District have repeatedly recognized that reconsideration is an "extraordinary remedy that should be used sparingly."  *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (affirming denial of Rule 59(e) reconsideration motion); *Ponce v. Madaminov*, 2024 WL 1543220, at *2 (W.D. Tex. Apr. 9, 2024) (similar).  Accordingly, "Rule 59(e) favors the denial of motions to alter or amend a judgment."  *Woods v. Wal-mart, Inc.*, 2018 WL 8996623, at *2 (W.D. Tex. Sept. 6, 2018)

## IV.    ARGUMENT

While Defendants sought dismissal rather than transfer, and continue to maintain that Plaintiffs' claims should have been dismissed on the basis that they are released and enjoined by the Plan, Plaintiffs fail to identify any legitimate basis for reconsidering the Referral Order.

### A.    Reconsideration Is Procedurally Improper

To clear Rule 59(e)'s high bar, a movant "must show (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error of law or fact." *Id.* The motion fails to argue that any of these apply—because they do not.

At most, though not argued explicitly, Plaintiffs assert that the Court committed manifest error by referring this case to the Bankruptcy Court "for all purposes" and administratively closing the case. *See* Mot. at 1. But Plaintiffs entirely fail to show that these decisions were manifestly erroneous. "Manifest error is [error] that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Castro v. SN Servicing Corp.*, 2015 WL 11621152, at *1 (W.D. Tex. Sept. 2, 2015) (Ezra, J.). Plaintiffs do not argue that this Court "completely disregarded controlling law," nor could they. This defect dooms their motion at the threshold. *Id.*

### B.    The Court Should Not Reopen this Case

As is explained below, the Bankruptcy Court has jurisdiction over all referred matters, and there is no reason for the Court to withdraw or limit its referral. *See* Section IV.C *infra*. Because Plaintiffs have thus failed to identify anything this Court can and should *do* after reopening, their request to reopen is effectively moot. Administrative closure is simply a docket management tool that has no impact on Plaintiffs' substantive rights, particularly where, as here, the Court has provided a clear path for reopening following the Bankruptcy Court's determination. *See* Referral Order at 15-16. This standard administrative procedure preserves the Court's resources while the Bankruptcy Court addresses threshold issues squarely within its expertise and jurisdiction.

Plaintiffs' concerns (Mot. at 3-4) about the Appeal Court's dismissal order and potential "procedural quagmires" are misplaced. They arise from Plaintiffs' own strategy of pursuing parallel proceedings in multiple forums rather than respecting the Bankruptcy Court's exclusive jurisdiction over the threshold gatekeeping issues presented by their claims. As there is no role

7

for this Court to play while those issues are pending before the Bankruptcy Court, maintaining the administrative closure promotes judicial efficiency.  And while Plaintiffs argue (Mot. at 3) that vacating the administrative closure would "make clear to the Appeal Court that Plaintiffs' claims . . . have not been dismissed," nothing in the Referral Order suggests otherwise.  If Plaintiffs believe the Appeal Court misunderstood the nature of this Court's administrative closure, their proper recourse is to argue that in their motion for reconsideration before the Appeal Court.

Finally, Plaintiffs' argument (Mot. at 4) that "[r]uling on the 'gatekeeping issues' while the Appeal is still pending does not make any practical sense" is not one that supports reopening and staying this case while the referral is in place; it is one that implies the referral was wrong.  But that argument is meritless, as this Court's referral was well-reasoned and plainly not in such "complete[] disregard[] [of] controlling law" as to warrant reconsideration.  *See* Section IV.C *infra*.

C.      **The Court Should Not Withdraw or Limit Its Referral**

1.      **The Bankruptcy Court Has Jurisdiction Over The Referred Matters**

The Bankruptcy Court possesses clear statutory authority to adjudicate the matters this Court referred to it because they are either within the Bankruptcy Court's "core" jurisdiction or else "related to" Core's bankruptcy.  Furthermore, as Plaintiffs concede, the Bankruptcy Court has constitutional authority to enter a final judgment on the threshold issues this Court has identified (the "Gatekeeping Issues"), and may issue a report and recommendation on all other issues, including the merits of Plaintiffs' substantive claims.  There is thus no jurisdictional defect in this Court's Referral Order.  In any event, "[a]t a minimum, a bankruptcy court has jurisdiction to determine its own jurisdiction."  *Allison*, 2006 WL 2620480, at *7.  As such, this Court should abstain from withdrawing or limiting its referral based on arguments about the scope of the Bankruptcy Court's jurisdiction even if those arguments had merit (they do not).

