**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING,<br><br>    Defendants. | Case No. 1:22-CV-1191-DAE<br><br>CLASS ACTION |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION FOR RECONSIDERATION**

Lead Plaintiff Morgan Hoffman and named plaintiffs Evan Achee, William J. Emanuel, Garrett Downing, and Tin Doan Huynh (collectively, "Plaintiffs") submit this memorandum in further support of their motion seeking reconsideration of the Court's Referral Order. Capitalized terms used herein take the meanings ascribed to them in Plaintiffs' motion, Dkt. No. 108, unless otherwise indicated.[1]

## I.    PRELIMINARY STATEMENT

Defendants' assertion that Plaintiffs have engaged in gamesmanship or forum-shopping flips reality on its head. Plaintiffs filed this case in this District, where Core is located. When Core chose to file Chapter 11 bankruptcy in the Southern District of Texas, Plaintiffs dropped the company from this case. Neither Core nor Defendants protested at any point that this case should be stayed due to any potential impact on the bankruptcy. Nonetheless, while the parties litigated this securities class action before this Court Defendants have attempted to abuse the bankruptcy process to give themselves a "get out of jail free" card, seeking to snuff out Plaintiffs' and the putative class's claims without due process through a blatantly non-consensual release opt-out process that Defendants shoehorned into the plan of reorganization. Plaintiffs have consistently maintained that these non-consensual releases (including the injunctive/gatekeeping provisions) are entirely impermissible, that the Bankruptcy Court lacks constitutional and statutory authority and subject matter jurisdiction to release or adjudicate Plaintiffs' claims, and that the grossly deficient opt-out scheme does not confer consent to the releases, for which no consideration or other justification is provided.

---

[1] A copy of the Appeal Dismissal Order was inadvertently omitted from Plaintiffs' opening brief and is attached hereto as Exhibit 1.

Defendants refused to carve out the claims in this action—brought by non-debtors against non-debtors—or to let Plaintiffs opt-out on behalf of the class. Plaintiffs objected strenuously to the releases (not opting out because to do so would vitiate their standing to object for the benefit of the class Lead Plaintiff was appointed by this Court to represent), and appealed the Bankruptcy Court's confirmation of the plan with respect to the Third-Party Releases.

Meanwhile, after this Court dismissed Plaintiffs' first amended complaint without prejudice, it expressly gave Plaintiffs leave "to amend their Complaint." Dkt. No. 86 at 15. Defendants did not object, seek any relief, or otherwise indicate they believed a complaint could only be filed in the Bankruptcy Court subject to the injunctive gatekeeping provisions (which were then on appeal). Not until a year later did they take this position in opposing Plaintiffs' instant motion to reconsider the Court's *sua sponte* referral. Indeed, Defendants did not even suggest in their motion to dismiss, where they raised these gatekeeping issues, that the Bankruptcy Court would be a more appropriate venue to adjudicate their motion. In reality it is *Defendants* who are engaged in gamesmanship and forum shopping, not Plaintiffs. Defendants have pursued every alternative way possible to extinguish Plaintiffs' claims outside of this Court's purview, apparently believing that the Bankruptcy Court provides a more favorable venue to achieve that goal. Defendants oppose this relief only because they favor the Bankruptcy Court. Plaintiffs are seeking only to pursue the claims they filed in this Court years ago, against non-debtor defendants, and proceed with the litigation in the most expeditious and efficient manner.

By this motion, Plaintiffs seek simple and logical relief that will avoid needless and redundant briefing across multiple courts. Plaintiffs' appeal of the Bankruptcy Court's Order should be heard and determined first. Plaintiffs have already moved for Judge Bennett to reconsider his Appeal Dismissal Order because it is based on the factually incorrect premise that

the appeal can provide no effective relief in light of this case being administratively closed per the Referral Order. Plaintiffs' appeal was filed well over a year ago—it is ripe for decision upon the Appeal Court's withdrawal of its dismissal. Plaintiffs request that this Court simply withdraw its referral to the Bankruptcy Court and stay this case or defer further action while Plaintiffs' appeal is pending. If Plaintiffs prevail on their appeal, invalidating the Third-Party Releases as to all claims in this Action, Defendants do not seriously contest that all of the gatekeeping issues will be entirely moot and there will be no basis for any referral to, or other proceedings concerning this Action before, the Bankruptcy Court.[2] If the Third-Party Releases are upheld, the Court can refer the gatekeeping issues to the Bankruptcy Court at that time. In these circumstances, the most prudent and efficient course is for the Court to simply wait and take no further action until the appeal is resolved.

Referring the case now means the parties will have to litigate gatekeeping issues before the Bankruptcy Court and object to/relitigate the Bankruptcy Court's determinations upon its report and recommendation to this Court, all of which may be nullified by the appeal. The Bankruptcy Court's authority to make those threshold determinations is the issue already on appeal. It would waste the resources of the parties, this Court, and the Bankruptcy Court if the parties had to relitigate the same issues yet again in multiple forums, only to be rendered moot by an eventual decision on the already-pending appeal.

