UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MEI PANG, Individually and on          §          No. 1:22-CV-1191-DAE
Behalf of All Others Similarly          §
Situated,                              §
                                        §
        Plaintiffs,                     §
                                        §
vs.                                     §
                                        §
MICHAEL LEVITT, et al.,                 §
                                        §
        Defendants.                     §
_____    §

## ORDER DENYING MOTION FOR RECONSIDERATION

Before the Court is Plaintiffs Mei Pang, Individually and on Behalf of

All Others Similarly Situated's ("Plaintiffs") Motion for Reconsideration. (Dkt.

# 108.) The Court finds a hearing on this matter is not necessary. After careful

consideration of the memoranda filed in support of and in opposition to the

Motion, the Court, for the reasons below, **DENIES** the motion.

## BACKGROUND

Core Scientific, Inc. ("Core") is a prominent player in the digital asset

mining sector, specializing in Bitcoin. (Dkt. # 89 at ¶ 3.) The company leverages

a vast fleet of specialized computing machines, known as miners, to tackle intricate

cryptographic algorithms. This results in the generation of cryptocurrencies, with

Bitcoin as the primary focus. (Id. at ¶ 4.) Core offers critical infrastructure for

cryptocurrency mining.  The infrastructure encompasses both self-mining where it mines digital assets for its own account, and hosts services tailored for third-party miners.  (Id.)  Core's operations are intrinsically tied to the volatile cryptocurrency market.  Fluctuations in cryptocurrency prices, particularly Bitcoin, significantly impact its operations and financial performance.  (Id. at ¶ 61.)

Central to Core's operations is the management of electricity costs. Because cryptocurrency miners consume large amounts of electricity, power is a principal cost for Core's mining fleet.  (Id. at ¶ 5.)  Core's bottom-line is dependent on power prices set by the public power markets where Core's facilities are located.  (Id. at 5–6.)  Power prices are influenced by several variables, including the price of natural gas, weather, and location, among others.  The company strategically seeks long-term power contracts to mitigate power expenses, a practice highly valued by its hosting customers.  (Id.)

The company relies heavily on its hosting customers. These customers pay a set rate per kilowatt-hour based on their actual monthly energy consumption, providing them with predictability in their energy costs while shielding them from fluctuations in power rates.  (Id.)

In July 2021, Core entered into an Agreement and Plan of Merger and Reorganization with Power & Digital Infrastructure Acquisition Corp. ("XPDI") to go public via a "de-SPAC."  (Id. ¶ 87.)  XPDI stockholders approved the merger

pursuant to a Proxy Statement and unredeemed shares of XDPI were converted to shares of Core pursuant to a Registration Statement filed on December 30, 2021. (Id. at ¶¶ 22–23.)

The summer and fall of 2022 brought widespread increases in power costs, plummeting Bitcoin prices, and an influx of cryptocurrency miners that strained the states' power grids. (Id. at ¶ 15.) Due to power cost increases, Core allegedly initiated an attempt to pass through increased power costs onto its hosting customers, ultimately deviating from its existing fixed-rate contracts. (Id. at ¶ 9–10.)

Celsius Network LLC ("Celsius"), one of Core's largest hosting customers, disputed these charges and subsequently filed for bankruptcy on July 13, 2022. (Id. at ¶¶ 12, 15–16.) Given Celsius' outstanding balance and Core's impending liquidity issues, Core sought to collect on the charges incurred by Celsius prior to its bankruptcy. On September 28, 2022, Celsius filed a motion for civil contempt in bankruptcy publicly alleging that Core breached its agreement with Celsius by attempting to "pass through" power costs to Celsius under its contract. (Id. at ¶ 14.)

