**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING,<br><br>Defendants. | Case No. 1:22-CV-1191-DAE<br><br>CLASS ACTION |

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement, dated September 14, 2026 ("Stipulation"), is entered into between Lead Plaintiff Morgan Hoffman and named plaintiffs Evan Achee, William J. Emanuel, Garrett Downing, and Tin Doan Huynh (collectively, "Plaintiffs"), on behalf of themselves and each of the Settlement Class Members, and Defendants Michael Levitt, Denise Sterling, Darin Feinstein, Jarvis Hollingsworth, Matt Minnis, Stacie Olivares, Kneeland Youngblood, Patrick C. Eilers, Theodore J. Brombach, Paul Gaynor, Paul Dabbar, Colleen Sullivan, and Scott Widham (collectively, "Defendants" and with Plaintiffs, the "Parties"), by and through their respective counsel of record in this Action. This Stipulation is intended to fully, finally, and forever resolve, discharge, and settle all claims asserted in this Action against Defendants, subject to the approval of the United States District Court for the Western District of Texas (the "Court") and the terms and conditions as set forth herein.[1]

[1] All capitalized terms not otherwise defined shall have the meaning ascribed to them in § II.B herein.

## I. THE LITIGATION

This Action is a putative class action alleging claims under the federal securities laws. For purposes of this Settlement only, the Settlement Class is defined in Section II.B herein, and the Parties intend that the provisions herein concerning certification of the Settlement Class shall have no effect whatsoever in the event that the Settlement does not become Final.

### A. Procedural History of the Litigation

This Action began on November 14, 2022, when Mei Pang filed a putative class action complaint against Core Scientific, Inc. ("Core"), Defendants Levitt and Sterling, and Michael Trzupek, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Dkt. No. 1.

On December 21, 2022, Core filed a notice of suggestion of bankruptcy, Dkt. No. 14, after it filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States District Court for the Southern District of Texas ("Bankruptcy Court"): *In re Core Scientific, Inc.*, No. 22-90341 (S.D. Tex. Bankr.) ("Bankruptcy Action"). Pang then voluntarily dismissed Core as a defendant, without prejudice. Dkt. No. 15.

On March 7, 2023, Judge Yeakel entered an order appointing Hoffman as Lead Plaintiff for the Action pursuant to the Private Securities Litigation Reform Act of 1995, and appointing the Rosen Law Firm, P.A. as Lead Counsel for the putative class. Dkt. No. 44. The Action was reassigned to this Court on April 27, 2023. Dkt. No. 61.

On May 5, 2023, Plaintiffs Hoffman, Achee, and Emanuel filed their first Amended Complaint ("FAC"), asserting claims under Sections 10(b), 14(a), and 20(a) of the Exchange Act, and Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") against Defendants, Trzupek, and Brian Neville. Dkt. No. 62. Defendants (including Trzupek and Neville) moved to

dismiss the FAC on June 20, 2023, Dkt. No. 65, and the motion was fully briefed by September 2023. Dkt. Nos. 67 (opposition) and 69 (reply).

On December 20, 2023, the Court dismissed Plaintiffs' claims except for certain claims under the Securities Act and Section 14 of the Exchange Act. Dkt. No. 73. Defendants then moved for reconsideration of the Court's order with respect to those surviving claims. Dkt. No. 75. The motion for reconsideration was fully briefed by January 2024. Dkt. Nos. 83 (opposition) and 84 (reply). On April 22, 2024, the Court granted the motion for reconsideration and dismissed Plaintiffs' remaining claims without prejudice. Dkt. No. 86.

On June 7, 2024, Plaintiffs filed their Second Amended Complaint ("SAC" or "Complaint"), alleging claims under Sections 10(b), 14(a), and 20(a) of the Exchange Act, and Sections 11 and 15 of the Securities Act against Defendants. Dkt. No. 89. Defendants filed a motion to dismiss the SAC, Dkt. No. 92, on the grounds that, among other things, certain third-party releases and injunctive provisions ("Third-Party Releases") in the plan of reorganization confirmed by the Bankruptcy Court in the Bankruptcy Action precluded Plaintiffs from filing the SAC in this Court. Defendants' motion was fully briefed in October 2024. Dkt. Nos. 95 (opposition) and 100 (reply).

On March 7, 2025, the Court denied Defendants' motion to dismiss the SAC without prejudice and referred this Action to the Bankruptcy Court. Dkt. No. 105. On April 2, 2025, Plaintiffs moved for reconsideration of the Court's referral. Dkt. No. 108. Plaintiffs' motion was fully briefed by April 28, 2025. Dkt. Nos. 111 (opposition) and 113 (reply). On May 9, 2025, the Court denied Plaintiffs' motion for reconsideration. Dkt. No. 114.

**B. Related Bankruptcy Proceedings**

On January 16, 2024, the Bankruptcy Court entered an order confirming the plan of reorganization proposed by Core and other related debtors in the Bankruptcy Action, overruling

the objections of Plaintiffs to the Third-Party Releases. *In re Core Scientific, Inc.*, No. 22-90341 (CML) (Dkt. No. 1749). The Third-Party Releases purported to release and enjoin all claims brought by Plaintiffs and the putative class against the non-debtor Defendants in this Action, subject to a release opt-out provision. Plaintiffs contend the Third-Party Releases constituted impermissible nonconsensual third-party releases.

Plaintiffs appealed the Bankruptcy Court's order to the U.S. District Court for the Southern District of Texas. *Hoffman v. Core Scientific, Inc.*, No. 4:24-cv-357 (S.D. Tex.) ("Bankruptcy Appeal") (Dkt. No. 1-1). The parties to the Bankruptcy Appeal fully briefed the appeal by July 1, 2024. Bankruptcy Appeal, Dkt. Nos. 17, 20, and 23.

On March 12, 2025, the Court in the Bankruptcy Appeal dismissed the appeal as moot in light of this Court's referral of this Action to the Bankruptcy Court. Bankruptcy Appeal, Dkt. No. 34. Plaintiffs moved for reconsideration of that dismissal, which was denied on March 24, 2026. Bankruptcy Appeal, Dkt. No. 44. On April 14, 2026, Plaintiffs appealed that decision to the Fifth Circuit of the U.S. Court of Appeals. *Hoffman v. Core Scientific, Inc.*, No. 26-20179 (5th Cir.) (Dkt. No. 1-1).

### C. Settlement Negotiations

Over the course of the litigation, the parties have had multiple settlement discussions. Most recently, in May 2026, the parties re-started settlement discussions. On June 23, 2026, after extensive negotiations, Defendants and Plaintiffs ultimately agreed to settle this Action for a cash payment of one million five hundred thousand dollars (US$1,500,000.00).

After substantial further negotiations, the Parties' agreement in principle to settle the Action was memorialized in this Stipulation. This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Parties. Upon execution, the Stipulation shall supersede and replace all prior written agreements between the Parties regarding the settlement of

this Action.

