**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MEI PANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL LEVITT, MICHAEL TRZUPEK, and DENISE STERLING,<br><br>Defendants. | Case No. 1:22-CV-1191-DAE<br><br>CLASS ACTION |

**PLAINTIFFS' AGREED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ... 1

II. OVERVIEW OF THE LITIGATION ... 2

A. Plaintiffs' Allegations ... 2

B. Procedural History ... 3

C. Related Bankruptcy Proceedings ... 4

D. The Settlement Negotiations ... 4

III. THE PROPOSED SETTLEMENT CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23 ... 5

A. The Settlement Class Satisfies Rule 23(a) ... 5

1. Numerosity ... 5

2. Commonality ... 6

3. Typicality ... 6

4. Adequacy ... 7

B. The Settlement Class Satisfies Rule 23(b)(3) ... 8

1. Predominance ... 8

2. Superiority ... 8

IV. THE SETTLEMENT MERITS PRELIMINARY APPROVAL ... 9

A. Factors to Consider in the Preliminary Approval of a Class Action Settlement ... 9

B. The Proposed Settlement is Fair, Reasonable, and Adequate ... 11

1. Plaintiffs and Lead Counsel Adequately Represented the Settlement Class ... 11

2. The Settlement Resulted From Arm's-Length Negotiations ... 12

3. The Settlement Relief is Adequate in Light of the Duration, Costs, and Risks of Litigation ........ 12

4. The Proceedings are Adequately Advanced ........ 14

5. The Relief is Adequate Considering the Range of Possible Recovery ........ 14

6. The Opinions of Lead Counsel and Plaintiffs ........ 15

7. The Settlement Treats Settlement Class Members Equitably ........ 16

8. The Anticipated Request for Attorneys' Fees is Reasonable ........ 17

9. Other Agreements ........ 17

V. THE PROPOSED FORM AND METHOD OF NOTICE MERIT APPROVAL ........ 18

VI. PROPOSED SCHEDULE OF EVENTS ........ 19

VII. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care*,
2019 WL 387409 (S.D. Tex. 2019) ........ 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 5, 8

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004) ........ 10

*Bardales v. Fontana & Fontana, LLC,*
2020 WL 5819873 (E.D. La. Sept. 30, 2020) ........ 11

*Burford v. Cargill, Inc.*,
2012 WL 5472118 (W.D. La. Nov. 8, 2012) ........ 13

*C.C. & L.C. v. Baylor Scott & White Health*,
2022 WL 4477316 (E.D. Tex. Sept. 26, 2022) ........ 10, 13

*Celeste v. Intrusion Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ........ 17

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........ 17

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
2015 WL 965696 (W.D. La. Mar. 3, 2015) ........ 15

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ........ 10

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
2023 WL 6300569 (S.D. Tex. Sept. 27, 2023) ........ 6

*Epperson v. Int'l Paper Co.*,
2024 WL 3746390 (W.D. La. Aug. 9, 2024) ........ 9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........ 17

*Gibb v. Delta Drilling Co.*,
104 F.R.D. 59 (N.D. Tex. 1984) ........ 9

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ........ 14

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
424 F. Supp. 3d 456 (E.D. La. 2020) .......... 15

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
2017 WL 2608243 (S.D. Tex. June 15, 2017) .......... 6

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) .......... 8

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) .......... 12

*In re Enron Sec. and ERISA Litig.*,
2003 WL 22494413 (S.D. Tex. July 24, 2003) .......... 19

*In re F45 Training Holdings, Inc. Sec. Litig.*,
2026 WL 1045753 (W.D. Tex. Apr. 16, 2026) .......... 16, 19

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) .......... 18

*In re Oil Spill by Oil Rig Deepwater Horizon*,
295 F.R.D. 112 (E.D. La. 2013) .......... 14

*In re Reliant Energy ERISA Litig*.,
2005 WL 2000707 (S.D. Tex. Aug. 18, 2005) .......... 6

*In re Train Derailment Near Amite La.*,
2006 WL 1561470 (E.D. La. May 24, 2006) .......... 14

*Jiangchen v. Rentech, Inc.,*
2019 WL 13570065 (C.D. Cal. June 24, 2019) .......... 17

*KB Partners I, L.P. v. Barbier*,
2013 WL 2443217 (W.D. Tex. June 4, 2013) .......... 6, 9

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) .......... 7

*Lane v. Campus Fed. Credit Union*,
2017 WL 3719976 (M.D. La. May 16, 2017) .......... 12

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) .......... 19

*McNamara v. Bre-X Mins. Ltd.*, 214 F.R.D. 424 (E.D. Tex. 2002) .......... 9, 10

*Melby v. Am.'s MHT, Inc.*,
2018 WL 10399004 (N.D. Tex. June 22, 2018) .......... 16

*Miller v. Republic Nat. Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977) .......... 10