8

**(a)**      **The Bankruptcy Court Has Statutory Authority**

Under 28 U.S.C. §§ 1334 and 157, the Bankruptcy Court may adjudicate both "core" matters and proceedings "related to" a bankruptcy case. All matters this Court has referred to the Bankruptcy Court fall comfortably within this grant of authority.

The Gatekeeping Issues this Court has identified—construing and enforcing the Plan's release and injunction—are "core" proceedings. "A 'core' proceeding is one involving substantive rights provided by the Bankruptcy Code or one that could arise only in the context of a bankruptcy case." *Panda Energy Int'l, Inc. v. Factory Mut. Ins.*, 2011 WL 610016, at \*5 (N.D. Tex. Feb. 14, 2011). Section 157(b)(2) designates as "core" any proceeding related to the "confirmation of plans," which necessarily includes disputes over third-party releases and gatekeeping provisions. 28 U.S.C. § 157(b)(2)(L). Indeed, courts have recognized that disputes over the validity or scope of "release provisions within a plan of organization . . . constitute a core proceeding under section 157(b)." *Wool Growers*, 371 B.R. at 774. This is a corollary of the well-established principle that "[a] bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders.'" *In re Burch*, 835 F. App'x 741, 748 (5th Cir. 2021) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)); *accord Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) ("actions to enforce [a] discharge injunction . . . call on a bankruptcy court to construe and enforce its own orders"); *In re La Fuente Home Health Servs., Inc.*, 2017 WL 1173599, at \*8 (Bankr. S.D. Tex. Mar. 28, 2017) ("The 'confirmation of plans' is squarely a core matter pursuant to § 157(b)(2)(L) and it follows that the interpretation of orders confirming a plan is as well."). Plaintiffs cannot and do not seriously dispute that the Bankruptcy Court has jurisdiction over the Gatekeeping Issues.

And contrary to Plaintiffs' baseless assertion (Mot. at 6-8), even their substantive claims fall squarely with the Bankruptcy Court's "related to" jurisdiction because they affect Core's estate.

9

A bankruptcy court "ha[s] 'related to' subject matter jurisdiction over litigation arising from a bankruptcy case if the proceeding could conceivably affect the estate being administered in bankruptcy." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010).  Accordingly, it is settled that the existence of "contingent indemnification claims that [] Defendants have against [a] Debtor[] as a result of [] claims now being asserted against [] Defendants" suffices to establish "related to" jurisdiction. *In re Brooks Mays Music Co.*, 363 B.R. 801, 810 (Bankr. N.D. Tex. 2007); *accord In re KSRP, Ltd.*, 809 F.3d 263, 266 (5th Cir. 2015) (same).  Here, the Plan explicitly preserves indemnification obligations, and multiple Defendants have asserted contingent indemnification claims against Core as a result of Plaintiffs' claims against them.  *See* ECF No. 92 at 13 & n.11.  The Bankruptcy Court thus has "related to" jurisdiction over Plaintiffs' claims.  While Defendants raised this argument in prior briefing—*see, e.g.*, *id.*—Plaintiffs have no response to it, so they continue to ignore it.  Whether deemed "core" or simply "related to" Core's bankruptcy, every issue referred to the Bankruptcy Court fits well within the statutory authority Congress has conferred on bankruptcy courts.

### (b)    The Bankruptcy Court Has Constitutional Authority

Although Congress has vested bankruptcy courts with broad statutory jurisdiction, Article III imposes further limits on when a non-Article III tribunal may enter final judgments.  *See Stern v. Marshall*, 564 U.S. 462, 482-83 (2011).  Here, the Gatekeeping Issues are indisputably "core" matters the Bankruptcy Court can finally adjudicate.  *See supra* at 9; *see also Stern*, 564 U.S. at 471 ("bankruptcy courts may . . . enter final judgments in 'core proceedings' in a bankruptcy case").  And even if Plaintiffs' substantive claims are deemed non-core, because it has statutory "related to" jurisdiction over them, *see supra* at 9-10, the Bankruptcy Court can still oversee pretrial proceedings and issue proposed findings and conclusions for de novo review by this Court.  *See* 28 U.S.C. § 157(c)(1).  This two-step mechanism reserves final judgment on any non-core

10

issues to an Article III judge, while capitalizing on the Bankruptcy Court's specialized expertise and familiarity with the Plan. *See Stern*, 564 U.S. at 471. Plaintiffs concede that this path is fully available to the Bankruptcy Court, Mot. at 9, as is the option of withdrawing the referral after resolving the Gatekeeping Issues. Plaintiffs' jurisdictional arguments are meritless.