---

[2] To the extent that Defendants argue that the issue of whether Downing and Huynh received adequate notice of the Third-Party Releases was not expressly presented to the Appeal Court, Dkt. No. 111 at 14, they ignore that a resolution of the appeal in Plaintiffs' favor will resolve and moot any such specific application of the Third-Party Releases to Plaintiffs. If the Third-Party Releases are invalidated as to Plaintiffs' claims, it is irrelevant whether Downing and Huynh specifically received adequate notice of the release opt-outs.

Finally, to the extent Defendants argue that the appeal is currently dismissed and the Appeal Court has not (yet) granted Plaintiffs' motion for reconsideration of the Dismissal Order, this Court could simply defer ruling on Plaintiffs' instant motion until Plaintiffs' fully briefed motion to the Appeal Court is resolved. Plaintiffs will promptly advise this Court upon final resolution of their motion to the Appeal Court.

## II.     ARGUMENT

### A.     Defendants Mischaracterize the Rule 54(b) Standard

As this Court has previously held in this case, interlocutory orders such as the Referral order may be "revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Dkt. No. 86 at 3 (quoting Fed. R. Civ. P. 54(b)). The Fifth Circuit has explained that when weighing a motion to reconsider an interlocutory order under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Reconsideration can be granted "to correct a manifest error of law or fact." *Onofre v. C.R. England, Inc.*, 2017 WL 4082366, at *2 (W.D. Tex. July 24, 2017). "[W]hether to grant such a motion [under Rule 54(b)] rests within the discretion of the court." *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009). "The district court's discretion in this respect is broad." *Brown v. Wichita Cty., Tex.*, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011). "Ultimately, the critical inquiry is whether justice requires relief from the interlocutory order." *Wsou Invs. LLC v. Microsoft Corp.*, 2022 WL 2078216, at *2 (W.D. Tex. June 9, 2022) (citing *Kroger*, 864 F.3d at 337). Here, justice requires that the Court exercise its broad discretion to withdraw the Referral Order and instead stay the case or defer further ruling pending resolution of the appeal.

4

**B.     The Bankruptcy Court Lacks Jurisdiction Over Plaintiffs' Claims**

As an initial matter, Defendants are wrong in asserting that Plaintiffs concede that the Bankruptcy Court has authority to enter a final judgment on the "gatekeeping issues" identified in the Referral Order. Plaintiffs make no such concession and have expressly contested the Bankruptcy Court's constitutional and statutory authority to release or adjudicate Plaintiffs' claims, both in this case and at length in their appeal. To the extent the Bankruptcy Court has "jurisdiction to determine its own jurisdiction," that is even more reason to stay this action pending resolution of the appeal. The Bankruptcy Court already determined (wrongly) that it has jurisdiction to summarily dispose of Plaintiffs' and the class's claims without consent or due process through the Third-Party Releases, and Plaintiffs' appeal directly challenges that determination. There is no need to relitigate an issue that the Bankruptcy Court has already decided and which has already been appealed.

Defendants point only to the existence of indemnification agreements they had with Core as a basis for finding "related to" jurisdiction here, but any impact on the estate from the indemnification agreements would require two contingencies: (A) Plaintiffs must prevail on their claims against the indemnified Defendants; ***and*** (B) the substantial D&O insurance policy proceeds—which are not part of the estate (*see In re Vitek*, 51 F.3d 530, 535 (5th Cir. 1995) ("proceeds of [a] D&O policy are not part of the debtor's bankruptcy estate."))—must be exhausted by any potential liability. *See, e.g.,* Dkt. No. 92-18 (Defendant Levitt's bankruptcy claim for indemnity, noting "claim amount" is "net of any insurance proceeds received"). Courts have held that contingent indemnification claims do not necessarily satisfy the "related to" test for bankruptcy jurisdiction. For example, in *In re NC12, Inc.*, 478 B.R. 820, 840 (Bankr. S.D. Tex. Aug. 28, 2012), the bankruptcy court exercised its discretion to abstain from hearing fraud claims that were "on the outer fringes of the Court's related-to jurisdiction," where the claims at issue

could only conceivably have an effect on the bankruptcy estate if, and only after, applicable insurance policies were exhausted. *See also Coward v. AC & S., Inc.*, 91 F. App'x 919, 923-24 (5th Cir. 2004) (contingent indemnification claims do not trigger "related to" jurisdiction) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984)).