On October 27, 2022, Core filed a Form 8-K informing investors that due to the "prolonged decrease in the price of bitcoin, the increase in electricity costs, the increase in the global bitcoin network hash rate and the litigation with

Celsius," the Company would not make outstanding payments for financing and was exploring strategic alternatives to its capital structure. (Id. at ¶ 182.) Core also disclosed that its cash resources would be "depleted by the end of 2022 or sooner," and that "substantial doubt exists about the Company's ability to continue as a going concern for a reasonable period of time." Id.; see October 2022 Form 8-K. That day, Core's stock price closed at $.0221 per share. (Dkt. # 89 at ¶ 183.) On December 21, 2022, Core filed for bankruptcy (id. at ¶ 185), and by that time its stock price had collapsed, falling to $.05 per share before being delisted (id. at ¶ 22).

On November 14, 2022, Plaintiffs filed suit in this case against Defendants Michael Levitt, Michael Trzupek, Denise Sterling, Darin Feinstein, Brian Neville, Jarvis Hollingsworth, Matt Minnis, Stacie Olivares, Kneeland Youngblood, Patrick C. Eilers, Theodore J. Brombach, Paul Gaynor, Colleen Sullivan, Scott Widham, and Paul Dabbar's ("Defendants"). (Dkt. # 1.) The dispute concerns the disclosures or lack thereof to investors both prior to and after Core allegedly decided to impose power cost pass-through charges onto its customers. On December 20, 2023, Court granted in part and denied in part Defendants' motion to dismiss the first amended complaint. (Dkt. # 73.) The Court dismissed Plaintiffs' Section 10(b) claim for failure to adequately plead scienter and loss of causation but declined to dismiss Plaintiffs' Section 11 and

14(a) claims.  (Id. at 15–19.)  After Defendants moved for reconsideration of that

Order, the Court dismissed Plaintiffs' amended complaint in full with leave to

amend.  (Dkt. # 89.)

   On June 7, 2024, Plaintiffs filed a Second Amended Class Action

Complaint, bringing claims again for violations of the federal securities laws

against the current and former officers and directors of Core Scientific, Inc.  (Dkt.

# 89.)  Plaintiffs allege that Defendants made false and misleading statements and

omissions in Core's SEC filings and in public statements, including in the

Registration Statement and Proxy Statement issued by Core in connection with its

"de-SPAC" merger.  Plaintiffs bring negligence claims under Section 11 of the

Securities Act of 1933 ("Securities Act") and Section 14(a) of the Securities

Exchange Act of 1934 ("Exchange Act"), claims pursuant to Section 20(a) of the

Exchange Act, Section 15 of the Securities Act, securities fraud claims under

Section 10(b) of the Exchange Act, and control person claims under each statute.

(Id.)

   On March 7, 2025, the Court referred this case to the Bankruptcy

Court, denied Defendants' motion to dismiss without prejudice, and

administratively closed the case in light of the referral.  (Dkt. # 105.)  Among

others, the Court found that "[t]he determination of the[] threshold issues . . . raised

by the motion . . . [should be] left to the bankruptcy judge, who is well-equipped to

address such matters . . . given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function." (Id. at 14.) The Court referred the matter to the Bankruptcy Court "for all purposes, including, but not limited to, consideration of the gatekeeping issues in this case." (Id. at 15.) In denying Defendants' motion to dismiss without prejudice, the Court indicated that it could be "re-raised in Bankruptcy Court." (Id.)

   In response to this Court's Order referring the case to the bankruptcy court, the district court hearing the appeal dismissed the appeal as moot. (Dkt. # 113-1.) The district court reasoned that in light of the administrative closure of this case, an order vacating the portion of the Bankruptcy Court's order implicating this case would "serve no practical purpose," leaving it incapable of "grant[ing] effective relief." (Id. at 2.) On April 2, 2025, Plaintiffs moved for reconsideration of the appeal court's mootness decision in that court. That motion has not been ruled on.

   On April 2, 2025, Plaintiffs also filed the instant motion to reconsider this Court's order referring the case to the bankruptcy court and administratively closing the case. (Dkt. # 108.) On April 16, 2025, Defendants filed a response in opposition. (Dkt. # 111.) On April 28, 2025, Plaintiffs filed their reply. (Dkt. # 113.)