**D. Plaintiffs' Assessment of the Claims and Benefits of Settlement**

Although Plaintiffs believe that the claims asserted in the Complaint have merit, Plaintiffs and Lead Counsel recognize the substantial risks that the Action would not survive Defendants' motion to dismiss the SAC, or that they would not prevail on their challenges to the Bankruptcy Court's order and Third-Party Releases, which stand to eliminate the claims of Plaintiffs and the Settlement Class. Plaintiffs and Lead Counsel are also mindful of challenges Defendants may raise at class certification, inherent problems of proof, possible defenses to the violations asserted in the litigation, and possible limitations on damages. Based upon their investigation and prosecution of the case, Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Plaintiffs and the other members of the Settlement Class, and in their best interests. Based on Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, Plaintiffs have agreed to settle and release the claims that were asserted or could have been asserted in the Action pursuant to the terms and provisions of this Stipulation, after considering, among other things: (a) the substantial financial benefit that Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

**E. Defendants' Denials of Wrongdoing and Liability**

Defendants have denied, and continue to deny, *inter alia*, that they engaged in any wrongdoing of any kind, including, without limitation, that they committed any act or omission giving rise to any liability or violation of the law. Specifically, Defendants have denied, and continue to deny, each and all of the claims and contentions alleged in this Action, along with all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in this Action. Defendants have denied, and

continue to deny, that they violated or breached any law, regulation, or duty owed to Plaintiffs or the Settlement Class, failed to disclose any material information to investors, acted in any deceitful manner, that their public statements were false or misleading, or that Plaintiffs and the Settlement Class suffered any damages or were harmed by the conduct alleged in the Action. Defendants have asserted, and continue to assert, that their conduct was at all times proper and in compliance with all applicable provisions of law, and that the claims asserted against Defendants are without merit. In addition, Defendants maintain that they have meritorious defenses to all of the claims alleged in the Action.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall be construed as, deemed to be evidence of, or constitute an admission or finding of, any violation, fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted in this Action. Defendants are entering into this Stipulation solely to eliminate the burden and expense of further litigation. Defendants have concluded that it is desirable and beneficial that the Action be terminated in the manner and upon the terms and conditions set forth in this Stipulation.

## II. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### A. Introduction

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (individually and on behalf of the Settlement Class) and Defendants, by and through their respective undersigned counsel or attorneys of record and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Parties, upon and subject to the terms and conditions of this Stipulation.

**B. Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.0 "Action" means the case captioned *Pang v. Levitt, et al.,* Case No. 1:22-cv-1191-DAE, pending in the United States District Court for the Western District of Texas.

1.1 "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Claim Form in accordance with the requirements established by the Court and whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2 "Claimant" means a Settlement Class Member who submits a Claim Form in such form and manner, and within such time, as the Court shall prescribe.

1.3 "Claim Form" means the form attached hereto as Exhibit A-2, or in such form as may be approved in writing by the Parties and the Court, that an Authorized Claimant or Settlement Class Member must complete and submit should that individual seek to share in a distribution of the Net Settlement Fund.

1.4 "Claims" means any and all manner of claims, demands, rights, actions, potential actions, causes of action, liabilities, duties, damages, losses, diminutions in value, obligations, agreements, suits, fees, attorneys' fees, expert or consulting fees, debts, expenses, costs, sanctions, judgments, decrees, matters, issues and/or controversies of any kind or nature whatsoever, whether known or unknown, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, or heretofore or previously existed, or may hereafter exist (including, but not limited to, any claims arising under federal, state, or foreign law, common law, bankruptcy law, statute, rule, or regulation relating to alleged fraud, breach of any duty, negligence, fraudulent conveyance, avoidance, violations of the Securities Act of 1933, as amended and rules promulgated thereunder, violations of the Securities Exchange Act of 1934, as

amended and rules promulgated thereunder, violations of other federal securities laws, or otherwise), whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, regulatory, governmental, or of any other type or in any other capacity.

1.5 "Claims Administrator" means, subject to approval of the Court, Strategic Claims Services ("SCS"), the firm retained by Lead Counsel to administer the Settlement, including emailing notice to Settlement Class Members, arranging for publication of notice in the form of Exhibits A-1, A-3, and A-4 hereto, processing claims, and performing such other administrative functions as are required under this Stipulation.

1.6 "Court" means the United States District Court for the Western District of Texas.

1.7 "Defendants" means, collectively, Michael Levitt, Denise Sterling, Darin Feinstein, Jarvis Hollingsworth, Matt Minnis, Stacie Olivares, Kneeland Youngblood, Patrick C. Eilers, Theodore J. Brombach, Paul Gaynor, Paul Dabbar, Colleen Sullivan, and Scott Widham.

1.8 "Defense Counsel" means Quinn Emanuel Urquhart & Sullivan, LLP.

1.9 "Defendants' Releasees" means: (A) Power & Digital Infrastructure Acquisition Corp. ("XPDI") and Core, their past, present, and future, direct or indirect, parent entities, associates, affiliates, and subsidiaries, each and all of their respective past, present, and future directors, officers, partners, stockholders, predecessors, successors, and employees, and in their capacity as such, each and all of their underwriters, advisors, attorneys, auditors, consultants, trustees, insurers, co-insurers, reinsurers, representatives, and assigns; (B) Defendants and their respective past, present, and future spouses, parents, siblings, children, grandparents, and grandchildren, the past, present, and future spouses of their respective parents, siblings and children, and the past, present, and future parents and siblings of their respective spouses, including step and adoptive relationships; (C) any and all persons, firms, trusts, corporations, and other

entities in which any of the Defendants or any past, present, and future directors or officers of Core or XPDI has a financial interest or was a sponsor, founder, settler, or creator of the entity, and, in their capacity as such, any and all officers, directors, employees, trustees, beneficiaries, settlers, creators, attorneys, consultants, agents, or representatives of any such person, firm, trust, corporation or other entity; and (D) in their capacity as such, the legal representatives, heirs, executors, administrators, predecessors, successors, predecessors-in-interest, successors-in-interest, and assigns of any of the foregoing.

1.10 "Effective Date" means the first date by which all of the events and conditions specified in ¶ 8.0 of this Stipulation have occurred and/or been met.

1.11 "Escrow Account" means an interest-bearing escrow account established by the Escrow Agent. The Escrow Account shall be managed by the Escrow Agent, subject to the Court's supervisory authority, for the benefit of Plaintiffs and the Settlement Class in accordance with the terms of this Stipulation and any order of the Court.

1.12 "Escrow Agent" means Strategic Claims Services or its appointed agents. The Escrow Agent shall perform the duties as set forth in this Stipulation and any order of the Court.

1.13 "Fee and Expense Application" shall have the definition as set forth herein in § II.H, *infra*.