*Poff v. PHH Mortgage Corp.*,
2023 WL 11983790 (S.D. Tex. Apr. 18, 2023) .......... 5

*Prause v. TechnipFMC, PLC*,
2020 WL 3549686 (S.D. Tex. Mar. 9, 2020) .......... 5, 7, 8, 9

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) .......... 10, 12, 14, 15

*Rooney v. EZCORP, Inc.*,
330 F.R.D. 439 (W.D. Tex. 2019) .......... 8, 9

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .......... 16

*Turner v. Murphy Oil USA, Inc.*,
472 F. Supp. 2d 830 (E.D. La. 2007) .......... 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 6

*Welsh v. Navy Fed. Credit Union*,
2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .......... 12

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F) .......... 18

**Rules**

Fed. R. Civ. P. 23 .......... 5, 18, 19

Fed. R. Civ. P. 23(a) .......... 5

Fed. R. Civ. P. 23(a)(1) .......... 5

Fed. R. Civ. P. 23(a)(2) .......... 6

Fed. R. Civ. P. 23(a)(3) .......... 6

Fed. R. Civ. P. 23(a)(4) .......... 7

Fed. R. Civ. P. 23(b)(3) .......... 5, 8

Fed. R. Civ. P. 23(c)(2)(B) .......... 1, 18

Fed. R. Civ. P. 23(e) ..................................................................................................... 9

Fed. R. Civ. P. 23(e)(1) ................................................................................................. 2, 9

Fed. R. Civ. P. 23(e)(2); and (ii) ........................................................................... 9, 10, 11

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................. 11

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................. 12

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................. 14

Fed. R. Civ. P. 23(e)(2)(C)(i) .......................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(ii) ......................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................. 16

Fed. R. Civ. P. 23(e)(3) .................................................................................................. 10

Fed. R. Civ. P. 23(e)(3)(C)(iv) ........................................................................................ 17

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................... 7

Fed. R. Civ. P. 23(h)(1) .................................................................................................. 18

Lead Plaintiff Morgan Hoffman and named plaintiffs Evan Achee, William J. Emanuel, Garrett Downing, and Tin Doan Huynh (collectively, "Plaintiffs") respectfully submit this agreed Motion for entry of an order: (i) conditionally certifying the Settlement Class for purposes of the proposed Settlement;[1] (ii) preliminarily approving the proposed Settlement; (iii) preliminarily approving the proposed form and manner of notifying the Settlement Class of the proposed Settlement and authorizing the dissemination of such notice; and (iv) scheduling a hearing to consider final approval of the Settlement, Lead Counsel's anticipated Fee and Expense Application, and other related matters ("Settlement Hearing").

## I. PRELIMINARY STATEMENT

The Parties have agreed to resolve all claims in this securities class action (the "Action") for a cash payment of $1,500,000 (the "Settlement"). Plaintiffs now move for preliminary approval of the Settlement so that notice of the proposed Settlement can be disseminated to members of the Settlement Class, and a Settlement Hearing can be scheduled to consider final approval of the proposed class action Settlement under Rule 23.

Plaintiffs request that this Court conditionally certify the proposed Settlement Class for purposes of the Settlement because it satisfies the criteria of Rules 23(a) and 23(b)(3). Plaintiffs further request that this Court approve the proposed form and manner of notice as it is the best notice "practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and mirrors the form of notice routinely approved by courts in this Circuit and nationwide. The proposed notice will ensure that Settlement Class Members are notified of the Settlement and their rights to participate in the Settlement, to object, or to seek exclusion from the Settlement Class.

---

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation of Settlement dated September 14, 2026 ("Stipulation"), filed concurrently herewith. References to "Baker Decl." are to the Declaration of Joshua Baker, filed concurrently herewith.

Plaintiffs also request that the Court preliminarily approve the Settlement pursuant to Rule 23(e)(1). The Settlement is particularly impressive and beneficial for Core shareholders in light of the fact that Defendants' motion to dismiss Plaintiffs' claims was still pending, as were Plaintiffs' ongoing appeals of (1) the Bankruptcy Court's Order and Third-Party Releases that effectively extinguished Plaintiffs' claims and (2) the order dismissing Plaintiffs' Bankruptcy Appeal as moot. Just to survive the pleading stage, Plaintiffs would need to prevail on both appeals and defeat Defendants' motion to dismiss on the non-bankruptcy grounds, which this Court had not yet reached. Despite their claims having been dismissed multiple times and needing to win multiple pending appeals, Plaintiffs were able to secure a guaranteed recovery for the Settlement Class.

After years of litigation, the Parties negotiated at arm's-length through their experienced and informed counsel to resolve this Action, resulting in the proposed Settlement. The Settlement does not unjustly favor any Settlement Class Member. Given the considerable amount of litigation and the real risks that Plaintiffs faced, the Settlement is a fair, reasonable, and adequate recovery for the Settlement Class. Accordingly, the Court "will likely be able to" finally approve the Settlement and preliminary approval is warranted. *See* Fed. R. Civ. P. 23(e)(1).