### (c)    The Referral Is Not Barred By 28 U.S.C. 157(a)

Left with no jurisdictional defect in the Court's Referral Order and thus no "manifest error" to point to, Plaintiffs nonsensically argue (Mot. at 6) that "referral is unauthorized here" because "[t]he Bankruptcy Court is . . . not the bankruptcy court 'for the district' in which this Court sits." But 28 U.S.C. §§ 157(a) and 1409(a) both confirm that a case "arising under" or "related to" a bankruptcy may be heard in the district where the bankruptcy case is pending. Section 157(a) simply authorizes referral of "proceedings . . . arising in or related to a case under title 11 to the bankruptcy judges for the district," i.e., the district overseeing the bankruptcy. It does not empower every other district to hold onto "related to" disputes when the confirmed plan reserves jurisdiction elsewhere. Likewise, § 1409(a) provides that proceedings "arising in or related to a case under title 11 may be commenced in the district court in which *such case* is pending"—i.e., the bankruptcy case. Courts in the Fifth Circuit routinely respect that command, deferring to the plan-confirming court's continuing jurisdiction. *See, e.g.*, *In re Pearl Res. LLC*, 2023 WL 2089198, at *2 (Bankr. S.D. Tex. Feb. 17, 2023) (noting prior transfer of action from the Western District bankruptcy court to the Southern District bankruptcy court that confirmed the plan).

Reading § 157(a) to require each district court to refer only to its own bankruptcy judges would create inefficient parallel proceedings, risk inconsistent interpretations of bankruptcy plans, and undermine the home court's ability to manage the overall bankruptcy case. Plaintiffs' interpretation would absurdly bar district courts from referring even core proceedings to the court

11

that confirmed the plan based on the accident that a plaintiff filed them in the wrong district—precisely the illogical result Plaintiffs seek here by requesting that the referral be withdrawn.

### 2.    The Court Should Not Withdraw Its Referral

Plaintiffs argue (Mot. at 8) that the Court's referral of this case to the Bankruptcy Court should be withdrawn because they purportedly have shown "cause" pursuant to 28 U.S.C. § 157(d). Specifically, Plaintiffs argue that they have satisfied the four factors laid out in *City Bank v. Compass Bank*: "(A) whether the matter is a core or a non-core proceeding, (B) whether there is a right to a jury trial, (C) whether withdrawal promotes efficiency, and (D) whether withdrawal raises forum shopping concerns." 2011 WL 5442092, at *3 (W.D. Tex. Nov. 9, 2011) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985)) (denying request to withdraw referral to bankruptcy court). But Plaintiffs fail to address a fifth recognized factor: whether uniformity in bankruptcy administration will be promoted. *Studensky Tr. for Little Rover Healthcare Holdings, LLC v. United Healthcare Ins. Co.*, 2021 WL 2322935, at *4 (W.D. Tex. June 7, 2021). When these five (not four) factors are properly balanced, they weigh decisively in favor of keeping this case with the Bankruptcy Court.

As to the first factor, without putting forth any argument, Plaintiffs claim that "there is no dispute that this matter is a 'non-core' proceeding." Mot. at 9. That is wrong. At the very least, the construction of the Plan's release and injunction are indisputably core proceedings. *See supra* at 9. The Bankruptcy Court not only *can*, but indeed *must* resolve those issues. The Plan itself provides that the Bankruptcy Court "shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases." *See* Plan § 11.1. Plaintiffs reveal the frivolity of their request that the referral be withdrawn in its entirety by ignoring this clear bar to doing so.