Contrary to Defendants' arguments, the Bankruptcy Court does not have jurisdiction to enter a final ruling on the merits of Plaintiffs' claims. The Bankruptcy Court previously found that it has "related to" jurisdiction with respect to the release and disposition of Plaintiffs' claims (which Plaintiffs dispute). The Bankruptcy Court did not assert that its release and disposition of Plaintiffs' claims was a "core" matter in any way and it cannot unilaterally convert its "related to" jurisdiction to jurisdiction over a "core" matter simply because it gave itself such jurisdiction in a previous order (that Plaintiffs have appealed), by way of implementing the Third-Party Releases and injunctive provision. None of the cases cited by Defendants hold otherwise. Thus, at most the Bankruptcy Court would have only "related to" jurisdiction over these non-core matters and it could only issue a report and recommendation, not a final ruling, on the merits of Plaintiffs' claims upon referral. The Bankruptcy Court has considerably less familiarity with the laws and facts at issue in Plaintiffs' complaint, so it would be both inefficient and imprudent to refer any merits determinations of Plaintiffs' claims to the Bankruptcy Court in the first instance.

### C. The Court Should Withdraw Its Referral

The *Holland* factors that courts weigh when considering whether to withdraw a reference to bankruptcy court each weigh in favor of withdrawal here. This matter is "a non-core proceeding," Plaintiffs have a clear Seventh Amendment right to a jury trial on their civil claims for damages under the federal securities laws, withdrawal promotes efficiency, and withdrawal raises no forum shopping concerns. *See City Bank v. Compass Bank*, 2011 WL 5442092, at *3 (W.D. Tex. Nov. 9, 2011) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998

6

(5th Cir. 1985)). The case cited by Defendants, *Studensky Tr. for Little Rover Healthcare Holdings, LLC v. United Healthcare Ins. Co.*, 2021 WL 2322935, at \*4 (W.D. Tex. June 7, 2021), describes the *Holland* factors similarly, including whether: "(1) the underlying lawsuit is a non-core proceeding; (2) uniformity in bankruptcy administration will be promoted; (3) forum shopping and confusion will be reduced; (4) economical use of debtors' and creditors' resources will be fostered; (5) the bankruptcy process will be expedited; and (6) a party has demanded a jury trial." Withdrawing the Court's referral is merited under either formulation.

As explained above, this matter is (at most) a "non-core" proceeding, such that the Bankruptcy Court may only submit a report and recommendation, subject to the parties' objections and this Court's final review under a *de novo* standard. 28 U.S.C. § 157(c)(1). To the extent the plan of reorganization states that the Bankruptcy Court retains "exclusive jurisdiction over all matters...related to the Chapter 11 Cases," that does not convert the Bankruptcy Court's "related to" jurisdiction, to the extent it exists, into full jurisdiction to enter final judgments on claims by non-debtor Plaintiffs against non-debtor Defendants.

Withdrawal will not impact "uniformity in bankruptcy administration," as Plaintiffs request only that this Court withdraw the referral pending resolution of the appeal of the Bankruptcy Court's prior decision. If Plaintiffs prevail on their appeal, the Bankruptcy Court's plan confirmation order will be modified to carve out the claims in this Action and there will be no further impact on the bankruptcy proceedings. Plaintiffs are not asking the Court to make any rulings as to the bankruptcy plan, just to wait until the Appeal Court dispositively resolves the gatekeeping issues presented on appeal. While the Bankruptcy Court may be slightly more familiar with the specific application of the gatekeeping issues, that does not extend to an adjudication of

7

the merits of Plaintiffs' claims, with which this Court is already closely familiar and the Bankruptcy Court is not.

Plaintiffs have not engaged in forum shopping. It is Defendants who filed Core's Chapter 11 proceedings in a district other than the one in which Core sits (and where Plaintiffs brought their pre-petition suit) and have attempted to use a more favorable jurisdiction to subvert this Court's authority and use the Bankruptcy Court to summarily dispose of Plaintiffs' claims for no consideration without consent or due process. Withdrawal would simply keep Plaintiffs' claims in the same court they have always been in since before the Chapter 11 petition was filed. Defendants have never sought transfer and cannot seriously contend that the District in which Core is based is an improper venue to litigate claims against Core's officers and directors.

As explained above and in Plaintiffs' opening brief, Plaintiffs' request for withdrawal will foster a much more economical use of the parties' and multiple courts' resources by avoiding unnecessary re-litigation of issues already fully briefed before this Court and the Appeal Court.

The bankruptcy process will not be hindered by withdrawal here, as the resolution of Plaintiffs' claims are already subject to the appeal. A withdrawal of the referral and stay pending resolution of the appeal will have no further impact on the bankruptcy process outside of providing a more efficient resolution of Plaintiffs' claims in the proper venue.

Finally, Plaintiffs have demanded (and are entitled to under the Seventh Amendment) a jury trial on their civil claim for damages under the federal securities laws. Defendants do not actually dispute this, nor do they dispute that this factor weighs in favor of withdrawal.

## III. CONCLUSION

For the foregoing reasons, and those detailed in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court vacate its Referral Order, and instead stay this Action or defer ruling on the pending motions until resolution of the Bankruptcy Appeal.

Dated: April 28, 2025

Respectfully submitted,

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

*/s/Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No.: 24027936
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
scochran@condontobin.com

*Liaison Counsel for Lead Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (*pro hac vice*)
Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335

Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/Stuart L. Cochran*