<u>LEGAL STANDARD</u>

Plaintiffs move for reconsideration pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  (Dkt. # 71.)  Because the Court's order on Defendants' motion to dismiss was interlocutory and did not dispose of all of the claims in this case, it is analyzed under Fed. R. Civ. Pro. 54(b) rather than Rule 59 or Rule 60, which apply to final judgments.  <u>Cabral v. Brennan</u>, 853 F.3d 763, 766 (5th Cir. 2017).  Rule 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all of the claims and all the parties' rights and liabilities."  Under this rule, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." <u>Id.</u> at 767 n.3 (quoting <u>Lavespere v. Niagara Mach. & Tool Works, Inc.</u>, 910 F.2d 167, 185 (5th Cir. 1990)).

<u>DISCUSSION</u>

Relevant to the instant motion, the Court notes the two concurrent cases at issue: (1) this action, which the parties refer to as the "Securities Action," and (2) the appeal ("Appeal") of the bankruptcy order issued in In re Core Scientific, Inc., No. 22-90341 (S.D. Tex. Bankr.) ("Bankruptcy Court").  According to Plaintiff, the Appeal contests the validity of certain third-party releases and injunctions contained in the Chapter 11 plan entered in Bankruptcy Court.  (Dkt.

# 108 at 5–6.)  Appellants in the Appeal ask the Appeal Court to vacate the Bankruptcy Court's order to the extent the Third Party Releases apply to their claims in the instant action, and to remand the matter to the Bankruptcy Court.  (Id. at 6.)  As noted above, the Appeal Court *sua sponte* dismissed the Appeal as moot, determining that "[b]ecause the Securities Action has been administratively closed, vacating the portion of the Bankruptcy Court's Order implicating the Securities Action would serve no practical purpose," and "[a]s a result, the Court is unable to grant effective relief."  (Dkt. # 113-1.)

In their motion for reconsideration, Plaintiffs now ask the Court to reopen this case and vacate its administrative closure to "make clear to the Appeal Court that Plaintiffs' claims and their complaint have not been dismissed or terminated in any way." (Dkt. # 108 at 7.)  Thereafter, Plaintiffs request the case be stayed or, alternatively, reinstate the previously dismissed without prejudice motion to dismiss and motion to strike, and then "defer ruling on the pending motions until resolution of the Appeal, which could easily resolve and dispose of the 'gatekeeping issues.'" (Id. at 8.)

Additionally, Plaintiffs also ask the Court to reconsider its Order referring matters to the Bankruptcy Court.  (Dkt. # 108 at 9.)  Plaintiffs request the Court withdraw the referral or at least issue an order clarifying that only determination of the "gatekeeping issues" (whether the Third Party Releases

8

specifically apply to release and/or bar Plaintiffs' claims) are referred to the Bankruptcy Court.  (Id.)

Upon careful consideration of the matters presented in Plaintiffs' motion, the Court finds no basis to reconsider its prior order referring matters to the Bankruptcy Court, denying without prejudice the pending motions, and administratively closing the case.  (Dkt. # 105.)  First, regarding the administrative closure of this case, the Fifth Circuit has noted that district courts "frequently make use of this device to remove their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending)."  Mire v. Full Spectrum Lending Inc., 389 F.3d 163, 167 (5th Cir. 2004).  Notably, "[t]he effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; i.e., administratively closed cases are not counted as active."  Id. (citing Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 392 ("This method is used in various districts throughout the nation in order to shelve pending, but dormant, cases.")).  "In contrast, cases stayed, but not closed, are counted as active."  Id.  As clearly stated in the Court's Order referring the case to the Bankruptcy Court, this case still exists on the docket of this Court and may be opened upon request of the parties or on the Court's own motion.  Thus, this situation is the functional equivalent of a stay, not a dismissal, and no judgment has

been entered in this case.  Accordingly, the Court declines to reopen and stay this case.  That the Appeal Court dismissed that action as moot in light of this Court's administrative closure must be taken up with that court who controls its own docket.