1.14 "Fee and Expense Award" shall have the definition as set forth herein in § II.H, *infra*.

1.15 "Final," with respect to this Settlement, means that: (i) the Court has entered an order finally approving the Settlement in all material respects including, but not limited to, certifying the Settlement Class defined herein for settlement purposes only, approving the scope of the Releases set forth herein, and entering the Judgment; and (ii) the time to appeal has expired

or the Judgment has been affirmed in all respects in any appeal or review and is no longer subject to further appeal or review. However, the Settlement and the degree to which it is Final are expressly not conditioned upon the Court's approval of a Fee and Expense Award to Lead Counsel or compensatory award to Plaintiffs or any appeals solely related thereto.

1.16 "Immediate Family Members" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.17 "Judgment" means the Order and Final Judgment to be entered by the Court approving the Settlement, certifying the Settlement Class for settlement purposes only, approving the release of the Released Claims, and dismissing the Released Claims with prejudice and without costs to any party, substantially in the form attached hereto as Exhibit B or in similar form adopted by the Court.

1.18 "Lead Counsel" means The Rosen Law Firm, P.A.

1.19 "Merger" means the merger of Core and XPDI pursuant to the Registration Statement, as described in ¶¶ 87-91 of the SAC.

1.20 "Net Settlement Fund" means the Settlement Fund less any Taxes and Tax Expenses, any Fee and Expense Award to Lead Counsel, any compensatory awards to Plaintiffs approved by the Court, and Notice and Administration Costs.

1.21 "Notice" means collectively, the: (i) Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"); (ii) the Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice"); and (iii) the Postcard Notice, which are to be made available to Settlement Class Members substantially in the forms attached hereto as Exhibits A-1, A-3, and

A-4 on the Claims Administrator's website, emailed or mailed to potential Settlement Class Members, and/or published on newswires.

1.22 "Notice and Administration Costs" means the costs and expenses reasonably and actually incurred by, and the reasonable fees charged by, the Claims Administrator in connection with notice dissemination and claims administration upon presentation of customary invoices therefor, which invoices have been approved by Lead Counsel, including, without limitation: the cost of identifying and locating members of the Settlement Class; the cost of emailing Notice; publishing the Summary Notice (such amounts shall include, without limitation, the actual costs of publication in national newswires), printing and mailing the Postcard Notice, and providing reimbursement to nominee owners for forwarding notice to their beneficial owners; soliciting claims from Settlement Class Members; assisting with the filing of claims; processing Claim Forms; administering and distributing the Net Settlement Fund to Authorized Claimants; preparing returns and ensuring all taxes due on the Net Settlement Fund are paid; and paying escrow fees and costs, if any.

1.23 "Parties" means Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants.

1.24 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and for each of them their respective heirs, successors-in-interest, or assigns.

1.25 "Plaintiffs' Releasees" means Plaintiffs, all other plaintiffs in the Action, their respective attorneys, including Plaintiffs' Counsel, and all other members of the Settlement Class, and each of their respective parent entities, associates, affiliates, subsidiaries, predecessors,

successors, assigns, attorneys, current and former officers and directors, employees, Immediate Family Members, heirs, representatives, administrators, executors, devisees, legatees, and estates.

1.26 "Plaintiffs' Counsel" means Lead Counsel, Condon Tobin Sladek Thornton Nerenberg PLLC, and Schall, Brown & Schwartz LLP, who, at the direction and under the supervision of Lead Counsel, performed services on behalf of the Settlement Class in the Action.

1.27 "Plan of Allocation" means a plan or formula for allocating the Net Settlement Fund to Authorized Claimants, to be designed by Lead Counsel in its sole discretion, subject to the approval of the Court. Any Plan of Allocation is not part of this Stipulation, and Defendants shall have no responsibility or liability with respect thereto.

1.28 "Postcard Notice" means the postcard notice to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit A-4, and which shall contain information relating to, among other things, how to access the Long Notice and Stipulation and how to file a Claim Form.

1.29 "Preliminary Approval Order" means an order by the Court, substantially in the form attached hereto as Exhibit A, preliminarily certifying the Settlement Class for settlement purposes only, preliminarily approving the Settlement, scheduling a Settlement Hearing, and authorizing Notice thereof to the Settlement Class and related matters.

1.30 "Registration Statement" means the Registration Statement that Core filed with the SEC on Form S-4, to register the post-Merger shares of Core common stock, which Registration Statement was declared effective on December 30, 2021.

1.31 "Released Claims" means Released Plaintiffs' Claims and Released Defendants' Claims.

1.32 "Released Defendants' Claims" means any and all Claims and causes of action of every nature and description, whether known or Unknown Claims, whether arising under federal, state, common, or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in Action. Released Defendants' Claims do not include any derivative claims, any claims relating to the enforcement of the Settlement, or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

1.33 "Released Plaintiffs' Claims" means any and all Claims, including Unknown Claims, that have been, could have been, or in the future can or might be asserted in any federal, state, or foreign court, tribunal, forum, or proceeding by or on behalf of any of the Plaintiffs' Releasees against any one or more of the Defendants' Releasees, regardless of whether any such Defendants' Releasee was named, served with process, or appeared in the Action, which directly or indirectly arise out of or relate to (i) any of the allegations, acts, failures to act, transactions, facts, events, matters, occurrences, representations, statements, or omissions that were involved, set forth, alleged, or referred to in any way in the Action, or which could have been alleged in the Action or in any other action or forum, and (ii) the purchase, acquisition, sale, or disposition of Core's publicly traded securities during the Settlement Class Period, or the holding of XPDI common stock at the close of business on December 7, 2021. Released Plaintiffs' Claims do not include: (i) any claims to enforce the terms of the Settlement; and (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

1.34 "Releasees" means Plaintiffs' Releasees and Defendants' Releasees.

1.35 "Settlement" means the settlement between Plaintiffs and Defendants on the terms and conditions set forth in this Stipulation.

1.36 "Settlement Amount" means the Settlement consideration for a full and complete settlement of all Released Claims being paid or being caused to be paid by Defendants in the amount of one million five hundred thousand U.S. dollars (US$1,500,000).

1.37 "Settlement Class" means all persons and/or entities who (a) purchased or acquired the publicly traded securities of Core or XPDI, or purchased call options or sold put options on Core or XPDI common stock during the Settlement Class Period; or (b) held the common stock of XPDI at the close of business on December 7, 2021 and were eligible to vote on the Merger at the special meeting of XPDI shareholders held on January 19, 2022. Excluded from the Settlement Class are (a) all present and former officers and directors of Core or XPDI, all Defendants, and at all relevant times, such excluded persons' affiliates, subsidiaries, Immediate Family Members and their legal representatives, heirs, successors, or assigns; and (b) any entity that any Defendant, or any excluded person under (a), controlled or has or had a majority ownership interest at any time. Also excluded from the Settlement Class are those Persons who submit a valid and timely request for exclusion in accordance with the Preliminary Approval Order.