## II. OVERVIEW OF THE LITIGATION

### A. Plaintiffs' Allegations

Core Scientific, Inc. ("Core") is digital asset mining company that both mined digital assets (*i.e.*, cryptocurrency) for itself and offered hosted mining capacity for third party customers. Plaintiffs allege that, both in Core's Registration Statement filed in connection with its go-public de-SPAC merger transaction and in public statements between August 11, 2022 through October 26, 2022, Defendants misrepresented and concealed Core's efforts to pass through its increased power costs to its hosting customers in violation of the customers' fixed rate contracts. Plaintiffs allege that when the truth was later revealed, Core's stock price fell sharply, damaging investors.

**B. Procedural History**

This Action began on November 14, 2022, when Mei Pang filed a putative class action complaint against Core, Defendants Levitt and Sterling, and Michael Trzupek, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Dkt. No. 1. On December 21, 2022, Core filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States District Court for the Southern District of Texas ("Bankruptcy Court"): *In re Core Scientific, Inc.*, No. 22-90341 (S.D. Tex. Bankr.) ("Bankruptcy Action") *See* Dkt. No. 14. Pang then voluntarily dismissed all claims against Core. Dkt. No. 15.

On March 7, 2023, Judge Yeakel appointed Hoffman as Lead Plaintiff for the putative class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Dkt. No. 44. The Action was then reassigned to this Court. Dkt. No. 61. On May 5, 2023, Plaintiffs Hoffman, Achee, and Emanuel filed their first Amended Complaint ("FAC"), asserting claims under §§ 10(b), 14(a), and 20(a) of the Exchange Act, and §§ 11 and 15 of the Securities Act of 1933 ("Securities Act") against Defendants, Trzupek, and Brian Neville. Dkt. No. 62. These Defendants moved to dismiss the FAC. *See* Dkt. Nos. 65, 67, and 69. On December 20, 2023, the Court dismissed Plaintiffs' FAC except for certain claims under the Securities Act and § 14 of the Exchange Act. Dkt. No. 73. Defendants then moved for reconsideration with respect to those surviving claims. *See* Dkt. Nos. 75, 83, and 84. On April 22, 2024, the Court granted the motion and dismissed Plaintiffs' remaining claims without prejudice. Dkt. No. 86.

On June 7, 2024, Plaintiffs filed their Second Amended Complaint ("SAC"), alleging the same legal claims against Defendants, based on amended factual allegations. Dkt. No. 89. Defendants moved to dismiss the SAC (*see* Dkt. Nos. 92, 95, and 100) on the grounds that, among other things, certain third-party releases and injunctive provisions ("Third-Party Releases") in the plan of reorganization confirmed in the Bankruptcy Action precluded Plaintiffs' claims. On March

7, 2025, the Court referred this Action to the Bankruptcy Court. Dkt. No. 105 ("Referral Order"). Plaintiffs moved for reconsideration of the Referral Order. Dkt. Nos. 108, 111, and 113. On May 9, 2025, the Court denied Plaintiffs' motion. Dkt. No. 114.

### C. Related Bankruptcy Proceedings

On January 16, 2024, the Bankruptcy Court entered an order confirming the plan of reorganization proposed by Core and other related debtors, overruling Plaintiffs' objections to the Third-Party Releases. Bankruptcy Action, Dkt. No. 1749. The Third-Party Releases purported to release and enjoin all claims brought by Plaintiffs and the putative class against the non-debtor Defendants in this Action, subject to a release opt-out provision. Plaintiffs contend the Third-Party Releases constituted impermissible nonconsensual third-party releases.

Plaintiffs appealed the Bankruptcy Court's plan confirmation order to the U.S. District Court for the Southern District of Texas. *Hoffman v. Core Scientific, Inc.*, No. 4:24-cv-357 (S.D. Tex.) ("Bankruptcy Appeal"), Dkt. No. 1-1. On March 12, 2025, eight months after the Bankruptcy Appeal was fully briefed, the district court dismissed the appeal as moot in light of this Court's Referral order. Bankruptcy Appeal, Dkt. No. 34. Plaintiffs moved for reconsideration, which was denied on March 24, 2026. Bankruptcy Appeal, Dkt. No. 44. On April 14, 2026, Plaintiffs appealed the dismissal to the Fifth Circuit of the U.S. Court of Appeals. *Hoffman v. Core Scientific, Inc.*, No. 26-20179 (5th Cir.) (Dkt. No. 1-1).

### D. The Settlement Negotiations

After extensive negotiations, the Parties ultimately agreed to settle this Action for a cash payment of $1,500,000. The Parties' agreement was memorialized in the Stipulation. On July 16, 2026, the Court granted the Parties' joint motion to withdraw its Referral Order for the purposes of considering approval of the Settlement. Dkt. No. 116.