With respect to the second factor, Plaintiffs again conclusorily state that there is "no dispute" that they have a right to a jury trial. Mot. at 9. Plaintiffs disregard that "the district court has

12

discretion to allow the bankruptcy court to manage the pretrial proceedings." *City Bank*, 2011 WL 5442092, at *4 (citing *King v. Fidelity Nat'l Bank of Baton Rouge*, 712 F.2d 188, 192-93 (5th Cir. 1983)).  Even if Plaintiffs have a right to a jury trial on their substantive claims (which they have failed to show), this factor does not weigh heavily in their favor because it is fully within the "district court's discretion to determine at what stage in the proceedings the reference should be withdrawn." *In re Centrix Fin.*, 2009 WL 1605826, at *3-4 (D. Colo. June 8, 2009); *accord Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 207 (S.D. Tex. 2008).  Where "efficiency considerations militate in favor of maintaining the reference in bankruptcy court until such a time as the Case must proceed to trial," a request to withdraw the reference should be denied. *In re Guynes Printing Co. of Tex., Inc.*, 2015 WL 3824070, at *3 (W.D. Tex. June 19, 2015).  In any event, because Plaintiffs have no right to a jury trial on the Gatekeeping Issues, this factor cannot support the wholesale withdrawal they seek.

The efficiency factors also weigh decisively in favor of maintaining the referral.  As this Court has recognized, the Bankruptcy Court is best positioned to determine the bounds of the Plan and what claims, if any, should go forward in this case.  *See* Referral Order at 14.  Moreover, "[m]aintaining the reference will be more efficient because the bankruptcy court is familiar with [the Gatekeeping Issues], and allowing the bankruptcy court to function much like a magistrate could considerably expedite the litigation." *Guynes*, 2015 WL 3824070, at *4.

Plaintiffs argue (Mot. at 9) that "withdrawal will promote efficiency because this Court can simply stay the case or defer ruling on the pending motions until the Appeal resolves the 'gatekeeping issues.'"  This ignores that Plaintiffs' appeal has been dismissed as moot—and there is no reason to assume Plaintiffs' motion seeking reconsideration of that order will be granted, nor could this Court premise any decision upon such an assumption.  *See In re Deepwater Horizon*,

13

546 F. App'x 502, 506 (5th Cir. 2013) ("A request for relief is unripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). It also ignores that the Appeal cannot and will not resolve all of the Gatekeeping Issues. Because Downing and Huynh did not become named plaintiffs in this action until Plaintiffs filed the SAC on June 7, 2024—over two months after they filed their opening brief in the Appeal—Plaintiffs' argument that Downing and Huynh did not receive adequate notice of the Third-Party Release (ECF No. 95 at 9) has never been presented to the Bankruptcy Court, let alone the Appeal Court. *See* Appeal, ECF No. 17 (Appellants' Opening Brief); *id.*, ECF No. 23 (Appellants' Reply Brief). This issue raised by construction of the Plan *must* be resolved by the Bankruptcy Court in the first instance. *Supra* at 9. It would be wildly inefficient for this Court to wait in vain for the Appeal Court to resolve issues that were never presented to it, only to then necessitate a second appeal.

The fourth factor concerns forum shopping. "Forum shopping raises fairness concerns— *i.e.* it is unfair for a party to have a better chance of winning the case because of the forum when the underlying law should be the same." *City Bank*, 2011 WL 5442092, at *6. As a court in this District has observed, "[m]otions to withdraw pose significant risks of forum shopping because a party can first observe the bankruptcy judge's rulings, and then decide whether to bring the motion." *Id.* That is what is happening here—Plaintiffs are unhappy with the Bankruptcy Court's rulings to date and seek to get out from under its jurisdiction. This is evident through Plaintiffs' numerous objections in the Bankruptcy Court, their subsequent appeal of the Bankruptcy Court's confirmation order, and their choice to file their claims in this Court in violation of the Plan. Keeping this case referred to the Bankruptcy Court at this juncture "takes th[e] power out of the hands of the parties" and permits the Bankruptcy Court to decide when during the pre-trial process to withdraw its referral, if at all. *Id.*