Additionally, the Court declines to reconsider its Order referring matters to the Bankruptcy Court.  The Court has referred the Gatekeeping Issues defined in that Order, as well as the substantive claims to the extent they affect Core's estate.  These are "core proceedings" where bankruptcy courts have authority to enter final judgment, and even if not considered core proceedings, the Bankruptcy Court can still oversee pretrial proceedings and make recommendations where warranted.  As stated in the referral Order,

> [c]ourts have long recognized bankruptcy courts can perform a gatekeeping function."  Matter of Highland Capital Mgmt., L.P., 48 F.4th 419, 439 (5th Cir. 2022).  And, "[u]nder the 'Barton doctrine,' the bankruptcy court may require a party to 'obtain leave of the bankruptcy court before initiating an action in district court when the action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity.'"  Id. (quoting Villegas v. Schmidt, 788 F.3d 156, 159 (5th Cir. 2015) (emphasis added); accord Barton v. Barbour, 104 U.S. 126 (1881).[1]  In Villegas, the Fifth Circuit held "that a party must continue to file with the relevant bankruptcy court for permission to proceed with a claim against the trustee."  788 F.3d at 158.  The Fifth Circuit has left to the bankruptcy court, when faced with pre-approval of a claim, to determine whether it has subject matter jurisdiction over that claim in the first instance.  Matter of Highland, 48 F.4th at 439 (citing Villegas, 788 F.3d at 158–59; Carroll v. Abide, 788

---

[1] Core, for all practical purposes, is a debtor in possession entitled to the rights of a trustee.  See Matter of Highland, 48 F.4th at 439 n.17.

F.3d 502, 506–07 (5th Cir. 2015) (noting <u>Villegas</u> "rejected an argument that the <u>Barton</u> doctrine does not apply when the bankruptcy court lacked jurisdiction")).

Upon careful consideration of the matters raised by the parties in this case and given its procedural posture, the record, and the applicable law and rules of Court, this Court has determined that the most efficient course of action for the administration of justice, in general, and this case, in particular, is to refer the case to the bankruptcy judge for determination in the first instance of the issues raised by the motion to dismiss. See <u>In re Burch</u>, 835 F. App'x 741, 748 (5th Cir. 2021) ("A bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders.'") (quoting <u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137, 151 (2009)). The determination of these threshold issues, as raised by the motion to dismiss, are left to the bankruptcy judge, who is well-equipped to address such matters (notwithstanding this Court's preliminary observations) given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function. See, e.g., <u>In re Highland Cap. Mgmt., L.P.</u>, 48 F.4th 419, 439 (5th Cir. 2022) (discussing and applying <u>Barton v. Barbour</u>, 104 U.S. 126 (1881)), <u>petitions for cert. filed</u>, No. 22-631 (U.S. Jan. 9. 2023), and No. 22-669 (U.S. Jan. 20, 2023); <u>Villegas v. Schmidt</u>, 788 F.3d 156, 159 (5th Cir. 2015).

As the <u>Highland Capital</u> court described its holding in <u>Villegas</u>, "we left to the bankruptcy court, faced with pre-approval of a claim, to determine whether it had subject matter jurisdiction over that claim in the first instance," meaning that this Court (like the Fifth Circuit in <u>Highland Capital</u>) "need not evaluate whether the bankruptcy court would have jurisdiction under every conceivable claim falling under the widest interpretation of the gatekeeper provision" but can "leave that to the bankruptcy court in the first instance." <u>Highland Cap.</u>, 48 F.4th at 439. This manner of proceeding is both sound, in that it achieves efficiency in the administration of justice, and necessary, in light of the bankruptcy court's special interest.

(Dkt. # 105 at 12–14.)

Accordingly, the Court declines to reconsider its Order referring "the current matters to the bankruptcy court for all purposes, including, but not limited to, consideration of the gatekeeping issues in this case and in light of the Plan's Anti-Suit Injunction."  (Id. at 15.)

CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiffs' Motion for Reconsideration.  (Dkt. # 108.)  This case remains administratively closed.

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, May 9, 2025.

_____
David Alan Ezra
Senior United States District Judge