1.38 "Settlement Class Member(s)" means each Person or entity who or that is a member of the Settlement Class.

1.39 "Settlement Class Period" means the period from January 3, 2022 through December 20, 2022, both dates inclusive.

1.40 "Settlement Distribution Order" means an Order approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted by potential Settlement Class Members; approving of any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator; and directing the distribution of the Net Settlement Fund to Authorized Claimants.

1.41 "Settlement Fund" means the Settlement Amount, plus any interest earned thereon, before any of the expenditures authorized herein, the payment of which will reduce it as described in the Net Settlement Fund definition, *supra*.

1.42 "Settlement Hearing" means a hearing to be held before the Court to determine whether the proposed Settlement of the Action on the terms and conditions provided for in this Stipulation is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; to determine whether a Judgment as provided in the Stipulation should be entered; to determine whether the proposed Plan of Allocation should be approved; to determine any amount of fees, costs, and expenses that should be awarded to Lead Counsel for their efforts and any compensatory awards that should be awarded to Plaintiffs for their service to the Settlement Class; to hear any objections by Settlement Class Members to the Stipulation, Plan of Allocation, or any award of fees and expenses to Lead Counsel or compensatory awards to Plaintiffs; and to consider such other matters as the Court may deem appropriate.

1.43 "Taxes" and "Tax Expenses" means: (i) all federal, state, and/or local taxes of any kind on any income earned by the Settlement Fund, together with any interest, penalties, or additions to tax imposed with respect to them; and (ii) the reasonable and necessary costs and expenses incurred in connection with the implementation of ¶ 2.8 of this Stipulation, including, without limitation, the reasonable and necessary costs and expenses of tax attorneys and accountants.

1.44 "Unknown Claims" means any Released Claims which Plaintiffs, any other Settlement Class Member, or each of the Defendants or any of the other Releasees, does not know or suspect to exist in their or its favor at the time of the release which, if known by them or it, might have affected their or its settlement with and release of any of the other Releasees, or might

have affected their or its decision not to opt-out or object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, the Parties shall expressly waive, and each of the other Settlement Class Members and Releasees shall be deemed to have waived, and by operation of the final Judgment shall have waived, the provisions, rights, and benefits of California Civil Code § 1542, and any law of any state or territory of the United States which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Plaintiffs, any other Settlement Class Member, Defendants, and the Releasees may hereafter discover facts in addition to or different from those which they or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Parties stipulate and agree that, upon the Effective Date of the Settlement, the Parties shall expressly waive, and each of the other Settlement Class Members and Releasees shall be deemed to have waived, and by operation of the final Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of fiduciary duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and each of the other Settlement Class Members and each of the other Releasees shall be deemed by operation of the final Judgment to have acknowledged, that the

foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

## C. The Settlement

### a. Settlement Amount

2.0 In consideration of the full and final settlement of Released Plaintiffs' Claims, and subject to the terms of this Stipulation, Defendants shall pay or cause to be paid the Settlement Amount to the Escrow Agent for deposit into the Settlement Fund within 30 days after the later of (i) preliminary approval of the Settlement by the Court; or (ii) Lead Counsel providing Defense Counsel with complete particulars for payment by wire transfer or check, as well as a form W-9.

2.1 Defendants' sole financial obligation to Plaintiffs, the Settlement Class Members, and Lead Counsel under this Stipulation is set forth in ¶ 2.0 hereto, and under no circumstances shall Defendants have any obligation to make any other or greater payment to them for any purpose pursuant to the Settlement. All payments made to Authorized Claimants pursuant to the Plan of Allocation as approved by the Court, any Fee and Expense Award to Lead Counsel entered by the Court, and any compensatory awards to Plaintiffs approved by the Court, and all administrative and other approved expenses of the Settlement, including Taxes and Tax Expenses, shall be paid from the Settlement Fund.

### b. The Escrow Agent

2.2 At the written direction of Lead Counsel, the Settlement Fund shall be invested exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation or (b) secured by instruments backed by the full faith and credit of the United States Government. At Lead Counsel's direction, the Escrow Agent shall reinvest the

proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants, Defense Counsel, and Defendants' Releasees shall not bear any responsibility whatsoever for, or liability related to, the investment of the Settlement Fund.

**c. Handling and Disbursement of Funds by the Escrow Agent**

2.3 Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Settlement Class as are consistent with the terms of this Stipulation. The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Defense Counsel and Lead Counsel. Defendants, Defense Counsel, and Defendants' Releasees have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Defendants, Defense Counsel, and Defendants' Releasees harmless for claims of any nature whatsoever based on or related to any transaction executed by the Escrow Agent.

2.4 No monies will be disbursed from the Settlement Fund until after the Effective Date except as provided in ¶ 2.6, herein, regarding Notice and Administration Costs, ¶ 2.8, herein, regarding Taxes, and ¶ 7.2, herein, regarding Attorneys' Fees and Expenses.

2.5 All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned to the parties who deposited such funds pursuant to this Stipulation and/or further order of the Court. Upon the Effective Date and thereafter, there shall be no reversion whatsoever of any of the Settlement Amount to any of Defendants or Defendants' Releasees.

**d. Notice and Administration Costs**

2.6 At any time after entry of the Preliminary Approval Order, Lead Counsel may, without further approval from the Court or Defendants, disburse up to $200,000 from the Settlement Fund to pay reasonable and necessary Notice and Administration Costs prior to the Effective Date. After the Effective Date, additional amounts may be transferred from the Settlement Fund for Lead Counsel to pay any additional, reasonable, and necessary additional Notice and Administration Costs at Lead Counsel's direction without further order of the Court.

2.7 Lead Plaintiff, Plaintiffs' Counsel, Defendants, Defense Counsel, and their respective Releasees shall not bear any liability for Notice and Administration Costs.

**e. Taxes**

2.8 The following provisions shall govern the treatment of Taxes and Tax Expenses:

(a) The Escrow Agent will, to the extent possible, treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election

described in ¶ 2.8(a)) shall be consistent with this ¶ 2.8 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties on the income earned) shall be paid out of the Settlement Fund.

(c) All Taxes and Tax Expenses relating to the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

(d) Taxes and Tax Expenses shall be treated as and considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court but shall not be considered or treated as part of the Notice and Administration Costs.

(e) Defendants, Defense Counsel, Plaintiffs, Settlement Class Members, Plaintiffs' Counsel, Defendants' Releasees, and Plaintiffs' Releasees shall have no liability or responsibility whatsoever for Taxes and Tax Expenses. The Escrow Agent shall indemnify and hold each of them harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).

(f) The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay expenses relating to the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). Neither Defendants, Defense Counsel, Plaintiffs, Settlement Class Members, Plaintiffs' Counsel, Defendants' Releasees, nor Plaintiffs' Releasees are responsible therefor, nor shall they have any liability with respect thereto, whatsoever.