## III. THE PROPOSED SETTLEMENT CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23

This Court must first determine whether the proposed Settlement Class may be certified under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Poff v. PHH Mortgage Corp.,* 2023 WL 11983790, at *4 (S.D. Tex. Apr. 18, 2023) (preliminarily approving settlement and conditionally certifying class for settlement purposes).[2] Plaintiffs seek preliminary certification of a Settlement Class pursuant to Rules 23(a) and (b)(3), comprising: "all persons and/or entities who (a) purchased or acquired the publicly traded securities of Core or XPDI, or purchased call options or sold put options on Core or XPDI common stock, during the Settlement Class Period [January 3, 2022 through December 20, 2022]; or (b) held the common stock of XPDI at the close of business on December 7, 2021 and were eligible to vote on the Merger at the special meeting of XPDI shareholders held on January 19, 2022." Stipulation ¶ 1.37 (defining "Settlement Class" and detailing various exclusions therefrom).

### A. The Settlement Class Satisfies Rule 23(a)

Rule 23(a) sets forth four requirements for class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. Fed. R. Civ. P. 23(a).

#### 1. Numerosity

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity "is generally assumed to have been met in a class action suit involving nationally traded securities, since the putative class is likely sufficiently numerous, geographically dispersed, and difficult to identify." *Prause v. TechnipFMC, PLC*, 2020 WL 3549686, at *2 (S.D. Tex. Mar. 9, 2020). Here, the Settlement Class comprises purchasers of

[2] Internal citations and quotations are omitted unless otherwise indicated.

Core securities, which traded on the NASDAQ at all relevant times with over 270 million shares registered pursuant to the Registration Statement and an average weekly trading volume of roughly 61.5 million shares during the Settlement Class Period. *See* SAC ¶ 210(d). There are likely thousands of Settlement Class Members, so the Settlement Class easily satisfies numerosity.

**2. Commonality**

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element is "not demanding," *In re Reliant Energy ERISA Litig.*, 2005 WL 2000707, at *2 (S.D. Tex. Aug. 18, 2005), and "a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). Here, there are several common questions of law and fact, including whether Defendants made misrepresentations, whether they acted with scienter, and whether these statements caused Plaintiffs' losses. Courts routinely hold that such questions satisfy Rule 23(a)(2). *See e.g.*, *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *7 (S.D. Tex. Sept. 27, 2023) ("Whether Cabot's representations were materially false and impacted the stock price are common questions of law and fact."). Commonality is satisfied.

**3. Typicality**

The claims of the representative plaintiffs must also be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). This requirement "is not demanding," *KB Partners I, L.P. v. Barbier*, 2013 WL 2443217, at *11 (W.D. Tex. June 4, 2013), and is met "by showing that class representatives' claims arise from a similar course of conduct and share the same legal theory." *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243, at *2 (S.D. Tex. June 15, 2017). Here, just like other Settlement Class Members, Plaintiffs purchased Core securities during the Settlement Class Period, and they suffered significant losses as a result thereof. *See* SAC ¶¶ 28-32. Plaintiffs' claims, and those of Settlement Class Members, are based on violations of §§ 11 and 15 of the Securities Act and §§ 10(b), 14(a), and 20(a) of the Exchange Act. There is no

indication that Plaintiffs' claims are atypical of those of the Settlement Class, or that unique defenses apply to Plaintiffs' claims, so typicality is satisfied.

**4. Adequacy**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts evaluate three factors for adequacy: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Prause*, 2020 WL 3549686, at *4. Each factor is met here. Plaintiffs each submitted PSLRA certifications and have zealously prosecuted the Action (through Lead Counsel) on behalf of the putative class. Dkt. Nos. 17-2, 62 (at pp.74 and 77), 89-1, and 89-2. There are no conflicts of interest between Plaintiffs and the Settlement Class, as Plaintiffs' claims are aligned with those of the Settlement Class. Thus, Plaintiffs are adequate class representatives.

Lead Counsel are experienced in complex securities class actions and can prosecute this action vigorously. *See* Baker Decl., Ex. 1 (Lead Counsel's firm résumé). Courts have consistently found Lead Counsel to be well-suited as class counsel in securities class actions. *E.g., Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is highly qualified and experienced in securities class actions"). Lead Counsel has vigorously litigated this case and related bankruptcy proceedings on behalf of Plaintiffs and the putative class for nearly four years, *supra* §§ II(B)-(C), and will continue to do so. Lead Counsel's work in this Action, their knowledge and experience, and resources they have committed, all support their adequacy as Class Counsel. *See also* Fed. R. Civ. P. 23(g)(1)(A).