14

Plaintiffs' arguments (Mot. at 10) that this case was filed before Core's bankruptcy and that Core is located in this District are beside the point. Plaintiffs fail to explain the relevance of Core's location. And it is Plaintiffs' filing of the SAC and their attempt to withdraw the referral that raise forum-shopping concerns, not their initial filing of this case. The Bankruptcy Court has the most knowledge regarding the Plan and its boundaries, and is expressly authorized under the Plan not only to exercise a gatekeeping function but also to adjudicate Plaintiffs' claims on the merits, to the extent it allows them to proceed at all. Plaintiffs' Motion is a transparent attempt to short-circuit that mandatory process by shopping for an impermissible forum. Notably, Plaintiffs have conceded that most if not all of their claims are straightforwardly barred by the Gatekeeping Injunction because they are not claims of fraud, willful misconduct, or gross negligence. Appeal, ECF No. 17 at 11. That is another obvious reason Plaintiffs are seeking to prevent the Bankruptcy Court from interpreting and enforcing its Plan: they have already judicially admitted that this would result in immediate dismissal of their Section 11 and 14(a) claims. *Id.* The only way for them to avoid that result is to avoid the Bankruptcy Court.

As for the last factor, the referral will promote uniformity in bankruptcy administration because the Bankruptcy Court "will be in a better position to efficiently decide this case as it will be interpreting the bankruptcy plan it entered and determining the effects of its orders and rulings." *Burch v. Freedom Mortg. Corp.*, 2019 WL 4935187, at *8 (N.D. Tex. July 12, 2019), *report and recommendation adopted*, 2019 WL 4930097 (N.D. Tex. Aug. 5, 2019).

### 3.   The Court Should Not Limit Its Referral

Plaintiffs argue in the alternative (Mot. at 10) that this Court should limit its referral to the Gatekeeping Issues because resolution of Plaintiffs' (dismissed) appeal in Plaintiffs' favor would supposedly obviate the need for any referral. Again, this is wrong, not only because the

15

Bankruptcy Appeal has been dismissed, but also because the Appeal Court could not and would not address all of the Gatekeeping Issues even if it resurrected Plaintiffs' appeal. *See supra* at 14.

Next, Plaintiffs contend (Mot. at 10) that a referral limited to the Gatekeeping Issues would be more efficient than a wholesale referral because "the resulting report and recommendation would be much narrower in scope and less likely to draw objections requiring significant additional briefing." To the extent Plaintiffs suggest that the Bankruptcy Court can in all events do nothing more than issue a report and recommendation, they again disregard that the Gatekeeping Issues arise from plan confirmation—an indisputably "core" matter the Bankruptcy Court has full authority to finally adjudicate. *See supra* at 9. In any event, Plaintiffs' argument ignores the reality that the Gatekeeping Issues and the merits of Plaintiffs' claims are unavoidably intertwined. If the Bankruptcy Court ultimately rules that the Plan's release and injunction bar all or most of Plaintiffs' claims, that will be dispositive of the entire action, sparing both courts and the parties from needless "additional briefing" later. On the other hand, if the injunction and release do not apply, the Bankruptcy Court—already well-versed in the relevant facts and confirmation-history—may exercise its authority to seamlessly address any remaining issues, stopping short of entering final judgment as to any remaining non-core claims.

Moreover, any attempt to limit the referral at this stage could result in excluding as-yet unidentified issues the Bankruptcy Court may ultimately determine it must decide. The more efficient, consistent, and riskless approach is for the Bankruptcy Court to handle all aspects of the case in a single, integrated process, then issue final orders or recommended findings as appropriate—thus preserving the uniform administration of the bankruptcy and maximizing judicial economy. *Guynes*, 2015 WL 3824070, at *4 ("[T]he bankruptcy court can determinatively rule on the core proceedings, and the parties or the district court can move to withdraw only the

16

non-core proceedings and any *Stern* claims when and if it is determined that a jury trial is indeed required."). This Court should not limit its referral before the Bankruptcy Court has even identified the full scope of the determinations it can and must make—let alone made them.

## V.     **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Reconsideration in its entirety, maintain its referral of this case to the Bankruptcy Court, and keep this case administratively closed.

17

Dated: April 16, 2025

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ John F. Bash*
John F. Bash
Texas Bar I.D. 24067504
Evan Z. Pearson
Texas Bar I.D. 24121403
300 W. Sixth Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
johnbash@quinnemanuel.com
evanpearson@quinnemanue.com

John B. Quinn (*pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
johnquinn@quinnemanuel.com

Jesse Bernstein (*pro hac vice*)
Brenna Nelinson (*pro hac vice*)
Peter M. Collins (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
petercollins@quinnemanuel.com

*Attorneys for Defendants*

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/John F. Bash*
John F. Bash

19