(g) The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

**f. Termination of Settlement**

2.9 Plaintiffs, provided they unanimously agree, and Defendants shall each have the right to terminate the Settlement and this Stipulation, notwithstanding preliminary approval that may be provided by the Court, by providing written notice of their election to do so to Lead Counsel or Defense Counsel within 30 business days of: (a) the Court's entry of an order declining to enter the proposed Preliminary Approval Order in any material respect without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part thereof without leave to amend and resubmit; (c) the Court's declining to enter the Judgment in any material respect without leave to amend and resubmit; or (d) the date upon which the Judgment is modified or reversed in any material respect on appeal. Any decision with respect to any Plan of Allocation, Fee and Expense Award, or compensatory awards to Plaintiffs shall not be considered material to this Stipulation and shall not be grounds for termination.

2.10 If the Settlement Amount is not paid into the Escrow Account in accordance with ¶ 2.0 of this Stipulation, Plaintiffs, on behalf of the Settlement Class, shall have the right to: (a) terminate the Settlement; or (b) apply to the Court to enforce the terms of the Settlement and this Stipulation, but only if (i) Lead Counsel has first notified Defense Counsel in writing of Plaintiffs' intent to terminate or pursue a judgment pursuant to this paragraph, and (ii) the entire Settlement Amount is not deposited in the Escrow Account within five business days after Lead Counsel has provided such written notice.

2.11 If, before the Settlement Hearing, any persons who otherwise would be members of the Settlement Class have timely filed for exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the notice given pursuant thereto (or as otherwise accepted as valid by the Court), and such persons in the aggregate have purchased or acquired Core securities in an amount greater than the sum specified in a separate Supplemental Agreement between the Parties, Defendants shall have the option to terminate the Settlement and this Stipulation in accordance with the procedures set forth in the Supplemental Agreement. The Supplemental Agreement shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than as required by law, via the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises among the Parties concerning its interpretation or application. If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Parties will undertake to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal.

2.12 If: (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; or (ii) Plaintiffs exercise their right to terminate this Settlement as provided in this Stipulation, then:

(a) The Settlement and the relevant portions of this Stipulation shall be canceled and terminated without prejudice, and this Stipulation shall be null and void and shall have no further force or effect except for ¶¶ 2.9, 2.10, 2.11, 2.12, 8.2, 8.3, 8.4, 10.1, 10.16, herein;

(b) The Settlement Amount, including any interest accrued thereon, less expenses actually incurred or due and owing for the Notice and Administration Costs pursuant to ¶ 2.6 above and less expenses actually incurred or due and owing for Taxes and Tax Expenses pursuant to

¶ 2.8 above, shall be refunded by check or wire transfer within 15 days of written notification of termination by Defense Counsel or Lead Counsel to the Escrow Agent. Such payments shall be in accordance with written instructions provided by Defense Counsel; and

(c) The Parties shall revert, without prejudice, to their respective positions in the Action as of June 23, 2026, and shall retain all of their respective claims and defenses.

**D. Class Certification**

3.0 For the sole purpose of this Settlement and for no other purpose, the Parties hereby stipulate, agree, and consent to: (i) certification of the Action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (ii) appointment of Plaintiffs as class representatives for the Settlement Class; and (iii) appointment of Lead Counsel as class counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(g).

3.1 The preliminary certification of the Settlement Class shall be binding only with respect to the Settlement and only if the Judgment becomes Final.

3.2 The event that the Judgment is vacated or does not become Final or effective for any reason, this Stipulation as to certification of the Action becomes null and void.

3.3 This Stipulation or any other settlement-related statement may not be cited regarding class certification, or in support of an argument for certifying a class for any purpose related to this or any other proceeding; and all Parties reserve all rights on all issues, including all objections, arguments, and defenses with respect to class certification, and reserve all rights to contest class certification.

**E. Preliminary Approval Order, Notice, and the Settlement Hearing**

4.0 As soon as practicable after execution of the Stipulation, Plaintiffs shall move for preliminary approval of the Settlement and certification of the Settlement Class for settlement purposes only. Concurrently with the motion for preliminary approval, Plaintiffs shall apply to

the Court for entry of the Preliminary Approval Order (substantially in the form of Exhibit A), or in such other form as may be approved in writing by all the Parties and entered by the Court, *inter alia*: (1) granting preliminary approval of the Settlement; (2) preliminarily certifying the Settlement Class for settlement purposes only; and (3) approving for distribution the Notice to the Settlement Class substantially in the form of Exhibits A-1, A-3, and A-4 attached hereto, along with publication of a Claim Form substantially in the form of Exhibit A-2; and (4) scheduling the Settlement Hearing.

4.1 The Notice shall describe the Settlement; the proposed Plan of Allocation; the anticipated requests for a Fee and Expense Award for Lead Counsel and compensatory awards to Plaintiffs; the date of the Settlement Hearing; Settlement Class Members' rights to opt out, object, or otherwise be heard with regard to these matters; and Settlement Class Members' opportunity to file claims upon the Settlement Fund. The Stipulation, Notice, Claim Form, and all papers submitted in support thereof shall be posted on a website to be maintained by the Claims Administrator.

4.2 To assist in dissemination of the Notice, within 10 days after the Court enters a Preliminary Approval Order, Defendants will use reasonable efforts to provide, or cause to be provided, to Lead Counsel and the Claims Administrator, at no cost to Plaintiffs, Lead Counsel, the Claims Administrator, or the Settlement Fund, in electronic format such as PDF or Excel, any shareholder lists then in the possession or control of Core or in the possession or control of its current or former transfer agent(s), consisting of names, addresses, and, if available, email addresses, listing purchasers of the publicly traded securities of Core or XPDI, or purchasers of call options or sellers of put options on Core or XPDI common stock, during the Settlement Class Period, and holders of XPDI common stock at the close of business on December 7, 2021 who

were eligible to vote on the Merger at the special meeting of XPDI shareholders held on January 19, 2022. The Parties acknowledge that any information Defendants provide to Lead Counsel or the Claims Administrator pursuant to this paragraph shall be treated as confidential and will be used by Lead Counsel and/or the Claims Administrator solely to deliver the Notice and/or implement the Settlement, including the Plan of Allocation.

4.3 No later than 10 days following the filing of this Stipulation with the Court, Defendants shall serve, or cause to be served, the notice required under the Class Action Fairness Act of 2005 ("CAFA") pursuant to § 1715 of Title 28 of the United States Code. Within 14 days of entry of the Preliminary Approval Order, Defendants will serve Lead Counsel and file with the Court an affidavit or declaration regarding compliance with the CAFA notice requirements. Defendants will be responsible for all costs and expenses related to the issuance of CAFA notice.