### B. The Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions (predominance), and that a class action is superior to other available methods of adjudication (superiority). Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

#### 1. Predominance

"Predominance is … readily met in certain cases alleging ... securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, common questions of Defendants' conduct arising from their statements in the Registration Statement and during the Settlement Class Period will control the outcome of the Action, as opposed to the conduct of any individual class members. Thus, the predominance requirement is met. *See Prause,* 2020 WL 3549686 at *7 (finding that common questions predominated when "each class member acquired [Defendants] shares during the Class Period based on… statement[s] containing nearly identical misstatements"). Moreover, while the amount of damages may differ among Settlement Class Members, liability and the measure of damages can be determined on a class-wide basis. *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("the critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims. … Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy").

#### 2. Superiority

To determine superiority, courts must consider the following factors:

> (A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability … of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 451 (W.D. Tex. 2019).

Superiority is "easily satisfied" in securities fraud class actions, and the same holds true here. *See KB Partners*, 2013 WL 2443217, at *14. First, the proposed Settlement Class likely contains thousands of investors whose respective damages are small enough to render individual litigation prohibitively expensive. *See Prause*, 2020 WL 3549686, at *7 (superiority met where "[t]he costs … of individual litigation would prove prohibitive for potential class members"); *EZCORP*, 330 F.R.D. at 451 (same). Second, Plaintiffs know of no other pending actions concerning the claims alleged here. Third, concentrating litigation in this forum is desirable given the "geographic dispersal of investors" and Core's headquarters is within this district, *id.*, and doing so would "promote[] judicial efficiency and economy, as well as uniformity of decisions." *Prause*, 2020 WL 3549686, at *7. Fourth, there will be no difficulties in managing this securities fraud case as a class action, as "the utility of the class action to cases involving the securities laws has been repeatedly recognized." *Gibb v. Delta Drilling Co.*, 104 F.R.D. 59, 71 (N.D. Tex. 1984).

## IV. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. Factors to Consider in the Preliminary Approval of a Class Action Settlement

Rule 23(e) requires judicial approval for any compromise of a class action. Fed. R. Civ. P. 23(e). Preliminary approval is part of a two-step process in the approval of a proposed class action settlement, whereby the Court evaluates the fairness of the settlement and directs that notice be given to the class members of a formal hearing. *Epperson v. Int'l Paper Co.*, 2024 WL 3746390, at *3 (W.D. La. Aug. 9, 2024) (citing *McNamara v. Bre-X Mins. Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002)). Preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). To determine whether a settlement is "fair, reasonable, and adequate" under Rule 23(e)(2), courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors overlap, rather than replace, the factors laid out in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983),[3] and thus "courts in this circuit often combine them in analyzing class settlements." *C.C. & L.C. v. Baylor Scott & White Health*, 2022 WL 4477316, at *2 (E.D. Tex. Sept. 26, 2022).

The approval of a proposed settlement is within the discretion of the district court, and such courts are granted considerable leeway in making this determination. *See Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004). This discretion should be exercised in the context of public policy that strongly favors the pretrial settlement of class action lawsuits. *See Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("[settlements] will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (finding "an overriding public interest in favor of settlement" in class actions, which "have a well deserved reputation as being most complex").

The Court need not make a final determination as to the merits of the proposed Settlement at the preliminary approval stage. *McNamara*, 214 F.R.D. at 427 n.2 ("the purpose of the preliminary approval is to detect any *obvious* defects that will preclude final approval of the

[3] The *Reed* factors are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172.

settlement"); *Bardales v. Fontana & Fontana, LLC,* 2020 WL 5819873, at *9 (E.D. La. Sept. 30, 2020). Full evaluation is reserved until the final approval stage, after notice of the Settlement has been disseminated and Settlement Class Members have had an opportunity to voice their approval of, or objection to the proposed Settlement. Here, the proposed Settlement is fair, reasonable, and adequate considering each of the Rule 23(e)(2) and *Reed* factors, and merits preliminary approval.

### B. The Proposed Settlement is Fair, Reasonable, and Adequate

#### 1. Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Here, the proposed "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Plaintiffs and Lead Counsel have diligently prosecuted this Action for years and have adequately represented the Settlement Class. *Supra* § III(A)(4).

Plaintiffs and Lead Counsel conducted a comprehensive investigation of Core, including: retaining a private investigator; reviewing Core's public filings, media and analyst reports, and related bankruptcy filings; and retaining experts to estimate damages and provide bankruptcy litigation guidance. Plaintiffs and Lead Counsel drafted the FAC; opposed Defendants' motion to dismiss the FAC and motion for reconsideration; drafted the SAC; opposed Defendants' motion to dismiss; moved for reconsideration of the Referral Order; filed a claim in the Bankruptcy Action; objected to the Third-Party Releases; appealed the Bankruptcy Court's plan confirmation order; moved for reconsideration of the Bankruptcy Appeal dismissal and appealed the same. As a result, Lead Counsel had an in-depth factual and legal understanding of the strengths and weakness of Plaintiffs' claims by the time settlement discussions began and adequately represented the Settlement Class in rigorous negotiations with experienced defense counsel.