**F. Releases**

5.0 The satisfaction of obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as to Plaintiffs, Defendants, Plaintiffs' Releasees, Defendants' Releasees, and any and all Released Claims.

5.1 Upon the Effective Date of this Settlement, Plaintiffs, all Settlement Class Members (whether or not they submit a Claim Form or share in the Net Settlement Fund), and Plaintiffs' Releasees, on behalf of themselves, anyone claiming through or on behalf of any of them, their personal representatives, heirs, executors, administrators, and assigns, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and every one of Released Plaintiffs' Claims against Defendants and Defendants' Releasees, and shall be forever barred and enjoined from commencing, instituting, assisting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity,

arbitration tribunal, administrative forum, or any other forum, asserting any of Released Plaintiffs' Claims against Defendants and Defendants' Releasees.

5.2 Upon the Effective Date of this Settlement, and as a material condition of the dismissal with prejudice of the Action, Defendants, on behalf of themselves, their personal representatives, heirs, executors, administrators, successors, and assigns; any of their current or former officers and directors; and all of Defendants' Releasees shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and every one of the Released Defendants' Claims against Plaintiffs' Releasees, and shall be forever enjoined from prosecuting each and every one of the Released Defendants' Claims against Plaintiffs' Releasees.

5.3 Upon the Effective Date, to the extent allowed by law, this Stipulation shall operate conclusively as a waiver, release, estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of Defendants' Releasees with respect to any Released Plaintiffs' Claims, or brought by a Defendant against any of the Plaintiffs' Releasees with respect to any Released Defendants' Claim.

**G. Administration and Calculation of Claims, Plan of Allocation, and Distribution of the Net Settlement Fund**

6.0 The Claims Administrator shall receive Claim Forms submitted by Settlement Class Members and determine first whether the claim submitted is valid, in whole or part, and second, authorize distribution of each Authorized Claimant's *pro rata* share of the Net Settlement Fund to Authorized Claimants. The distribution checks will be drawn upon the Net Settlement Fund.

6.1 Defendants, Defense Counsel, and Defendants' Releasees shall have no involvement in reviewing or challenging claims and shall have no responsibility or liability

whatsoever for the allocation of the Net Settlement Fund among the Settlement Class Members or the allocation of any Fee and Expense Award to Lead Counsel or compensatory awards to Plaintiffs. Any such awards shall be paid solely from the Settlement Fund.

6.2 The Settlement Fund shall be applied as follows: to pay Taxes and Tax Expenses; to pay Notice and Administration Costs; to pay any Fee and Expense Award to Lead Counsel to the extent allowed by the Court; to pay any compensatory awards to Plaintiffs to the extent allowed by the Court; and, upon Court approval, to distribute the Net Settlement Fund to the Authorized Claimants as allowed by this Stipulation and the Plan of Allocation.

6.3 After the Effective Date, Lead Counsel, on behalf of Plaintiffs, shall apply to the Court, on notice to Defendants, for the Settlement Distribution Order. The Net Settlement Fund shall be distributed to the Authorized Claimants, pursuant to the Settlement Distribution Order, only after the Effective Date and after (a) all claims have been processed, (b) all matters with respect to any Fee and Expense Application, any Fee and Expense Award, and any Settlement administration costs and expenses have been resolved by the Court and such resolution is Final, and (c) all costs of the Settlement administration have been paid. The Net Settlement Fund shall be distributed to Authorized Claimants subject to and in accordance with the following:

(i) Each Settlement Class Member claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Claim Form, substantially in the form of Exhibit A-2 hereto, supported by such documents as are designated therein, including proof of the transactions claimed and the losses incurred thereon, or such other documents or proof as the Claims Administrator, in its discretion, may deem acceptable. Copies of all requests for exclusion received shall be sent to Defense Counsel and to Lead Counsel within a reasonable time of receipt by the Claims Administrator and in any event not less than five days of receipt thereof.

Copies of all written retractions of requests for exclusion received shall be sent to Defense Counsel and to Lead Counsel within a reasonable time of receipt by the Claims Administrator and in any event not less than three days prior to the Settlement Hearing.

(ii) Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Claim Form, or who file a Claim Form that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and Settlement, but will in all other respects be subject to and bound by the provisions of this Stipulation, the Releases, and the Judgment and will be barred and enjoined from bringing any action against Defendants' Releasees concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion to accept late-submitted claims for processing by the Claims Administrator but shall not incur any liability for declining to do so.

6.4 Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity of the amount of the Claimant's claim. No discovery shall be allowed of the Claimants, whether on the merits of the Action or Settlement or otherwise, in conjunction with the processing of the Claim Forms.

6.5 Payment pursuant to this Stipulation shall be deemed final and conclusive against all Claimants. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, Defendants, Defense Counsel, the Releasees, the Claims Administrator, the Escrow Agent or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

6.6 The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation designed by Lead Counsel, to be described in the Notice and approved by the Court. If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund six months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants who would receive at least a $10.00 payment; (ii) second, to pay any additional Notice and Administration Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. If any funds shall remain in the Net Settlement Fund six months after such second distribution, or if no second distribution is made, then such balance shall be contributed to a non-profit organization(s) chosen by Lead Counsel.

6.7 This is not a claims-made settlement. If all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to Defendants or any of Defendants' Releasees.

6.8 Defendants, Defense Counsel, and Defendants' Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission or determination of Lead Counsel, the Escrow Agent, or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or

otherwise; (ii) the administration, management, investment, allocation, or distribution of the Settlement Fund; (iii) the Claims process; (iv) the Plan of Allocation; (v) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (vi) any losses suffered by, or fluctuations in the value of, the Settlement Fund; and (vii) the payment or withholding of any Taxes and Tax Expenses. No Person shall have any claim of any kind against Defendants, Defense Counsel, or Defendants' Releasees with respect to the matters set forth in ¶¶ 6.1-6.8 herein.

6.9 It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a necessary term of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to this Stipulation.

**H. Attorneys' Fees and Litigation Expenses**

7.0 Lead Counsel may apply to the Court for payments to Lead Counsel to be paid solely from and out of the Settlement Fund for an award of attorneys' fees incurred in prosecuting the Action and reimbursement of actual costs and expenses directly related to Lead Counsel's representation in this Action, including without limitation the fees and expenses of experts, consultants, and investigators incurred in connection with prosecuting the Action ("Fee and Expense Application"). Additionally, Lead Counsel may make an application for any compensatory awards to Plaintiffs for their service to the Settlement Class ("Awards to Plaintiffs"). For the avoidance of doubt, the Awards to Plaintiffs will be paid solely from and out of the

Settlement Fund. Lead Counsel reserves the right to make additional applications for fees and expenses incurred, if necessary, which are to be paid solely out of the Settlement Fund.

7.1 No Fee and Expense Application is or will be the subject of any agreement between the Parties other than what is set forth in this Stipulation.