Despite the prospect of needing to secure multiple victories—in the Bankruptcy Appeal and on Defendants' substantive arguments to dismiss the SAC—just to survive the pleading stage,

Lead Counsel was able to negotiate a Settlement providing an immediate recovery for the Settlement Class. The Settlement is the product of diligent and adequate prosecution of this case.

### 2. The Settlement Resulted From Arm's-Length Negotiations[4]

"Courts may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arm's-length negotiations." *Welsh v. Navy Fed. Credit Union*,, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). Moreover, courts generally will assume the negotiations were proper if the terms of the proposed settlement are fair. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981); *Lane v. Campus Fed. Credit Union*, 2017 WL 3719976, at *7 (M.D. La. May 16, 2017). Here, the Parties' settlement negotiations were conducted at arm's-length through experienced and knowledgeable counsel after years of litigation. The Settlement is devoid of even a hint of fraud or collusion. The arm's-length nature of the Settlement negotiations supports preliminary approval.

### 3. The Settlement Relief is Adequate in Light of the Duration, Costs, and Risks of Litigation[5]

Plaintiffs' claims involve numerous complex legal issues, even more so than most securities class actions in light of the Third-Party Releases and Bankruptcy Appeal. While Plaintiffs believe that the Action has merit, Defendants have significant defenses to both liability and damages with regard to the allegedly false and misleading statements, whether certain of the statements were made with scienter, and loss causation. Plaintiffs faced several major obstacles just to proceed past the pleading stage. First, Plaintiffs needed to prevail on their appeal before the Fifth Circuit. If they lost, Plaintiffs would have had to bring their claims in the SAC before the Bankruptcy Court, per the Referral Order, where Plaintiffs' non-fraud Section 11 and Section 14

---

[4] Fed. R. Civ. P. 23(e)(2)(B); *Reed*, 703 F.2d at 172.

[5] Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

claims would have been largely barred by the injunctive provision in the Third-Party Releases (to the extent applicable), and the Bankruptcy Court purported to have jurisdiction to determine Plaintiffs' securities fraud claims on the merits. Then Plaintiffs would have to appeal the Bankruptcy Court's merits decision back to the district court in the Bankruptcy Appeal (or if they prevailed on their pending Fifth Circuit appeal), where they would still need to prevail on the merits of the Bankruptcy Appeal, which the district court had not yet addressed. Only then would Plaintiffs be able to bring their SAC claims back before this Court, where they still faced the substantive arguments raised by Defendants' motion to dismiss, which this Court had not yet reached. It would likely take multiple years of litigation just to reach discovery.

Even if Plaintiffs were able to prevail and proceed to the merits stage, they would need to obtain class certification (which Defendants would vigorously contest), spend significant time and money navigating discovery, and prevail at summary judgment and trial. To succeed on the merits they would need to prove each of the alleged misrepresentations and omissions were false or misleading, that the misrepresentations during the class period were made with scienter, and that the alleged corrective disclosures caused their losses. The costs, risks, and significant delays associated with litigating the Action to a verdict, not to mention through the inevitable subsequent appeal(s) from Defendants, were extremely high. *Burford v. Cargill, Inc.*, 2012 WL 5472118, at *4 (W.D. La. Nov. 8, 2012) ("Continued litigation in this matter would be lengthy, complex, and expensive."). Absent a settlement, it would require several years of litigation before Plaintiff might secure any recovery for the Settlement Class. The Settlement is, therefore, adequate in light of the massive potential risk, expense, and delay of continued litigation. *Baylor Scott & White*, 2022 WL 4477316, at *3 (where "the prospect of ongoing litigation threatens to impose high costs of time

and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.”).

### 4. The Proceedings are Adequately Advanced[6]

The primary purpose of examining the stage of the proceeding is ensuring that both sides adequately understand the case when negotiations begin. *In re Train Derailment Near Amite La.*, 2006 WL 1561470, at *22 (E.D. La. May 24, 2006) (“a district court must determine whether the parties are in a position to assess their respective cases and to make reasonable decisions with respect to settlement, considering the information to which they are privy and the stage of the proceedings when the tentative deal is struck.”); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 148 (E.D. La. 2013) (“[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed.”). Here, Plaintiffs thoroughly investigated their claims (through Lead Counsel) in filing two amended complaints, including reviewing publicly available documents relating to Defendants’ alleged misrepresentations and omissions, reviewing bankruptcy filings in related cases, reviewing analyst reports, and interviewing former Core employees. When they entered the Settlement, Plaintiffs and Lead Counsel had a fulsome understanding of the merits of the case from their investigation.

### 5. The Relief is Adequate Considering the Range of Possible Recovery[7]

To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry “should contrast settlement rewards with likely rewards if [a] case goes to trial.” *In re Chicken*

---

[6] *Reed*, 703 F.2d at 172.