7.2 Any award of attorneys' fees, costs, and expenses approved by the Court ("Fee and Expense Award") shall be payable to Lead Counsel, solely from the Settlement Fund, within three business days upon entry of the Court's order finally approving the Settlement and awarding such fees, costs, and expenses, notwithstanding any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund if the Settlement is reduced or lowered as a result of any appeal and/or further proceedings on remand or successful collateral attack, and such order reducing or reversing the award has become Final.

7.3 If the Fee and Expense Award is reduced or reversed on appeal, Lead Counsel shall make all necessary refunds and repayments (including interest earned thereon at the same rate as would have been earned had those sums remained in the Escrow Account) into the Settlement Fund no later than 30 days after Lead Counsel's receipt from the Court of notice of any order that reverses or reduces any award of attorneys' fees or expenses, which shall be distributed by the Escrow Agent to the Settlement Class pursuant to the manner directed in the Final order.

7.4 Although both issues may be considered by the Court at the Settlement Hearing, any and all Fee and Expense Applications are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to

modify, terminate or cancel this Stipulation, or affect or delay the Effective Date, the finality of the Judgment approving this Stipulation, and the Settlement of the Action.

**I. Effect of Disapproval, Cancellation or Termination**

8.0 The Effective Date of the Stipulation shall be conditioned upon the occurrence of all of the following events:

(a) Entry of the Preliminary Approval Order by the Court, in accordance with § II.E above;

(b) The Settlement Amount has been paid into the Escrow Account (thereby creating the Settlement Fund);

(c) Defendants have not exercised their option to terminate the Stipulation pursuant to the Supplemental Agreement; and

(d) The Court has approved the Settlement as described herein, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final, or in the event that the Court enters an order of judgment not in all material respects in the form of the Judgment and none of the Parties elects to terminate this Settlement, the date that such alternative judgment becomes Final.

Any appeal or delay in (i) the approval of the Plan of Allocation, (ii) the consideration of any Fee and Expense Application, or (iii) the granting of any compensatory awards to Plaintiffs, shall not affect, alter, or delay the occurrence of the Effective Date.

8.1 Upon the occurrence of the Effective Date, any and all interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation. The Settlement Fund shall be distributed in accordance with ¶ 6.3 herein. If all of the conditions specified in ¶ 8.0 herein are not met, then this Stipulation shall

be canceled and terminated subject to ¶ 8.2 herein, unless Lead Counsel and Defense Counsel mutually agree in writing to proceed with the Settlement.

8.2 Unless otherwise ordered by the Court, in the event the Stipulation is terminated, or is canceled, or fails to become effective for any reason, no later than 15 days after written notification of such event is sent by Defense Counsel or Lead Counsel to the Escrow Agent, subject to the terms of ¶¶ 2.9 or 2.10 herein, the Settlement Amount (including accrued interest), less any expenses and any costs which have either been properly disbursed pursuant to ¶ 2.6 hereof, or are determined to be chargeable to the Settlement Fund or the notice and administration of the Settlement or any taxes or tax expenses due or owing pursuant to ¶¶ 2.6 and 2.8 hereof, shall be refunded by the Escrow Agent to the appropriate sources of the funds in proportion to their contribution to the Settlement Fund, plus accrued interest attributable to that amount, by check or wire transfer. Such payments shall be pursuant to written instructions from Defense Counsel.

8.3 In the event this Settlement is terminated as provided in ¶¶ 2.9 or 2.10 herein, then the terms and provisions of this Stipulation, with the exception of ¶¶ 2.9, 2.10, 2.11, 2.12, 8.2, 8.3, 8.4, 10.1, 10.16 herein, shall have no further force and effect and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

8.4 In the event this Settlement is terminated as provided in ¶¶ 2.9 or 2.10 herein, Plaintiffs, Settlement Class Members, Plaintiffs' Counsel, the Claims Administrator, and the Escrow Agent shall not have any obligation to repay any Notice and Administration Costs and

Taxes and Tax Expenses actually and properly disbursed from the Settlement Fund. In addition, any expenses already incurred and properly chargeable to Notice and Administration Costs and Taxes and Tax Expenses pursuant to this Stipulation at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of this Stipulation before the balance is refunded in accordance with ¶ 8.2 herein.

**J. Bankruptcy Court Provisions**

9.0 Prior to submitting the final Settlement to the Court for preliminary approval, the Parties will jointly seek an order from the Court to withdraw its referral of the Action to the U.S. Bankruptcy Court for the Southern District of Texas, for the purposes of, and subject to, the approval of this Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

9.1 Within five business days after the Effective Date, Plaintiffs will file a motion pursuant to Fifth Circuit Rule 42.1 dismissing with prejudice the appeal in *Hoffman v. Core Scientific, Inc.*, Case No. 26-20179 (5th Cir.), with the parties to that appeal to pay their own costs.

**K. No Admission of Wrongdoing; Miscellaneous Provisions**

10.0 Defendants deny any wrongdoing, liability, or violation of law or regulation whatsoever, and this Stipulation shall in no event be construed or deemed to be evidence of, or an admission or concession on the part of Defendants with respect to, any claim of any fault or liability or wrongdoing or damage or violation of law or regulation whatsoever, or any infirmity in any defenses that Defendants have asserted or could assert in the Action.

10.1 This Stipulation, whether or not consummated, and any proceedings taken pursuant to it, shall not be deemed to be, and may not be, argued to be offered or received:

(a) Against any of the Defendants or Defendants' Releasees as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Defendants or Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs in this Action or

the validity of any claim that has been or could have been asserted against any of the Defendants or Defendants' Releasees in this Action, or the deficiency of any defense that has been or could have been asserted in the Action, or of any wrongdoing or liability by any of the Defendants.

(b) Against any of the Defendants or Defendants' Releasees as evidence of, or construed as evidence of, any presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the Defendants or Defendants' Releasees that was alleged or could have been alleged in this Action.

(c) Against any of the Defendants, Plaintiffs, Settlement Class Members, or Plaintiffs' Releasees as evidence of, or construed as evidence of any presumption, concession, or admission by any of them with respect to any liability, negligence, fault, or wrongdoing as against any of the Defendants, Plaintiffs, Settlement Class Members, or Plaintiffs' Releasees in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation. Additionally, if this Stipulation is approved by the Court, Defendants, Plaintiffs, Settlement Class Members, and Plaintiffs' Releasees may refer to it to effectuate the liability protection granted them hereunder;

(d) Against any of the Defendants or Defendants' Releasees as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that the Settlement Amount represents an amount which could or would have been received after trial of the Action;

(e) Against Plaintiffs, Settlement Class Members, or Plaintiffs' Releasees as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that the claims asserted in the Action are without merit, or that any defenses asserted by Defendants have

any merit, or that damages recoverable in the Action would not have exceeded the Settlement Amount;

(f) Against Plaintiffs, Settlement Class Members, Lead Counsel, or Plaintiffs' Releasees as evidence of, or construed as evidence of, any bad faith, dilatory motive, or inadequate prosecution of the claims or the Action; and

(g) As evidence of, or construed as evidence of, any presumption, concession, or admission that class certification is appropriate in this Action, except for purposes of this Settlement.