[7] Fed. R. Civ. P. 23(e)(2)(C); *Reed*, 703 F.2d at 172.

*Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir. 1982). "The typical recovery in most class actions generally is three-to-six cents on the dollar." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *7 (W.D. La. Mar. 3, 2015). According to Cornerstone Research, an economic consulting firm, between 2016 and 2024, approximately 27% of securities class actions settled for less than $5 million. Baker Decl., Ex. 2 at 18. NERA, another economic consulting firm, found that the median recovery for securities settlements in 2025 was 1.5%, up from 1.2% in 2024. Baker Decl., Ex. 3 at Fig. 24.

Under the proposed Settlement, the Settlement Class will receive $1,500,000, which recovers approximately 1.2% of the maximum estimated recoverable class-wide damages of approximately $125 million, as estimated by Plaintiffs' consulting damages expert. This estimate assumes that: (i) Plaintiffs prove Defendants' liability on all alleged claims; (ii) the Court certifies a class for all such claims coextensive with the full scope of the Settlement Class; and (iii) the Court and jury accept Plaintiffs' theory of loss causation for each of the alleged corrective disclosures.[8] Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages. The percentage of estimated damages recovered here demonstrates that the Settlement provides a reasonable and adequate result for the Settlement Class.

**6. The Opinions of Lead Counsel and Plaintiffs**[9]

"Class Counsel are intimately familiar with the case and the Settlement and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 489 (E.D. La. 2020);

---

[8] This estimate also assumes, for Plaintiffs' Section 11 claims, that Plaintiffs will defeat Defendants' negative causation defense with respect to each of the alleged corrective disclosures, instead of using purely statutory damages. Plaintiffs' consulting damages expert estimates that damages for Plaintiffs' Section 14 claim are coextensive with the Section 11 damages calculation.

[9] *Reed*, 703 F.2d at 172.

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007); *Melby v. Am.'s MHT, Inc.*, 2018 WL 10399004, at *10 (N.D. Tex. June 22, 2018) ("[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'") (citing *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005)). Here, Lead Counsel have considerable experience in complex class action litigation and securities law and approve of the Settlement.[10]

**7. The Settlement Treats Settlement Class Members Equitably**

The Court must also assess the Settlement's effectiveness in distributing relief to members of the Settlement Class and treating them equitably. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) and 23(e)(2)(D). Courts routinely approve distribution methods akin to the method proposed for the Settlement here. *See e.g., In re F45 Training Holdings, Inc. Sec. Litig.*, 2026 WL 1045753, at *6 (W.D. Tex. Apr. 16, 2026) (Ezra, J.). The Plan of Allocation, set out in the Long Notice (Stipulation, Ex. A-1), details how the Settlement proceeds will be distributed among Authorized Claimants. Lead Counsel designed the Plan of Allocation, along with Plaintiffs' consulting damages expert, to distribute the Net Settlement Fund based on the timing and amount of each type of Core or XPDI securities that Settlement Class Members purchased, acquired, or held, consistent with Plaintiffs' theories of liability and damages. The funds will be distributed *pro rata* to all Claimants based on the relative size of their claims as calculated under the Plan of Allocation.

[10] Plaintiffs also support the proposed Settlement. Settlement Class Members have not had an opportunity to review the Settlement, but Plaintiffs address their reaction to the Settlement following the notice process, in connection with seeking final approval of the Settlement.

**8. The Anticipated Request for Attorneys' Fees is Reasonable**[11]

The proposed notices to the Settlement Class each advise that Lead Counsel will apply for an award of attorneys' fees of up to one-third of the Settlement Fund and reimbursement of litigation expenses up to $125,000. These amounts are reasonable and are regularly awarded in this Circuit in similar cases. *See, e.g., Al's Pals Pet Care*, 2019 WL 387409, at *4 (S.D. Tex. 2019) (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022) (finding that one-third of the settlement is "squarely in the accepted range"); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *7 (N.D. Tex. Apr. 25, 2018) (granting one-third fee). Lead Counsel will submit a detailed application supporting their request when Plaintiffs seek final approval of the Settlement. Settlement Class Members will be able to address the requests at such time, prior to the Settlement Hearing.

**9. Other Agreements**[12]

The Parties entered into a standard Supplemental Agreement that provides Defendants with the option to terminate the Settlement if the number of Settlement Class Members requesting exclusion from the Settlement Class exceeds a certain threshold. Stipulation ¶ 2.11. The Supplemental Agreement and the precise threshold are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage an individual settlement for themselves to the detriment of the rest of the Settlement Class. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *Jiangchen v. Rentech,*

---

[11] Fed. R. Civ. P. 23(e)(2)(C)(iii).

[12] Fed. R. Civ. P. 23(e)(3)(C)(iv).