10.2 To the extent that any Defendants enter(s) into any agreement to resolve any future or existing actions or investigations, or proceedings, whether with a private person or entity, with the U.S. Securities & Exchange Commission, or any other regulator or government entity in any country relating to the same conduct and/or injury as this Action ("Related Action"), Defendants agree they shall not: (i) condition the amount of any settlement, payment, penalty, fine, or restitution in such Related Action on the approval of this Settlement or the amount of this Settlement; or (ii) create an offset of this Settlement against any payments in such Related Action. For the avoidance of doubt, Defendants agree they shall not make any settlement or payment in any Related Action contingent on the approval of this Settlement or the amount of this Settlement.

10.3 Defendants and/or Defendants' Releasees may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, offset or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4 The Parties intend the Settlement to be a final and complete resolution of all disputes which have been asserted, could have been asserted, or could be asserted by Plaintiffs or the Settlement Class Members against Defendants, Defense Counsel, and all of Defendants' Releasees concerning Released Plaintiffs' Claims and by Defendants against Plaintiffs and Settlement Class Members and their counsel, including Lead Counsel, and Plaintiffs' Releasees concerning the Released Defendants' Claims. Accordingly, the Parties agree not to assert in any forum that the litigation was brought by Plaintiffs or defended by the Defendants in bad faith or without a reasonable basis. The Parties, and each of them, shall not assert or pursue any action, claim, or rights that any party hereto violated any provision of Fed. R. Civ. P. 11 or otherwise seek reimbursement or shifting of attorneys' fees or other costs associated with this litigation. The Parties, and each of them, and their respective counsel agree that the Action was resolved in good faith, following arm's length bargaining, and the Settlement was reached voluntarily after consultation with experienced legal counsel.

10.5 The Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree, subject to their fiduciary and other legal obligations to third parties, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Stipulation. Subject to their fiduciary and legal obligations to their clients, Lead Counsel and Defense Counsel agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order, this Stipulation, and the Settlement, and to use reasonable best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

10.6 Neither Plaintiffs, Settlement Class Members, nor Defendants shall be bound by this Stipulation if the Court modifies material terms thereof, provided, however, that it shall not be a basis for Settlement Class Members to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Settlement Class Members or if the Plan of Allocation is modified on appeal. Nor shall it be a basis to terminate the Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to the distribution of the Net Settlement Fund. Nor shall it be a basis to terminate the Stipulation if the Court denies, in whole or in part, Lead Counsel's Fee and Expense Application.

10.7 The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering any orders necessary for its implementation, providing the Fee and Expense Award to Lead Counsel and any compensatory awards to Plaintiffs, ordering distribution of the Net Settlement Fund, and enforcing the terms of this Stipulation. All parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

10.8 The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.9 All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference. Notwithstanding the foregoing, in the event of a conflict or inconsistency between the terms of this Stipulation and the terms of any Exhibit attached hereto, the terms of this Stipulation shall prevail.

10.10 This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.11 This Stipulation, the Exhibits attached hereto, and the Supplemental Agreement (as described in ¶ 2.11 herein) constitute the entire agreement among the parties hereto, and no representations, warranties, or inducements have been made to any party concerning this Stipulation, its Exhibits, or the Supplemental Agreement other than the representations, warranties and covenants contained and memorialized in such documents.

10.12 Each counsel or other Person executing this Stipulation, any of its Exhibits, or any related Settlement documents on behalf of any party hereto, hereby warrants and represents that such Person has the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

10.13 This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or email shall be deemed originals.

10.14 This Stipulation shall be binding upon, and inure to the benefit of, the successors, heirs, and assigns of the Parties.

10.15 Any disputes arising out of finalizing this Stipulation or the Settlement itself shall be resolved by a private mediator agreed upon by the Parties by way of expedited telephonic mediation, and if unsuccessful, then by way of final, binding, non-appealable arbitration by the mediator. In that event, the mediator will decide on, and bind the Parties to, terms that are standard and customary as are normally set forth in similar federal securities class actions. Each side shall bear its own fees, costs, and expenses of such mediation, none of which shall be paid out of the Settlement Fund.

10.16 This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Texas, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Texas without giving effect to that State's choice of law principles.

10.17 This Stipulation is deemed to have been prepared by Lead Counsel and Defense Counsel as a result of arm's length negotiations among the Parties. Whereas the Parties have contributed substantially and materially to the preparation of this Stipulation, it shall not be construed more strictly against one Party than another.

10.18 Whenever this Stipulation requires or contemplates that a Party shall or may give notice to the other, notice shall be in writing and shall be deemed to have been duly given upon receipt of overnight courier, emailed PDF, or similar-format electronic document. Notice shall be provided as follows:

| | |
|---|---|
| If to Plaintiffs or Lead Counsel: | Phillip Kim<br>THE ROSEN LAW FIRM, P.A.<br>275 Madison Avenue, 40th Floor<br>New York, New York 10016<br>Email: philkim@rosenlegal.com |
| If to Defendants or Defense Counsel: | Jesse Bernstein<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP<br>295 Fifth Avenue, 9th Floor<br>New York, New York 10016<br>Email: jessebernstein@quinnemanuel.com |

10.19 No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. It is the sole responsibility of each Settlement Class Member to determine the amount of and pay his,

her, or its own taxes, plus any penalties and interest, on any amount received pursuant to the Settlement, and the Releasees shall have no liability whatsoever for such taxes, penalties, or interest. It is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

10.20 All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Stipulation or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

10.21 The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated September 14, 2026.

**THE ROSEN LAW FIRM, P.A.**

By: ______________________________
Laurence Rosen (*pro hac vice*)
Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

**CONDON TOBIN SLADEK SPARKS NERENBERG PLLC**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: ______________________________
John F. Bash
Texas Bar I.D. 24067504
Evan Z. Pearson
Texas Bar I.D. 24121403
300 W. Sixth Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
johnbash@quinnemanuel.com
evanpearson@quinnemanuel.com

John B. Quinn (*pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

Stuart L. Cochran Texas Bar No.: 24027936
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
scochran@condontobin.com

*Liaison Counsel for Plaintiffs*

**SCHALL, BROWN & SCHWARTZ LLP**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Plaintiffs*

Telephone: (213) 443-3000
Facsimile: (213) 443-3100
johnquinn@quinnemanuel.com

Jesse Bernstein (*pro hac vice*)
Brenna Nelinson (*pro hac vice*)
Peter M. Collins (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
jessebernstein@quinnemanuel.com
brennanelinson@quinnemanuel.com
petercollins@quinnemanuel.com

*Attorneys for Defendants*