*Inc.,* 2019 WL 13570065, at *12 (C.D. Cal. June 24, 2019) ("This type of agreement is common in securities fraud actions and does not weigh against preliminary approval.").

## V. THE PROPOSED FORM AND METHOD OF NOTICE MERIT APPROVAL

Rule 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

The proposed Long Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and due process. The proposed Long Notice provides, in plain wording: (a) the rights of Settlement Class Members, including the manner in which they may lodge objections or request exclusion and instructions on how to complete and submit a Claim Form to the Claims Administrator; (b) the nature, history, progress, and status of the litigation; (c) the proposed Settlement; (d) the process for filing a Claim Form; (e) a description of the proposed Plan; (f) the maximum attorneys' fees and expenses and award to Plaintiffs to be sought by Lead Counsel; (g) the definition of the Settlement Class; (h) the reasons the Parties have proposed the Settlement; (i) the estimated distribution per damaged share; (j) the Settlement Class's claims and issues; (k) the Parties' disagreement over damages and liability; (l) contact information for all counsel and the Court; and (m) the time, date, and location of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F). The Notice also alerts Settlement Class Members of Lead Counsel's anticipated application for attorneys fees, including the maximum amounts Lead Counsel may seek. *See* Fed. R. Civ. P. 23(h)(1).

As detailed in the proposed preliminary approval order (submitted herewith), Lead Counsel and the Claims Administrator propose to: (i) email the Summary Notice (Stipulation Ex. A-3) and links to the Long Notice and Claim Form or mail the Postcard Notice (Stipulation Ex. A-4) to potential Settlement Class Members; (ii) post important documents on a Settlement-specific website; and (iii) publish the Summary Notice electronically and in print.[13] This proposed notice program fulfills the requirements of due process because it alerts and informs potential Settlement Class Members who can be identified through reasonable efforts of the information set forth above. *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (a notice that "adequately described" the action and the terms of the proposed settlement, and informed "shareholders that additional information was available" "did not violate . . . due process rights"). Further, the Summary Notice provides an abbreviated but informative description of the Action and the proposed Settlement, and it explains how to obtain the more detailed Long Notice. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See, e.g.*, *F45 Training*, 2026 WL 1045753, at *6; *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, Case No. 4:21-CV-2045, Dkt. No. 211 (S.D. Tex. Jun. 27, 2024); *In re Enron Sec. and ERISA Litig.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003).

## VI. PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule, which tracks those used in similar securities class action settlements and provides due process for potential Settlement Class Members with respect

[13] Lead Plaintiff respectfully requests that Strategic Claims Services ("SCS") be appointed as Claims Administrator. SCS has significant experience administrating similar settlements and is routinely approved in this role. *See e.g., F45 Training*, 2026 WL 1045753, at *6 (appointing SCS).

to their rights concerning the Settlement. This schedule is reflected in the proposed preliminary approval order (Exhibit A to the Stipulation), paragraphs of which are referenced in the chart:

| **Event** | **Deadline for Compliance** |
|---|---|
| Settlement Hearing | At least 100 days following the entry of the Preliminary Approval Order (¶6). |
| Posting the Stipulation, Preliminary Approval Order, Long Notice, and Claim Form on the Settlement website | Within 16 days after the entry of the Preliminary Approval Order (¶14). |
| Emailing the Summary Notice/Mailing the Postcard Notice | Within 20 business days after entry of the Preliminary Approval Order (¶15) ("Notice Date"). |
| Publication of Summary Notice. | Within 10 days after the Notice Date (¶16). |
| Deadline for submitting Claim Forms | No later than 30 days before the Settlement Hearing (¶20(a)). |
| Filing of papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's fee and expense request | No later than 35 days before the Settlement Hearing (¶30). |
| Deadline to file objections to Settlement, Plan of Allocation, and/or Fee and Expense Application, or to request exclusion from the Settlement Class | No later than 21 days before the Settlement Hearing (¶¶22, 28). |
| Deadline to file response to any objections or reply papers in further support of the Settlement, the Plan of Allocation, and Lead Counsel's fee and expense request. | No later than 7 days before the Settlement Hearing (¶31). |

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation and submitted herewith, which will: (i) preliminarily certify the Settlement Class for purposes of the Settlement; (ii) preliminarily approve the Settlement; (iii) preliminarily approve the Notice and direct its distribution; and (iv) schedule a Settlement Hearing.

Dated: September 14, 2026

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: *<u>/s/Joshua Baker</u>*
Laurence Rosen (*pro hac vice*)

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**
Stuart L. Cochran Texas Bar No.: 24027936 8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
scochran@condontobin.com

*Liaison Counsel for Plaintiffs*

**SCHALL, BROWN & SCHWARTZ LLP**
Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Plaintiffs*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel has complied with the conferral requirement of Local Rule CV-7(g). Defendants do not oppose this motion.

Dated: September 14, 2026 *<u>/s/Joshua Baker</u>*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/Joshua Baker*